BEFORE THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WISCONSIN AUTOMATED MACHINERY CORP., | ) | **07 C 6840** |
| *Movant,* | ) | |
| v. | ) | Case No. |
| DIEHL WOODWORKING MACHINERY, INC., | ) | **JUDGE GUZMAN**<br>**MAGISTRATE JUDGE KEYS** |
| *Respondent.* | ) | |

## MOTION TO VACATE ARBITRAL AWARD

Pursuant to 9 U.S.C. § 10(a), movant Wisconsin Automated Machinery Corp. ("WAMCO"), by its undersigned counsel, hereby moves to vacate the October 1, 2007 arbitral award ("Award") entered in the arbitration entitled <u>In the Matter of Wisconsin Automated Machinery Corp. and Diehl Woodworking Machinery, Inc.</u> (the "AAA Arbitration"). In support, WAMCO states as follows:

### I. INTRODUCTION

1. The AAA Arbitration involved a contract claim by WAMCO against Diehl Woodworking Machinery, Inc. ("Diehl"). As explained more fully in its Second Supplement to Claims, WAMCO presented the following claims in the AAA Arbitration:

<u>Count I</u>:   Declaratory Relief
<u>Count II</u>:   Breach of Contract
<u>Count III</u>:   Breach of Contract (Alternative Claim)
<u>Count IV</u>:   Breach of Secured Note (based upon insecurity clause)
<u>Count V</u>:   Breach of Secured Note (Non-Payment)

The AAA Arbitration was held in Chicago, which is within the Northern District, and the Award was rendered here.

2. The Award should be vacated because it manifestly disregards the parties' agreement, the applicable law, and the undisputed evidence presented at the AAA Arbitration.

In particular, the arbitrator completely disregarded the Secured Note, and effectively rewrote the parties' agreement.

## II.  BACKGROUND FACTS

### A.  The Parties, Jurisdiction and Venue

3. WAMCO is a Wisconsin corporation, with its principal place of business in Chicago, IL.

4. Diehl is an Indiana corporation, with its principal place of business in Wabash, IN.

5. Jurisdiction is proper for the following reasons:

   a. This motion is brought under the Federal Arbitration Act, and therefore presents a Federal question (28 U.S.C. §1331); and

   b. The parties are citizens of different States, and the amount in controversy exceeds $75,000 (28 U.S.C. §132(a)).

6. Venue is proper pursuant to 9 U.S.C. §10, because the Award was rendered in this District.

### B.  Transactional Documents at Issue in this Arbitration

7. The AAA Arbitration involved the following transactional documents executed by the parties:

   a. Asset Purchase Agreement dated September 13, 2002 ("APA") (**Exhibit 1**);

   b. Promissory note dated October 1, 2002 ("Note") (**Exhibit 2**);

   c. Security agreement dated October 1, 2002 ("Security Agreement") (**Exhibit 3**); and

   d. Memorandum of Agreement dated August 2005 ("MOA") (**Exhibit 4**).

The execution and genuineness of these documents was never disputed.

### The APA (Exhibit 1)

8.  WAMCO sold certain product lines and associated properties to Diehl pursuant to the APA. The APA did not require Diehl to make any cash payments to WAMCO; rather, Diehl would make payments over time, pursuant to a promissory note and security agreement to be executed at a subsequent closing (APA at ¶3.2), and attaches specimens of the promissory note and security agreement. The APA also requires Diehl to increase a fee payable to WAMCO for "management consulting and services" to $15,000/month, beginning January 1, 2003 (¶6.7). The APA contains a full integration clause (¶14.6). It also contains WAMCO's covenant not to compete for five years (¶11).

9.  The APA also contemplates subsequent written modifications (¶14.7), and provides that it is to be governed, construed and enforced in accordance with Illinois law (¶14.8). It also contains a "generic" arbitration clause, which provides for arbitration before the AAA in Chicago of any controversy, dispute or claim between the parties arising out of, related to or in connection with the APA, or the performance or breach of the APA (¶14.13).

### The Note and Security Agreement (Exhibits 2 and 3)

10. About two weeks later (early October 2002), WAMCO and Diehl closed the transaction contemplated by the APA. At that closing, Diehl executed the Note and Security Agreement, which memorialize Diehl's payment obligations to WAMCO.

