## SECURITY AGREEMENT

THIS SECURITY AGREEMENT, made and entered into as of the 1st day of October, 2002, by and between DIEHL WOODWORKING MACHINERY, INC., an Indiana corporation ("Debtor"), located at 981 South Wabash Street, P. O. Box 465, Wabash, Indiana 46992-0465, and WISCONSIN AUTOMATED MACHINERY CORP., a Wisconsin corporation ("Secured Party"), located at 5301 West Dempster, Suite 308, Skokie, Illinois 60077;

### WITNESSETH:

WHEREAS, Debtor issued a certain Promissory Note, of even date herewith (the "Promissory Note"), in the original principal amount of $600,000, payable to the order of Secured Party, which Promissory Note was issued pursuant to a certain Asset Purchase Agreement, dated September 13, 2002 (the "Purchase Agreement") between Debtor and Secured Party; and

WHEREAS, this Security Agreement is being executed to secure full and prompt payment of the Promissory Note;

NOW, THEREFORE, in consideration of the premises, the mutual agreements herein and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1.  Definitions. In addition to other terms defined elsewhere herein, when used herein, the following terms shall have the following meanings:

"Liabilities" shall mean all obligations of Debtor hereunder, and all other debts, liabilities and obligations of Debtor to Secured Party, its successors and assigns, howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due, including without limitation under the Promissory Note.

"Default" shall mean the occurrence of any one or more of the following events: (a) Debtor fails to pay, when due, any amount on any of the Liabilities; (b) non-performance, misrepresentation or breach by Debtor of any representation, warranty or covenant contained herein or in any other agreement between Debtor and Secured Party; (c) Debtor becomes insolvent or unable to pay its debts as they mature or is adjudicated a bankrupt or applied for, consent to or acquiesces in the appointment of a trustee or receiver for it or any of its property or makes an assignment for the benefit of creditors, or in the absence of such application, consent or acquiescence, a trustee or receiver is appointed for Debtor or for a substantial part of its property; (d) any bankruptcy, reorganization, debt arrangement or other proceeding under any bankruptcy or insolvency law, or any dissolution or liquidation proceeding is instituted by or against Debtor; (e) any dissolution, merger or consolidation, or transfer of a substantial part of the property of Debtor; (f) any loss, theft, substantial damage or destruction to or of any of the Collateral, or the making of

EXHIBIT
3

00015

any levy, seizure or attachment thereof or thereon; or (g) any change in Debtor's financial condition or ability to pay the Liabilities deemed by Secured Party to be materially adverse or the occurrence of any other event as a result of which Secured Party deems itself insecure.

2. <u>Grant of Security Interest</u>. To secure the payment and performance of all Liabilities, Debtor hereby mortgages to Secured Party and hereby grants and assigns to Secured Party a continuing security interest in and to all properties, assets and interests of each Debtor listed on Exhibit A hereto, whether now or hereafter existing or acquired (herein individually and collectively called the "Collateral"), secondary in and subordinate solely to the lien and security interest of The LaSalle Bank in such Collateral.

3. <u>Representations, Warranties, Covenants and Agreements of Debtor</u>. Debtor hereby represents, warrants, covenants and agrees that (a) Debtor has been duly organized and is in good standing in the state of its formation listed above; (b) Debtor has full power and authority to execute and deliver this Agreement and perform all of such Debtor's obligations hereunder; (c) Debtor will from time to time, on request of Secured Party, execute or consent to the execution of such financing statements and other documents (and pay the costs of filing or recording same in all public offices deemed necessary by Secured Party), and do such other acts and things, all as Secured Party may reasonably request, to evidence, perfect and maintain a valid security interest in the Collateral; (d) the Collateral will be kept at Debtor's address shown above, unless Secured Party shall otherwise consent in writing, and Debtor will not sell, transfer, lease or otherwise dispose of any of the Collateral or any interest therein without the prior written consent of Secured Party, except for the use or sale of Collateral and collection of accounts in the ordinary and usual course of Debtor's business; (e) Debtor will at all times keep the Collateral in first-class order and repair, excepting any loss or damage or destruction that is fully covered by proceeds of insurance; (f) Debtor will at all times keep the Collateral insured against loss, damage, theft and other risks, in such amounts, for such periods and written by such companies, and under such policies and in such form, all as shall be reasonable under all of the circumstances of Debtor's business, and Debtor shall apply any proceeds of such insurance which may be received by either of them toward payment of the Liabilities, whether or not due, in such order of application as Secured Party may determine; (g) Secured Party may examine and inspect the Collateral or any part thereof, wherever located, at any reasonable time or times; and (h) except for the lien and security interest of The LaSalle Bank in the Collateral, to which the lien and security interest granted hereby is secondary in priority and subordinate, and assuming Secured Party has properly perfected, the security interest granted hereby will be a first priority security interest in the Collateral.