11. The Note includes the following material terms:

   a. <u>Maker/Payor</u>: Diehl
   b. <u>Holder/Payee</u>: WAMCO
   c. <u>Principal Amount</u>:   $600,000
   d. <u>Interest Rate</u>:  6.198% payable on the unpaid principal balance
   e. <u>Payment Schedule</u>:   Payable in 72 equal monthly installments of $10,000.00 each, commencing January 1, 2003 and on the 1st day of each successive month thereafter through and including December 1, 2008.
   f. <u>Default Interest Rate</u>: All past due principal bears additional interest at the Interest Rate plus 3% *per annum*, payable on demand
   g. <u>"Grace" Period for Payment</u>: 5 days

   h. Events of Default:
      i. Failure to pay any installment of principal or interest, which failure continues for at least five (5) days
      ii. Any default under the Security Agreement or event by which, under the terms of the Security Agreement, the principal amount of the Note may become due and payable
   i. Remedies Upon Default:
      i. Acceleration of all unpaid principal of and accrued interest
      ii. Non-discretionary right to recover all costs of collection, including reasonable attorneys' fees, in addition to and not in lieu of any other right or remedy at law

### The MOA (Exhibit 4)

12. In August 2005 the parties executed the two-page MOA, which was drafted by Diehl's counsel.

**C.   Diehl Unilaterally Stops Making Management Fee Payments and Files Suit**

13. In August 2006 Diehl unilaterally discontinued the management fee payments to WAMCO, and filed suit in Wabash County, IN against WAMCO, Jay Ehrlich and Dmitris Loukidis (**Exhibit 5**). Diehl's complaint made the following allegations:

   9. Diehl's business conditions require the elimination of the management fee.
   10. WAMCO has refused to eliminate the management fee despite requests to do so by Diehl.
   11. Diehl contends that its obligation to pay the monthly management fee to WAMCO should be eliminated as a result of the failure of consideration and pursuant to the provisions of the [MOA].

Diehl subsequently filed an amended complaint, which repeated those same allegations (**Exhibit 6**). That case was subsequently removed to the U.S. District Court for the Northern District of Indiana, where it remains pending and undetermined.

**D.   Diehl Withholds Payments Due Under the Note**

14. After consistently making monthly payments on the Note – including five payments made after WAMCO had filed the AAA Arbitration – Diehl did not make its June 2007 Note payment to WAMCO. Instead, Diehl filed a "supplemental complaint" for

123253-1                                         4

interpleader in the Wabash litigation (**Exhibit 7**), and deposited $10,000 with the Clerk of the Wabash County Court.[1]

15.    Diehl did not make timely Note payments to WAMCO for July, August, September or October 2007. Diehl deposited $10,000 with the Clerk of the U.S. District Court on July 5th, August 3rd and September 4th.

16.    WAMCO and Jay Ehrlich timely filed answers to the interpleader complaint. On July 9, 2007 Jay Ehrlich subsequently filed a Rule 12(c) motion for judgment on the pleadings and to dissolve Diehl's interpleader action, which WAMCO joined. That motion is fully briefed, and remains pending and undetermined.

### E.    The AAA Arbitration

17.    WAMCO filed the AAA Arbitration in December 2006. In February 2007 WAMCO amended its claim to include a claim on the Note.

18.    At the arbitrator's request, WAMCO supplemented its claim, which elaborated on the claims at issue herein. WAMCO's Second Supplement to Claim is attached as **Exhibit 8**.

19.    WAMCO also attaches a true and correct copy of the AAA's Commercial Arbitration Rules in effect as of December 2006 as **Exhibit 9**.

### The Arbitrator Approves – and then Unilaterally Vitiates – the Parties' Agreement to Exchange Discovery

20.    Jay Ehrlich had already issued written discovery to Diehl in the Wabash litigation, which requested information pertinent to the AAA Arbitration. Therefore, the parties agreed that Diehl would answer all of Jay Ehrlich's written discovery by a date certain, in lieu of exchanging discovery documents pursuant to the AAA's Commercial Arbitration Rules. The arbitrator acknowledged that agreement in writing (**Exhibit 10**).

---

[1] The Wabash lawsuit was removed to the U.S. District Court in Indiana shortly after Diehl filed its interpleader complaint, where it has remained since then.

123253-1                                      5

21. Notwithstanding its agreement to answer all interrogatories and to produce all requested documents, Diehl did not answer the interrogatories or produce the documents timely. Instead, its late-filed interrogatory answers included numerous objections; Diehl also withheld hundreds of pages of responsive documents.

22. Notwithstanding the parties' agreement regarding the timely exchange of discovery – which he had acknowledged and approved in writing – the arbitrator vitiated that discovery agreement by refusing to sanction Diehl for its non-compliance (**Exhibit 11**).