4. <u>Remedies Upon Default</u>. Whenever a Default shall be existing, all Liabilities may (notwithstanding any provisions of any other agreements between Debtor and Secured Party), at the option of Secured Party, and without demand or notice of any kind, be declared, and thereupon immediately shall become, due and payable, and Secured Party may exercise from time to time any and all rights and remedies available to it under applicable law to the fullest extent permitted thereby, including the rights of a secured party

00015

under the Uniform Commercial Code. Debtor agrees, in case of Default, to assemble, at their expense, all the Collateral at a convenient place acceptable to Secured Party, and to pay all costs of Secured Party of collection of all Liabilities and enforcement of rights hereunder, including reasonable attorneys' fees and legal expenses. Debtor hereby expressly waives, to the fullest extent permitted by applicable law, any and all notices, demands, advertisements, hearings or process of law in connection with the exercise by Secured Party of any of its rights and remedies upon Default. Any notification of intended disposition of any of the Collateral shall be deemed reasonable and properly given if given at least five (5) days before such disposition. Any proceeds of any of the Collateral may be applied by Secured Party to the payment of expenses in connection with the Collateral, including reasonable attorneys' fees and legal expenses, and any balance of such proceeds may be applied by Secured Party toward payment of such of the Liabilities and in such order of application, as Secured Party may from time to time elect.

    5.    <u>General</u>. No delay on the part of Secured Party in the exercise of any right or remedy shall operate as a waiver thereof, no waiver of any right or remedy shall operate as a future waiver and no single or partial exercise by Secured Party of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy.

    Any notice from Secured Party to Debtor if mailed shall be deemed given when mailed, by registered or certified mail, return receipt requested, postage prepaid, addressed to Debtor either at Debtor's address shown above, or at any other address of Debtor appearing on the records of Secured Party.

    The terms and provisions contained herein shall, unless the context otherwise requires, have the meanings and be construed as provided in the Uniform Commercial Code of Illinois. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. Whenever the context requires or permits words used in the singular herein shall be construed to mean or include the plural and vice-versa, and pronouns of any gender or neuter shall be deemed to mean or include any other gender and neuter.

    The rights and privileges of Secured Party hereunder shall inure to the benefit of its successors and assigns.

    This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

    "Facsimile" transmissions of signed documents shall be regarded and accepted as if they bore original signatures. Promptly after such facsimile transmission, the original document bearing the original signatures shall be provided to the other party.

3

000154

IN WITNESS WHEREOF, this Security Agreement has been duly executed as of the day and year first above written.

**Secured Party:**

WISCONSIN AUTOMATED
MACHINERY CORP.

By ___*(signed)*___
Paul Ehrlich, President

**Debtor:**

DIEHL WOODWORKING
MACHINERY, INC.

By _____
Robert Rozman, President

C:\MSOFFICE\WINWORD\WisconsinAutomated\ProductLinetoDiehl\SecurityAgtDiehl.doc\KSP\mer

IN WITNESS WHEREOF, this Security Agreement has been duly executed as of the day and year first above written.

**Secured Party:**

WISCONSIN AUTOMATED
MACHINERY CORP.