### The Arbitrator Sets a Deadline to Exchange Witness and Exhibit Lists and then Allows Diehl to Ignore that Deadline

23. The arbitrator ordered the parties to submit their witness and exhibit lists by August 8, 2007 (**Exhibit 12**). WAMCO complied, and submitted its witness and exhibit lists timely. Diehl did not, which resulted in WAMCO receiving Diehl's witness and exhibit lists less than 5 days in advance of the hearing, in violation of the arbitrator's order, and contrary to AAA Commercial Rule 21(b).

24. WAMCO objected in writing to the late submission of Diehl's witness and exhibit lists (**Exhibit 13**). The arbitrator overruled that objection (**Exhibit 14**).

### The Arbitration Hearing

25. The AAA Arbitration was heard on August 13, 2007. Each side appeared by counsel. Jay Ehrlich testified for WAMCO, and Robert Rozman testified for Diehl.

26. The parties introduced numerous exhibits into evidence at the hearing.

27. At the conclusion of the hearing, the arbitrator set a date to submit fee affidavits, and then to submit post-closing briefs by September 19, 2007. The arbitrator then gave himself 30 days after the submission of post-closing briefs to render a final award.

28. WAMCO timely submitted a fee affidavit (**Exhibit 15**), along with a post-closing brief, which included a supplemental fee affidavit (**Exhibit 16**). WAMCO's post-closing brief

123253-1                                6

correctly recites the facts, identifies and explains the relevance of the testimonial and documentary evidence taken at the hearing, and explains WAMCO's legal argument.

**F.      The Award (Exhibit 17)**

29.    The Award issued on October 1, 2007, and was served by FAX the following day.

### III.    ARGUMENT

30.    The Award must be vacated because the arbitrator exceeded his authority. The Award does not draw its essence from the parties' contract. In particular, the arbitrator improperly re-wrote the Note by (1) reducing the interest rate, (2) extending the payment date for the October 2007 scheduled payment, (3) eliminating WAMCO's right to accelerate the debt for non-payment by Diehl, and (4) eliminating WAMCO's right to recoup its costs of collection for enforcement (including its right to recover attorneys' fees), due to Diehl's non-payment.

31.    The Award also re-writes the plain language of the APA. With respect to the management fee issue (Counts I-III), the Award makes the following statement:

> ... the parties could not have intended that Diehl would be obligated to pay management fees after WAMCO withdrew from the industry and became a holding company with only one employee and thus unable to provide management and consulting services. ...

As discussed above, ¶11 of the APA is a restrictive covenant, by which the parties expressly agreed that WAMCO would withdraw "from the industry" immediately after the closing. Therefore, WAMCO's right to management fees under the APA could not possibly depend on its continued presence in the industry from which the parties had expressly agreed that WAMCO would withdraw.

32.    The Award must also be vacated because it manifestly disregards the law. The evidence was undisputed that Diehl waived any right to contest its obligation to pay management fees due WAMCO; Diehl paid the management fee for years following the execution of the

APA. Moreover, Diehl's own business records acknowledged that management fee obligation during that entire time.

33. The supporting affidavit of Andrew R. Schwartz is also attached (**Exhibit 18**).

34. WAMCO has in its possession various supporting exhibits, many of which contain financial information about Diehl, which Diehl is likely to consider proprietary and confidential. The supporting brief WAMCO proposes to file will mention some of that information, as well. All information is in the possession of Diehl and its counsel; it was all produced in the AAA Arbitration.

35. WAMCO is willing to enter into a protective order, or to other reasonable measures to respect the confidentiality of Diehl's information, to the extent Diehl would prefer its proprietary information not to become a matter of public record. Therefore, WAMCO asks leave of Court to file a supporting brief and additional exhibits within two weeks, after Diehl's counsel has the opportunity to receive and review this motion, and to propose the terms of a protective order what would (a) protect the confidentiality of its business information, while (b) permitting the parties to litigate this motion effectively. To avoid unfair surprise to Diehl, WAMCO will serve this motion upon Diehl's counsel by e-mail.

## IV.   CONCLUSION

WHEREFORE, Wisconsin Automated Machinery Corp. moves this Court for the following relief:

A. Setting a briefing schedule on WAMCO's motion;

B. Entering an order vacating the Award, and

C. Granting such other and further relief as the Court deems necessary and appropriate.

123253-1                                  8

Respectfully submitted,
**WISCONSIN AUTOMATED MACHINERY CORP.**

**DATED:** December 4, 2007    By: _____
One of its attorneys

*Andrew R. Schwartz, Esq.*
SUGAR, FRIEDBERG & FELSENTHAL LLP
Counsel for Wisconsin Automated
 Machinery Corp.
30 North LaSalle Street, Suite 3000
Chicago, Illinois 60602
(312) 704-9400