By_____
    Paul Ehrlich, President

**Debtor:**

DIEHL WOODWORKING
MACHINERY, INC.

By_/s/ Robert Rozman_____
    Robert Rozman, President

C:\MSOFFICE\WINWORD\WisconsinAutomated\ProductLinetoDiehl\SecurityAgtDiehl.doc\KSP\mer

4

EXHIBIT A
TO SECURITY AGREEMENT

**Collateral**

The Collateral consists of all of Debtor's right, title and interest in and to the following:

The Product Lines and Sale Assets (as defined in the Purchase Agreement).

All goods and equipment now owned or hereafter acquired, including, without limitation, all machinery, fixtures, vehicles (including motor vehicles and trailers), including all electronic equipment and industrial supply materials, including grinding wheels, abrasive products and accessories, and any interest in any of the foregoing, and all attachments, accessories, accessions, replacements, substitutions, additions, and improvements to any of the foregoing, wherever located;

All inventory, now owned or hereafter acquired, including, without limitation, all merchandise, raw materials, parts, supplies, packing and shipping materials, work in process and finished products including such inventory as is temporarily out of Debtor's custody or possession or in transit and including any returns upon any accounts or other proceeds, including insurance proceeds, resulting from the sale or disposition of any of the foregoing and any documents of title representing any of the above;

All contract rights and general intangibles now owned or hereafter acquired, including, without limitation, goodwill, trademarks, servicemarks, trade styles, trade names, patents, patent applications, leases, license agreements, franchise agreements, blueprints, drawings, purchase orders, customer lists, route lists, infringements, claims, computer programs, computer discs, computer tapes, literature, reports, catalogs, design rights, income tax refunds, payments of insurance and rights to payment of any kind;

All now existing and hereafter arising accounts, contract rights, royalties, license rights and all other forms of obligations owing to Debtor arising out of the sale or lease of goods, the licensing of technology or the rendering of services by Debtor, whether or not earned by performance, and any and all credit insurance, guaranties, and other security therefor, as well as all merchandise returned to or reclaimed by Debtor;

All documents, cash, deposit accounts, securities, securities entitlements, securities accounts, investment property, financial assets, letters of credit, certificates of deposit, instruments and chattel paper now owned or hereafter acquired and Debtor's books relating to the foregoing;

All copyright rights, copyright applications, copyright registrations and like protections in each work of authorship and derivative work thereof, whether published or

A-1

000157

published, now owned or hereafter acquired; all trade secret rights, including all rights to unpatented inventions, know-how, operating manuals, license rights and agreements and confidential information, now owned or hereafter acquired; all mask work or similar rights available for the protection of semiconductor chips, now owned or hereafter acquired; all claims for damages by way of any past, present and future infringement of any of the foregoing; and

All Debtor's books relating to the foregoing and any and all claims, rights and interests in any of the above and all substitutions for, additions and accessions to and proceeds thereof.

Without limitation of the foregoing, the Collateral shall include all the Debtor's right, title and interest in and to the following categories of assets as defined in the Uniform Commercial Code as adopted by the State of Illinois, as may be amended and in effect from time to time: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables and license fees), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, wherever located, whether nor owned or hereafter acquired.

## RESALE CERTIFICATE

Diehl Woodworking Machinery, Inc., an Indiana corporation, hereby certifies that it is registered with the Indiana Department of Revenue as a reseller and its Indiana Reseller Registration Number is 0104362707.

DIEHL WOODWORKING MACHINERY, INC.

By *Robert Rozman*
Robert Rozman, President

## UNANIMOUS WRITTEN CONSENT OF ALL OF THE SHAREHOLDERS AND THE BOARD OF DIRECTORS OF WISCONSIN AUTOMATED MACHINERY CORP.

The undersigned, being all of the Shareholders and all of the members of the Board of Directors of WISCONSIN AUTOMATED MACHINERY CORP., a Wisconsin corporation (the "Corporation"), pursuant to the Wisconsin Business Corporation Laws and the By-laws of the Corporation, do hereby consent to the adoption of the following resolutions:

RESOLVED, that this Corporation is hereby authorized to enter into a certain Asset Purchase Agreement, dated September 13, 2002 (the "Asset Purchase Agreement") by and between the Corporation and Diehl Woodworking Machinery, Inc. ("Diehl"), providing for, among other things, the sale by the Corporation of certain Product Lines and certain other assets and properties of the Corporation to, in substantially the form presented to these Directors, with such changes and amendments as the officer(s) of this Corporation executing the same may deem necessary or advisable to consummate the transactions authorized herein.

FURTHER RESOLVED, that the Board of Directors hereby approves of and ratifies any and all actions taken by any of the officers of this Corporation in connection with the negotiations by this Corporation in connection with the said sale of the Product Lines and certain other assets and properties of the Corporation and the preparation of the Asset Purchase Agreement.

FURTHER RESOLVED, that the proper officers of this Corporation are hereby authorized to take any and all such actions and to execute and deliver on behalf of this Corporation all such instruments and documents, including without limitation the Security Agreement in substantially the form of Exhibit B attached to the Asset Purchase Agreement, as they, or any of them, shall deem necessary or advisable in connection with the Asset Purchase Agreement, and to carry out the intent of the foregoing resolutions, and any such action or execution and delivery of any such instrument or document by any such officer shall be conclusive evidence that such officer deems the same and all the terms and provisions thereof to be necessary or advisable.

This Consent may be executed in any number of counterparts, all of which together shall constitute an original.

000160

IN WITNESS WHEREOF, the undersigned have hereunder set their hand this 1st day of October, 2002.

_____  
Paul Ehrlich

_____  
Jay Ehrlich

_____  
Dimitris Loukidis

_____  
Paul Ehrlich

_____  
Jay Ehrlich

_____  
Dimitris Loukidis

Being all of the Shareholders of
WISCONSIN AUTOMATED
MACHINERY CORP.

Being all of the Directors of
WISCONSIN AUTOMATED
MACHINERY CORP.

H:\DLR\Wisconsin Automated\Sale of Woodworking Product Line\wamdirectorsresolution.doc

000161

CERTIFIED COPY OF RESOLUTIONS
ADOPTED BY ALL OF THE SHAREHOLDERS
AND THE BOARD OF DIRECTORS OF
WISCONSIN AUTOMATED MACHINERY CORP.

I, JAY EHRLICH, DO HEREBY CERTIFY that I am a duly elected and acting Assistant Secretary of WISCONSIN AUTOMATED MACHINERY CORP., a corporation organized and existing under the laws of the State of Wisconsin (the "Corporation"), that the following is a true and correct copy of resolutions duly adopted by all of the Shareholders and the Board of Directors of the Corporation, and that said resolutions have not been annulled, amended or modified in any way or manner and are in full force and effect as of the date hereof.

RESOLVED, that this Corporation is hereby authorized to enter into a certain Asset Purchase Agreement, dated September 13, 2002 (the "Asset Purchase Agreement") by and between the Corporation and Diehl Woodworking Machinery, Inc. ("Diehl"), providing for, among other things, the sale by the Corporation of certain Product Lines and certain other assets and properties of the Corporation to Diehl, in substantially the form presented to these Directors, with such changes and amendments as the officer(s) of this Corporation executing the same may deem necessary or advisable to consummate the transactions authorized herein.

FURTHER RESOLVED, that the Board of Directors hereby approves of and ratifies any and all actions taken by any of the officers of this Corporation in connection with the negotiations by this Corporation in connection with the said sale of the Product Lines and certain other assets and properties of the Corporation and the preparation of the Asset Purchase Agreement.

FURTHER RESOLVED, that the proper officers of this Corporation are hereby authorized to take any and all such actions and to execute and deliver on behalf of this Corporation all such instruments and documents, including without limitation the Security Agreement in substantially the form of Exhibit B attached to the Asset Purchase Agreement, as they, or any of them, shall deem necessary or advisable in connection with the Asset Purchase Agreement, and to carry out the intent of the foregoing resolutions, and any such action or execution and delivery of any such instrument or document by any such officer shall be conclusive evidence that such officer deems the same and all the terms and provisions thereof to be necessary or advisable.

IN WITNESS WHEREOF, I have hereunto set my name as Assistant Secretary this 1st day of October, 2002.

_____
Jay Ehrlich, Assistant Secretary

H:\DLJ\Wisconsin Automated\Sale of Woodworking Product Line\Cert Resol Wisconsin Auto.doc

2

000163

UNANIMOUS WRITTEN
CONSENT OF THE BOARD OF DIRECTORS
OF DIEHL WOODWORKING MACHINERY, INC.

The undersigned, being all of the members of the Board of Directors of DIEHL WOODWORKING MACHINERY, INC., an Indiana corporation (the "Corporation"), pursuant to the Indiana Business Corporation Laws and the By-laws of the Corporation, do hereby consent to the adoption of the following resolutions:

RESOLVED, that this Corporation is hereby authorized to enter into a certain Asset Purchase Agreement, dated September 13, 2002 (the "Asset Purchase Agreement") by and between Wisconsin Automated Machinery Corp. ("Wisconsin Automated") and the Corporation, providing for, among other things, the purchase by the Corporation of certain Product Lines and certain other assets and properties of Wisconsin Automated, in substantially the form presented to these Directors, with such changes and amendments as the officer(s) of this Corporation executing the same may deem necessary or advisable to consummate the transactions authorized herein.

FURTHER RESOLVED, that this Corporation is hereby authorized to enter into (i) that certain Promissory Note ("Promissory Note") by this Corporation in favor of Wisconsin Automated, and (ii) that certain Security Agreement ("Security Agreement") by and between the Corporation and Wisconsin Automated in substantially the forms of Exhibits A and B, respectively, attached to the Asset Purchase Agreement, with such changes and amendments as the officer(s) of this Corporation executing the same may deem necessary or advisable to consummate the transactions authorized herein.

FURTHER RESOLVED, that the Board of Directors hereby approves of and ratifies any and all actions taken by any of the officers of this Corporation in connection with the negotiations by this Corporation in connection with the said acquisition of the Product Lines and certain other assets and properties of Wisconsin Automated and the preparation of the Asset Purchase Agreement.

FURTHER RESOLVED, that the proper officers of this Corporation are hereby authorized to take any and all such actions and to execute and deliver on behalf of this Corporation all such instruments and documents, as they, or any of them, shall deem necessary or advisable in connection with the Asset Purchase Agreement, Promissory Note and Security Agreement, and to carry out the intent of the foregoing resolutions, and any such action or execution and delivery of any such

instrument or document by any such officer shall be conclusive evidence that such officer deems the same and all the terms and provisions thereof to be necessary or advisable.

This Consent may be executed in any number of counterparts, all of which together shall constitute an original.

IN WITNESS WHEREOF, the undersigned have hereunder set their hand this 1st day of October, 2002.

_____
Paul Ehrlich

_____
Jay Ehrlich

_____
Dimitris K. Loukidis

_____
Howard Kempler

_____
Robert Rozman

Being all of the Directors of
DIEHL WOODWORKING
MACHINERY, INC.

H:\DLR\Wisconsin Automated\Sale of Woodworking Product Line\dwmdirectorsresolution.doc

00016

instrument or document by any such officer shall be conclusive evidence that such officer deems the same and all the terms and provisions thereof to be necessary or advisable.

This Consent may be executed in any number of counterparts, all of which together shall constitute an original.

IN WITNESS WHEREOF, the undersigned have hereunder set their hand this 1st day of October, 2002.

_____
Paul Ehrlich

_____
Jay Ehrlich

_____
Dimitris K. Loukidis

_____
Howard Kempler

*/s/ Robert Rozman*
_____
Robert Rozman

Being all of the Directors of
DIEHL WOODWORKING
MACHINERY, INC.

H:\DLR\Wisconsin Automated\Sale of Woodworking Product Line\dwmdirectorsresolution.doc

0001 64