## BEFORE THE AMERICAN ARBITRATION ASSOCIATION
## CHICAGO, ILLINOIS

| | | |
|---|---|---|
| WISCONSIN AUTOMATED MACHINERY CORP., | ) ) ) | |
|     *Claimant*, | ) ) | |
| v. | ) ) | No. 51 180 01918 06 |
| DIEHL WOODWORKING MACHINERY, INC., | ) | Arbitrator Morsch |
|     *Respondent*. | ) | |

## AFFIDAVIT OF ANDREW R. SCHWARTZ

Andrew R. Schwartz, a licensed attorney at law, certifies and states as follows pursuant to 735 ILCS 5/1-109:

1. I have personal knowledge of the facts alleged herein, and would so testify under oath if called as a witness at trial.

2. I am an attorney at law. I have been licensed to practice before the Courts of the State of Illinois continuously from November 10, 1988 to the present. I am also licensed to practice before the U.S. District Courts for the Northern District of Illinois, District of Colorado, and Western District of Wisconsin, as well as the U.S. Court of Appeals for the Seventh Circuit. I also have several *pro hac vice* admissions, including an admission to practice before the U.S. District Court for the Northern District of Indiana in a related lawsuit now pending there involving the parties to this case.

3. I am a partner at Sugar, Friedberg & Felsenthal LLP ("SF&F"), where I concentrate my practice in commercial and civil litigation. I have access to, and am a "custodian" of our billing records.

4. I have substantial experience handling commercial, civil and matrimonial litigation. In my 18+ years of practice before the Courts of this State, I have handled hundreds of civil cases, including numerous contested matrimonial cases. I hold an AV (highest) rating from

Martindale-Hubbell, and I was honored as one of the top attorneys in Illinois in the 2007 edition of *Illinois Super Lawyers*. I also have several publications to my credit, including an IICLE chapter on fraudulent transfer litigation, two *Illinois Bar Journal* articles on civil litigation, and an article on attorneys' fee litigation published in the ISBA Matrimonial Section newsletter. A copy of my current resume is attached as **Appendix 1**.

5.    The other SF&F timekeepers are associate attorneys at my office, whose rates are commensurate with their expertise and experience.

6.    SF&F represents Wisconsin Automated Machinery Corp. ("WAMCO") in the above-captioned matter. I am the SF&F billing partner responsible for this matter.

7.    SF&F has rendered valuable legal services to WAMCO and incurred certain charges in connection with the arbitration of this matter, and in connection with the related lawsuit now pending before the U.S. District Court for the Northern District of Indiana. The pertinent services and charges are accurately described in the attached petition.

8.    SF&F's charges are reasonable and proper. In support, I state as follows:

a.    I have substantial experience in civil and commercial litigation;

b.    My billing rate ($350/hr) is well within the range of fees charged by litigators practicing in the Chicago metropolitan area with comparable experience.

c.    The services rendered and costs are reasonable and were necessarily incurred in providing legal representation to WAMCO;

d.    The amount in controversy exceeds $500,000.

d.    Some of the issues in this case have involved contract and arbitration law, as well as relatively complex questions of choice-of-law, comity and civil procedure.

9.    I have kept careful records of the time spent working on behalf of WAMCO in connection with this case.

10.    Billing records are kept in the ordinary course of our practice at SF&F, using TABS III (ABA-approved legal billing software).    For each billable service, the SF&F timekeeper providing that service records each time entry at or immediately after he or she performs each and every item of billable work.    This is done by entering the following data, either onto time sheets, or by inputting it directly into a computer that is networked to our server:

- client;
- matter;
- date;
- billing attorney's initials;
- billing code;
- description of service; and
- hours spent, or fraction thereof.

11.    Similarly, costs are recorded by the individual advancing them, and given to the SF&F secretary for compilation.

12.    A billing secretary subsequently inputs the information written onto time cards into TABS III.    At the end of each billing period, our bookkeeper compiles and prints a detailed computer billing "time run" from the data entered by the timekeepers.

13.    Before an SF&F bill is finalized and submitted to WAMCO, I review a draft bill, at which time I check it for accuracy, and may discount or waive certain charges.    Any changes made to the time run are reflected in the final statement sent to the client.    SF&F followed this procedure with respect to the billing statements generated for WAMCO.

14.    I extracted all of the line items for which WAMCO seeks reimbursement from the SF&F bills issued to WAMCO, and from a work-in-progress report for August 2007.    The time entries in question are as follows:

```
8505.000 08/09/06   91  1    A      4  330.00    2.80    924.00  Meeting with Jay re: background facts.
8505.000 08/14/06   91  1    A      2  330.00    0.60    198.00  Telephone call with Michael Moss (representing Paul
                                                                 Ehrlich) re: background and settlement issues.
8505.000 08/15/06   91  1    A      2  330.00    0.40    132.00  Telephone call with attorney Greg Katsonas re:
                                                                 settlement issues.
8505.000 08/15/06   91  1    A      2  330.00    0.30     99.00  Telephone call with Jay re: same.
8505.000 08/16/06   91  1    A      2  330.00    0.30     99.00  Telephone call with Greg Katsonas.
8505.000 08/17/06   91  1    A      2  330.00    0.70    231.00  Telephone call with Jay re: settlement issues.
8505.000 08/28/06   91  1    A      2  330.00    0.20     66.00  Telephone call with Jay re: status and settlement
```

| Matter | Date | | | | | Qty | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | issues |
| 8505.000 | 08/30/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with opp. attorney Kotsanis re: removal |
| 8505.000 | 08/30/06 | 91 | 1 | A | 1 | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Jay re: same |
| 8505.000 | 08/30/06 | 91 | 1 | A | | 2 | 330.00 | 0.50 | 165.00 | Telephone call with Mike Moss re: global resolution of case |
| 8505.000 | 08/30/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Bruce Boxberger re: same |
| 8505.000 | 08/30/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Jay re: update on same |
| 8505.000 | 08/30/06 | 91 | 1 | A | | 8 | 330.00 | 0.30 | 99.00 | Office conference with AJA re: assigning research projects |
| 8505.000 | 08/30/06 | 91 | 1 | A | 1 | 8 | 330.00 | 0.20 | 66.00 | Office conference with WFM re: transactional documents potentially needed for settlement |
| 8505.000 | 08/31/06 | 91 | 1 | A | | 61 | 330.00 | 0.80 | 264.00 | E-mail to other counsel and parties re: global settlement |
| 8505.000 | 08/31/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Jay; review e-mail from Jay |
| 8505.000 | 08/31/06 | 91 | 1 | A | | 2 | 330.00 | 0.60 | 198.00 | Telephone call with Greg Katsonas and Jim Loukidis re: removal and global settlement issues |
| 8505.000 | 09/01/06 | 91 | 1 | A | | 2 | 330.00 | 0.40 | 132.00 | Telephone call with Greg Katsonis re: Loukidis will likely agree to removal; global settlement issues |
| 8505.000 | 09/01/06 | 91 | 1 | A | | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Jay re: same |
| 8505.000 | 09/05/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Jay and IN counsel Steve Hearn re: Indiana litigation |
| 8505.000 | 09/05/06 | 91 | 1 | A | | 61 | 330.00 | 0.30 | 99.00 | E-mails to client; reply to same |
| 8505.000 | 09/05/06 | 91 | 1 | A | | 12 | 330.00 | 0.40 | 132.00 | Review letter from Michael Moss; e-mail to Moss re: same |
| 8505.000 | 09/06/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review e-mail from Jay; teleconf. w/ Jay re: issues with Paul Ehrlich's settlement offer |
| 8505.000 | 09/06/06 | 91 | 1 | A | | 12 | 330.00 | 0.30 | 99.00 | Review client e-mail; telephone call with Jay regarding same. |
| 8505.000 | 09/06/06 | 91 | 1 | A | 1 | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Jay regarding same. |
| 8505.000 | 09/06/06 | 91 | 1 | A | | 6 | 330.00 | 0.20 | 66.00 | Letter to Michael Moss. |
| 8505.000 | 09/07/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Michael Moss re: settlement issues |
| 8505.000 | 09/07/06 | 91 | 1 | A | | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Jay regarding discussion with Moss; strategy. |
| 8505.000 | 09/08/06 | 91 | 1 | A | | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Jay re: settlement issues |
| 8505.000 | 09/11/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review e-mail traffic; reply to same |
| 8505.000 | 09/11/06 | 91 | 1 | A | | 2 | 330.00 | 0.70 | 231.00 | Telephone calls (x2) with Jay re: next steps |
| 8505.000 | 09/11/06 | 91 | 1 | A | | 61 | 330.00 | 0.40 | 132.00 | E-mail to Moss; teleconf. w/ Jay re: same |
| 8505.000 | 09/11/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Greg Katsonis re: same |
| 8505.000 | 09/12/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review e-mail from Jay; reply to same; e-mail to Greg Katsonis |
| 8505.000 | 09/13/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review Rozman's settlement proposal |
| 8505.000 | 09/13/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Greg Katsonis re: same; Loukidis' conditional agreement to file consent to removal |
| 8505.000 | 09/13/06 | 91 | 1 | A | | 61 | 330.00 | 0.20 | 66.00 | E-mail to client. |
| 8505.000 | 09/14/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Jay re: how to respond to Rozman's offer |
| 8505.000 | 09/14/06 | 91 | 1 | A | | 2 | 330.00 | 0.40 | 132.00 | Telephone call with Greg Katsonis re: removal |
| 8505.000 | 09/14/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Jay re: same |
| 8505.000 | 09/14/06 | 91 | 1 | A | | 2 | 330.00 | 0.40 | 132.00 | Telephone call with Jay and Greg Katsonis re: what Loukidis intends to do |
| 8505.000 | 09/14/06 | 91 | 1 | A | | 61 | 330.00 | 0.20 | 66.00 | E-mail to Michael Moss |
| 8505.000 | 09/15/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Jay re: issues for e-mail to others |
| 8505.000 | 09/15/06 | 91 | 1 | A | | 61 | 330.00 | 2.10 | 693.00 | E-mail to Jay re: response to Rozman offer; revise same and review e-mail traffic |
| 8505.000 | 09/15/06 | 91 | 1 | A | 1 | 2 | 330.00 | 0.50 | 165.00 | Telephone calls (x2) with Jay re: revising e-mail response to Rozman offer |
| 8505.000 | 09/15/06 | 91 | 1 | A | | 61 | 330.00 | 0.20 | 66.00 | E-mail to Michael Moss |
| 8505.000 | 09/15/06 | 91 | 1 | A | | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Jay re: "green light" to initiate court action; what to do next. |
| 8505.000 | 09/18/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Greg Katsonis re: Loukidis still hasn't made decision whether to litigate, but is "getting closer" |
| 8505.000 | 09/18/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review e-mail traffic; reply to same |
| 8505.000 | 09/19/06 | 91 | 1 | A | | 2 | 330.00 | 0.40 | 132.00 | Telephone calls with Jay and Greg K. re: removal |
| 8505.000 | 09/19/06 | 91 | 1 | A | | 12 | 330.00 | 0.50 | 165.00 | Review e-mail from Jay and Diehl's attached motion for remand and brief; e-mail same to Greg K.; e-mail to Jay re: conversation with Greg K. |
| 8505.000 | 09/19/06 | 91 | 1 | A | | 12 | 330.00 | 0.60 | 198.00 | Review e-mail from Moss w/ memo; forward same to Jay; reply e-mail to same |
| 8505.000 | 09/19/06 | 91 | 1 | A | | 12 | 330.00 | 0.30 | 99.00 | Review e-mail traffic; reply to same |
| 8505.000 | 09/19/06 | 91 | 1 | A | | 61 | 330.00 | 0.30 | 99.00 | E-mail to Greg K. re: removal |
| 8505.000 | 09/19/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Greg K. re: Loukidis' agreement to consent to removal |
| 8505.000 | 09/19/06 | 38 | 1 | A | | 1 | 250.00 | 0.20 | 50.00 | Meet with ARS re research issue on removal/motion to remand |
| 8505.000 | 09/19/06 | 91 | 1 | A | | 11 | 330.00 | 0.40 | 132.00 | Research Barth and Violi cases on shareholder fiduciary duty and arbitrability issues. |
| 8505.000 | 09/19/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Jay re: strategy questions. |
| 8505.000 | 09/19/06 | 91 | 1 | A | | 11 | 330.00 | 0.20 | 66.00 | Research additional cases re: fiduciary duty. |

4

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 8505.000 | 09/20/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Greg K. re: Jim's offer to sell |
| 8505.000 | 09/20/06 | 91 | 1 | A | | 2 | 330.00 | 0.60 | 198.00 | Telephone call with client re: strategy issues |
| 8505.000 | 09/21/06 | 91 | 1 | A | | 2 | 330.00 | 0.40 | 132.00 | Telephone call with Jay re: what to do now that Loukidis has refused to sign a consent to remove; e-mail traffic to/from Jay and Greg K. re: removal. |
| 8505.000 | 09/21/06 | 91 | 1 | A | 1 | 61 | 330.00 | 0.30 | 99.00 | E-mail traffic to / from Jay and Greg K. re: removal |
| 8505.000 | 09/22/06 | 91 | 1 | A | 1 | 2 | 330.00 | 0.20 | 66.00 | Telephone calls (x2) with Jay |
| 8505.000 | 09/22/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Steve Hearn re: removal issues |
| 8505.000 | 09/22/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review e-mail traffic from Jay |
| 8505.000 | 09/26/06 | 91 | 1 | A | | 12 | 330.00 | 0.30 | 99.00 | Review e-mail traffic; reply to same |
| 8505.000 | 09/26/06 | 91 | 1 | A | | 10 | 330.00 | 1.60 | 528.00 | Draft brief in support of motion to dismiss |
| 8505.000 | 09/26/06 | 91 | 1 | A | | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Steve Hearn re: Indiana procedural questions |
| 8505.000 | 09/27/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Jay re: strategy |
| 8505.000 | 09/28/06 | 91 | 1 | A | | 10 | 330.00 | 1.50 | 495.00 | Draft brief in support of motion to dismiss (continued) |
| 8505.000 | 09/28/06 | 38 | 1 | A | | 1 | 250.00 | 1.00 | 250.00 | Meet with ARS on Indiana research issue on procedural issue of moving to dismiss based on arbitration agreement including what is proper motion vehicle under Indiana law and whether court can consider facts outside the pleading |
| 8505.000 | 09/28/06 | 91 | 1 | A | 1 | 11 | 330.00 | 1.40 | 80.00 | Research additional cases pulled by AJA; draft Motion to dismiss brief continued. |
| 8505.000 | 09/29/06 | 91 | 1 | A | | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Jay re: strategy and questions about motion to dismiss |
| 8505.000 | 09/29/06 | 91 | 1 | A | | 10 | 330.00 | 1.00 | 330.00 | Draft brief in support of MTD (continued) |
| 8505.000 | 09/29/06 | 91 | 1 | A | | 61 | 330.00 | 0.30 | 99.00 | E-mail to Steve Hearn; teleconf. w/ Steve re: MTD |
| 8505.000 | 09/29/06 | 91 | 1 | A | | 8 | 330.00 | 1.60 | 528.00 | Office conference with client; draft affidavit re: TR 12(B)(1) motion; e-mails to/from Steve Hearn; reviewed e-mail from Jay |
| 8505.000 | 10/04/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Jay re: what to do next |
| 8505.000 | 10/05/06 | 91 | 1 | A | | 61 | 330.00 | 0.70 | 231.00 | E-mail to Diehl and other shareholders requesting information |
| 8505.000 | 10/10/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone calls with client re: strategy |
| 8505.000 | 10/10/06 | 91 | 1 | A | | 2 | 330.00 | 0.60 | 198.00 | Telephone calls with client and Steve Hearn re removal issue; reviewed multiple e-mails from |
| 8505.000 | 10/16/06 | 91 | 1 | A | | 12 | 330.00 | 0.30 | 99.00 | Review e-mail traffic b/w Jay and Ken Perlman |
| 8505.000 | 10/17/06 | 91 | 1 | A | | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Greg Katsonis re: Greg is not representing Jim in IN case. |
| 8505.000 | 10/19/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review e-mail traffic; reply to same |
| 8505.000 | 10/25/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone call with Jay re: Paul's request for visitation; research re: same |
| 8505.000 | 10/26/06 | 91 | 1 | A | 1 | 12 | 330.00 | 0.10 | 33.00 | Review e-mail from Jay to Jim Loukidis |
| 8505.000 | 10/27/06 | 91 | 1 | A | | 2 | 330.00 | 0.50 | 165.00 | Telephone call with Jay re: strategic issues |
| 8505.000 | 10/31/06 | 91 | 1 | A | | 12 | 330.00 | 0.10 | 33.00 | Review e-mail from Jay; reply to same |
| 8505.000 | 11/10/06 | 91 | 1 | A | 1 | 12 | 330.00 | 0.10 | 33.00 | Review client e-mails; reply to same |
| 8505.000 | 11/16/06 | 91 | 1 | A | | 2 | 330.00 | 0.40 | 132.00 | Telephone call with Jay re: settlement strategy options |
| 8505.000 | 11/17/06 | 91 | 1 | A | | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Jay re: settlement issues |
| 8505.000 | 12/04/06 | 91 | 1 | A | 1 | 2 | 330.00 | 0.40 | 132.00 | Telephone call with Jay re: settlement |
| 8505.000 | 12/08/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review e-mail from Steve Hearn w/ remand order; e-mail to Jay re: same |
| 8505.000 | 12/11/06 | 91 | 1 | A | 1 | 2 | 330.00 | 0.10 | 33.00 | Telephone call with Bruce Boxberger re: scheduling teleconference tomorrow morning |
| 8505.000 | 12/12/06 | 91 | 1 | A | | 2 | 330.00 | 0.50 | 165.00 | Telephone call with Bruce Boxberger re: settlement issues |
| 8505.000 | 12/12/06 | 91 | 1 | A | 1 | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Jay re: same |
| 8505.000 | 12/12/06 | 91 | 1 | A | | 2 | 330.00 | 0.20 | 66.00 | Telephone call with Jay re: e-mail from Rozman |
| 8505.000 | 12/13/06 | 91 | 1 | A | | 61 | 330.00 | 0.30 | 99.00 | E-mail to Bruce Boxberger |
| 8505.000 | 12/13/06 | 91 | 1 | A | | 12 | 330.00 | 0.30 | 99.00 | Review e-mails from Robert Rozman |
| 8505.000 | 12/13/06 | 91 | 1 | A | | 12 | 330.00 | 0.50 | 165.00 | Review e-mails from Jay; reply to same |
| 8505.000 | 12/13/06 | 91 | 1 | A | | 2 | 330.00 | 0.40 | 132.00 | Telephone call with Jay re: what to do about Rozman's notice of shareholder meeting |
| 8505.000 | 12/14/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review e-mail traffic from Jay; reply to same |
| 8505.000 | 12/18/06 | 91 | 1 | A | | 61 | 330.00 | 0.30 | 99.00 | E-mail to Boxberger. |
| 8505.000 | 12/18/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review e-mails from Jay; e-mail to Steve Hearn. |
| 8505.000 | 12/18/06 | 91 | 1 | A | | 2 | 330.00 | 0.40 | 132.00 | Telephone call with Jay re: issuing demand letters |
| 8505.000 | 12/18/06 | 91 | 1 | A | | 12 | 330.00 | 0.30 | 99.00 | Review e-mail and attachments from Bruce Boxberger |
| 8505.000 | 12/19/06 | 91 | 1 | A | | 12 | 330.00 | 0.30 | 99.00 | Review e-mail traffic; teleconf. w/ Jay re: same |
| 8505.000 | 12/19/06 | 91 | 1 | A | | 11 | 330.00 | 0.30 | 99.00 | Research AAA rules; pull AAA commercial arbitration demand form |
| 8505.000 | 12/19/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review WAMCO corporate by-laws |
| 8505.000 | 12/20/06 | 91 | 1 | A | | 12 | 330.00 | 1.00 | 330.00 | Review Diehl's response in opposition to MTD |
| 8505.000 | 12/21/06 | 91 | 1 | A | | 12 | 330.00 | 0.30 | 99.00 | Review e-mails from Jay; teleconf. w/ Jay re: same |
| 8505.000 | 12/21/06 | 91 | 1 | A | | 17 | 330.00 | 0.20 | 66.00 | Prepare arbitration submission to Diehl |
| 8505.000 | 12/21/06 | 91 | 1 | A | | 6 | 330.00 | 0.20 | 66.00 | Letter to Bruce Boxberger |
| 8505.000 | 12/21/06 | 91 | 1 | A | | 10 | 330.00 | 1.20 | 396.00 | Draft reply in support of motion to dismiss |
| 8505.000 | 12/22/06 | 91 | 1 | A | | 12 | 330.00 | 1.00 | 330.00 | Review cases cited in Diehl's response to MTD |
| 8505.000 | 12/22/06 | 91 | 1 | A | | 12 | 330.00 | 0.30 | 99.00 | Review e-mail traffic; e-mail to AAA |
| 8505.000 | 12/22/06 | 91 | 1 | A | | 61 | 330.00 | 0.30 | 99.00 | E-mail to Bruce Boxberger |
| 8505.000 | 12/22/06 | 91 | 1 | A | | 10 | 330.00 | 0.80 | 264.00 | Draft reply in support of MTD |

5

| | Date | | | | | | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 8505.000 | 12/22/06 | 91 | 1 | A | | 12 | 330.00 | 0.20 | 66.00 | Review e-mail traffic; e-mail to Greg Kotsonis |
| 8505.000 | 12/22/06 | 91 | 1 | A | | 2 | 330.00 | 0.30 | 99.00 | Telephone calls (x2) with Jay re: MTD |
| 8505.000 | 12/25/06 | 91 | 1 | A | | 11 | 330.00 | 2.10 | 693.00 | Research case law re: fiduciary issues re: Diehl demand. |
| 8505.000 | 12/25/06 | 91 | 1 | A | | 10 | 330.00 | 2.30 | 759.00 | Draft MTD reply |
| 8505.000 | 12/26/06 | 91 | 1 | A | | 11 | 330.00 | 2.30 | 759.00 | Research case law on IN contract issues and questions of contract interpretation. |
| 8505.000 | 12/26/06 | 91 | 1 | A | | 10 | 330.00 | 2.10 | 693.00 | Draft MTD reply brief (continued) |
| 8505.000 | 12/27/06 | 91 | 1 | A | | 9 | 330.00 | 0.30 | 99.00 | Revise MTD Reply. |
| ARCH | | | | | | | | | | |
| 8505.000 | 12/29/06 | 91 | 1 | A | | 10 | 330.00 | 1.20 | 396.00 | Draft MTD reply continued; e-mail to Jay. |
| 8505.000 | 01/02/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: strategy for court hearing tomorrow |
| 8505.000 | 01/02/07 | 91 | 1 | A | | 2 | 350.00 | 0.70 | 245.00 | Telephone call with Jay and Steve Hearn re: same; e-mail to Steve |
| 8505.000 | 01/03/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Steve Hearn re: what happened in Court this morning;  e-mail to Jay re: same |
| 8505.000 | 01/03/07 | 91 | 1 | A | 1 | 2 | 350.00 | 0.10 | 35.00 | Telephone call with Jay re: status |
| 8505.000 | 01/03/07 | 91 | 1 | A | 1 | 6 | 350.00 | 0.10 | 35.00 | Letter to client |
| 8505.000 | 01/05/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review e-mail traffic; reply to same |
| 8505.000 | 01/09/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with AAA case administrator Wilma Rooney re: arbitrator candidates |
| 8505.000 | 01/09/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Matt Henderson re: Matt would be willing to serve; e-mail to AAA nominating Matt |
| 8505.000 | 01/09/07 | 91 | 1 | A | | 15 | 350.00 | 0.20 | 70.00 | Work on AAA conflict sheet |
| 8505.000 | 01/10/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with AAA case manager Wilma Rooney; e-mails to Wilma |
| 8505.000 | 01/10/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone calls (x2) with Jay re: WAMCO corporate issues |
| 8505.000 | 01/11/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review letters from Wilma Rooney and Bruce Boxberger; teleconf. w/ Jay re: same |
| 8505.000 | 01/15/07 | 91 | 1 | A | | 6 | 350.00 | 1.00 | 350.00 | Letter to Wilma Rooney at AAA; e-mail to Jay forwarding same |
| 8505.000 | 01/16/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review and reply to e-mail traffic |
| 8505.000 | 01/16/07 | 91 | 1 | A | | 9 | 350.00 | 0.30 | 105.00 | Revise letter to AAA; e-mail to Steve Hearn |
| 8505.000 | 01/19/07 | 91 | 1 | A | | 12 | 350.00 | 0.10 | 35.00 | Review Court orders on hearing |
| 8505.000 | 01/19/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay re: same |
| 8505.000 | 01/19/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Steve Hearn re: same |
| 8505.000 | 01/23/07 | 91 | 1 | A | | 12 | 350.00 | 0.40 | 140.00 | Review e-mail traffic; reply to same |
| 8505.000 | 01/23/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: litigation strategy |
| 8505.000 | 01/24/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review e-mail traffic |
| 8505.000 | 01/25/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review letter from Bruce Boxberger to Wilma Rooney; letter to Jay forwarding same |
| 8505.000 | 01/25/07 | 91 | 1 | A | | 61 | 350.00 | 0.40 | 140.00 | E-mail to Bruce Boxberger |
| 8505.000 | 01/28/07 | 91 | 1 | A | | 6 | 350.00 | 0.20 | 70.00 | Letter to AAA case administrator. |
| 8505.000 | 01/29/07 | 91 | 1 | A | | 11 | 350.00 | 0.30 | 105.00 | Research stay procedure under Federal Arbitration Act; revise letter to Wilma Rooney re: same |
| 8505.000 | 01/31/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Steve Hearn re: mediator candidates |
| 8505.000 | 02/03/07 | 91 | 1 | A | | 10 | 350.00 | 1.50 | 525.00 | Draft answer, affirmative defenses and CC (WAMCO) |
| 8505.000 | 02/03/07 | 91 | 1 | A | | 61 | 350.00 | 0.40 | 140.00 | E-mail to Jay re: compulsory C-C issue |
| 8505.000 | 02/05/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: strategic issues in Diehl lawsuit |
| 8505.000 | 02/05/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Greg Kotsonis; e-mail to Greg re: same |
| 8505.000 | 02/13/07 | 91 | 1 | A | | 2 | 350.00 | 0.50 | 175.00 | Telephone call with Jay re: pleading issues |
| 8505.000 | 02/14/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Steve Hearn re: compulsory counterclaim issues |
| 8505.000 | 02/15/07 | 91 | 1 | A | | 61 | 350.00 | 0.60 | 210.00 | E-mails to Steve Hearn; review replies to same |
| 8505.000 | 02/15/07 | 91 | 1 | A | | 2 | 350.00 | 0.40 | 140.00 | Telephone call with Steve and Jay re: strategy regarding counterclaims |
| 8505.000 | 02/15/07 | 91 | 1 | A | | 9 | 350.00 | 0.60 | 210.00 | Revise Answers and WAMCO counterclaim |
| 8505.000 | 02/15/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay and AAA case manager Wilma Rooney re: amending claim |
| 8505.000 | 02/16/07 | 91 | 1 | A | | 2 | 350.00 | 0.40 | 140.00 | Telephone calls (x2) with Jay re: revised arbitration demand and Boxberger's response |
| 8505.000 | 02/16/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail from Boxberger; reply to same |
| 8505.000 | 02/19/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review e-mail traffic and WAMCO tax return; teleconf. w/ Jay re: sending information to Boxberger |
| 8505.000 | 02/19/07 | 91 | 1 | A | | 6 | 350.00 | 0.20 | 70.00 | Letter to Bruce Boxberger |
| 8505.000 | 02/20/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review e-mails from Jay; reply to same. |
| 8505.000 | 02/22/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail from AAA; forward same to Jay |
| 8505.000 | 02/23/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic; reply to same |
| 8505.000 | 02/26/07 | 91 | 1 | A | | 2 | 350.00 | 0.60 | 210.00 | Telephone calls (x2) with opp. attorney Boxberger re: settlement discussions and corporate issues |
| 8505.000 | 02/27/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail from Boxberger; reply to same |
| 8505.000 | 02/28/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review and reply to e-mail traffic |
| 8505.000 | 02/28/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay re: negotiation strategy |
| 8505.000 | 03/01/07 | 91 | 1 | A | | 12 | 350.00 | 1.10 | 385.00 | Review e-mail traffic; long e-mail to opp. attorney Boxberger re: same |
| 8505.000 | 03/01/07 | 91 | 1 | A | | 2 | 350.00 | 0.60 | 210.00 | Telephone calls with Jay re: e-mail traffic |
| 8505.000 | 03/01/07 | 91 | 1 | A | | 10 | 350.00 | 1.00 | 350.00 | Draft Interrogatories (Jay) to Diehl |

| | | | | | | | | | Description |
|---|---|---|---|---|---|---|---|---|---|
| 8505.000 | 03/02/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review e-mail traffic; teleconf. w/ Jay re: discovery |
| 8505.000 | 03/02/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review e-mail traffic; reply to same |
| 8505.000 | 03/02/07 | 91 | 1 | A | | 12 | 350.00 | 0.40 | 140.00 | Review e-mail traffic; reply to same. |
| 8505.000 | 03/05/07 | 91 | 1 | A | | 8 | 350.00 | 1.40 | 490.00 | Office conference with Jay and Shanita G. re: preparing for WAMCO corporate meeting (.6); teleconf. w/ Bruce Boxberger and Robert Rozman re: WAMCO corporate meeting (.4); teleconf. w/ Bruce Boxberger and Robert Rozman re: global settlement discussions (.4) |
| 8505.000 | 03/05/07 | 91 | 1 | A | | 12 | 350.00 | 0.50 | 175.00 | Review FAX from Steve Hearn; letter to Jay forwarding same |
| 8505.000 | 03/05/07 | 91 | 1 | A | | 10 | 350.00 | 1.70 | 595.00 | Draft discovery requests. |
| 8505.000 | 03/06/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: Diehl's latest pleadings; discovery issues |
| 8505.000 | 03/06/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review e-mail traffic re: scheduling of hearing |
| 8505.000 | 03/06/07 | 91 | 1 | A | | 9 | 350.00 | 0.70 | 245.00 | Revise written discovery requests |
| 8505.000 | 03/06/07 | 91 | 1 | A | 2 | 61 | 350.00 | 0.10 | 35.00 | E-mail to Steve Hearn |
| 8505.000 | 03/09/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review letter from AAA; e-mail to Jay forwarding same |
| 8505.000 | 03/09/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Steve Hearn re: discovery and pleadings |
| 8505.000 | 03/09/07 | 91 | 1 | A | | 2 | 350.00 | 0.40 | 140.00 | Telephone call with Jay re: Diehl litigation |
| 8505.000 | 03/09/07 | 91 | 1 | A | | 61 | 350.00 | 1.00 | 350.00 | review e-mail traffic; reply to same |
| 8505.000 | 03/09/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review letter from mediator Whiteleather |
| 8505.000 | 03/09/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Greg Kotsonis re: settlement issues |
| 8505.000 | 03/11/07 | 91 | 1 | A | | 12 | 350.00 | 0.40 | 140.00 | Review e-mail from opp. attorney Boxberger (.1); e-mail to Jay forwarding same (.3). |
| 8505.000 | 03/12/07 | 91 | 1 | A | | 2 | 350.00 | 0.40 | 140.00 | Telephone call with Jay re: strategic issues re: WAMCO and Diehl |
| 8505.000 | 03/14/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail from Jay; reply to same. |
| 8505.000 | 03/16/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review email from AAA; reply to same; email from Jay and reply to same. |
| 8505.000 | 03/19/07 | 91 | 1 | A | | 12 | 350.00 | 0.50 | 175.00 | Review e-mail traffic from Wilma Rooney at AAA; reply to same and forward e-mails to Jay |
| 8505.000 | 03/23/07 | 91 | 1 | A | 2 | 12 | 350.00 | 0.10 | 35.00 | Review e-mail traffic; reply to same |
| 8505.000 | 03/26/07 | 91 | 1 | A | | 10 | 350.00 | 1.00 | 350.00 | Draft answers of Jay and WAMCO to Amended Complaint; e-mail to Jay re: same. |
| 8505.000 | 03/26/07 | 91 | 1 | A | | 10 | 350.00 | 0.40 | 140.00 | Draft 3rd-party complaint vs. Rozman. |
| 8505.000 | 03/27/07 | 91 | 1 | A | | 12 | 350.00 | 0.50 | 175.00 | Review e-mail from Jay; revise pleadings |
| 8505.000 | 03/27/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: decision not to file new MTD |
| 8505.000 | 03/27/07 | 91 | 1 | A | | 61 | 350.00 | 0.20 | 70.00 | E-mail to Jay |
| 8505.000 | 03/29/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review e-mail traffic; reply to same; e-mail to Bruce Boxberger |
| 8505.000 | 03/30/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic; e-mails to and from Jay |
| 8505.000 | 04/02/07 | 91 | 1 | A | | 61 | 350.00 | 0.20 | 70.00 | E-mail to Steve Hearn |
| 8505.000 | 04/02/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay re: mediation dates and discovery issues |
| 8505.000 | 04/02/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Steve Hearn re: mediation and litigation issues |
| 8505.000 | 04/04/07 | 91 | 1 | A | 2 | 12 | 350.00 | 0.10 | 35.00 | Review e-mail from Jay |
| 8505.000 | 04/04/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay re: same. |
| 8505.000 | 04/11/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay re: discovery issues |
| 8505.000 | 04/12/07 | 91 | 1 | A | | 17 | 350.00 | 0.40 | 140.00 | Prepare for conference call |
| 8505.000 | 04/12/07 | 91 | 1 | A | | 2 | 350.00 | 0.80 | 280.00 | Telephone conference call with arbitrator Morsch and opp. counsel re: preliminary hearing |
| 8505.000 | 04/12/07 | 91 | 1 | A | | 2 | 350.00 | 0.40 | 140.00 | Telephone call with Jay re: same |
| 8505.000 | 04/12/07 | 91 | 1 | A | | 12 | 350.00 | 0.40 | 140.00 | Review e-mail traffic; reply to same |
| 8505.000 | 04/16/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review e-mail traffic; forward same to Jay |
| 8505.000 | 04/18/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: discovery issues |
| 8505.000 | 04/20/07 | 91 | 1 | A | 2 | 12 | 350.00 | 0.10 | 35.00 | Review e-mail from Steve Hearn; forward same to Jay |
| 8505.000 | 04/26/07 | 91 | 1 | A | | 10 | 350.00 | 1.50 | 525.00 | Draft supplement to AAA claim; e-mail same to Jay for verification and review |
| 8505.000 | 04/26/07 | 91 | 1 | A | 1 | 2 | 350.00 | 0.50 | 175.00 | Telephone calls (x3) with Jay re: arbitration and discovery issues |
| 8505.000 | 04/26/07 | 91 | 1 | A | 2 | 61 | 350.00 | 0.10 | 35.00 | E-mail to AAA to file Supplement to Claim |
| 8505.000 | 04/27/07 | 91 | 1 | A | | 61 | 350.00 | 0.20 | 70.00 | E-mail to Bruce Boxberger |
| 8505.000 | 05/10/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail and letter from AAA; forward same to Jay |
| 8505.000 | 05/10/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay re: Diehl's request for more time to answer discovery |
| 8505.000 | 05/11/07 | 91 | 1 | A | | 12 | 350.00 | 0.80 | 280.00 | Review Rozman's pleadings and Diehl's response to supplement to AAA claim |
| 8505.000 | 05/11/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: what to do about same; review e-mail traffic |
| 8505.000 | 05/14/07 | 91 | 1 | A | | 8 | 350.00 | 0.20 | 70.00 | Office conference with AJA re: assigning research re: joinder and jurisdictional issues |
| 8505.000 | 05/14/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review e-mail traffic; reply to same |
| 8505.000 | 05/14/07 | 38 | 1 | A | | 1 | 270.00 | 0.80 | 216.00 | Meet with ARS re Indiana research issue and case background; research on third party defendant |

Case 1:07-cv-06840    Document 19-4    Filed 02/26/2008    Page 9 of 60

|  |  |  |  |  |  |  |  |  |  | ability to bring counterclaim and review Wisconsin business act for jurisdictional issues; review counterclaim; meet with ARS re research findings |
|---|---|---|---|---|---|---|---|---|---|---|
| 8505.000 | 05/15/07 | 91 | 1 | A |  | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic |
| 8505.000 | 05/15/07 | 91 | 1 | A |  | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: same, and preparation for AAA teleconference |
| 8505.000 | 05/15/07 | 91 | 1 | A |  | 17 | 350.00 | 0.50 | 175.00 | Prepare for conference call with AAA arbitrator |
| 8505.000 | 05/15/07 | 91 | 1 | A |  | 2 | 350.00 | 0.40 | 140.00 | Telephone call with AAA arbitrator and opp. atty |
| 8505.000 | 05/15/07 | 91 | 1 | A |  | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: same |
| 8505.000 | 05/15/07 | 91 | 1 | A |  | 12 | 350.00 | 1.00 | 350.00 | Review e-mail traffic; reply to same |
| 8505.000 | 05/15/07 | 91 | 1 | A |  | 12 | 350.00 | 0.40 | 140.00 | Review Diehl's motion to stay arbitration |
| 8505.000 | 05/15/07 | 91 | 1 | A |  | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: same |
| 8505.000 | 05/15/07 | 91 | 1 | A |  | 12 | 350.00 | 0.40 | 140.00 | Review FAX from Jay; teleconf. w/ Jay re: same |
| 8505.000 | 05/15/07 | 91 | 1 | A |  | 11 | 350.00 | 0.50 | 175.00 | Research Indiana Arbitration Act |
| 8505.000 | 05/16/07 | 91 | 1 | A |  | 8 | 350.00 | 0.20 | 70.00 | Office conference with AJA re: arbitration issue |
| 8505.000 | 05/16/07 | 91 | 1 | A |  | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic |
| 8505.000 | 05/16/07 | 38 | 1 | A | 1 | 1 | 270.00 | 0.30 | 81.00 | Meet with ARS on arbitration research; research on preemption of FAA over state law |
| 8505.000 | 05/17/07 | 38 | 1 | A |  | 1 | 270.00 | 0.70 | 189.00 | Research on choice of law issues with respect to arbitration clauses and confer with ARS re same |
| 8505.000 | 05/18/07 | 91 | 1 | A |  | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: new documents found by Jay |
| 8505.000 | 05/21/07 | 91 | 1 | A |  | 2 | 350.00 | 0.40 | 140.00 | Telephone call with Steve Hearn re: upcoming hearings |
| 8505.000 | 05/21/07 | 91 | 1 | A |  | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay re: DQ, discovery and stay issues |
| 8505.000 | 05/21/07 | 91 | 1 | A |  | 10 | 350.00 | 0.50 | 175.00 | Draft Answer/Affirmative Defenses to Royman C-C |
| 8505.000 | 05/21/07 | 91 | 1 | A |  | 61 | 350.00 | 0.20 | 70.00 | E-mail to Jay |
| 8505.000 | 05/22/07 | 91 | 1 | A |  | 12 | 350.00 | 0.60 | 210.00 | Review e-mail traffic; reply to same |
| 8505.000 | 05/22/07 | 91 | 1 | A |  | 8 | 350.00 | 0.20 | 70.00 | Office conference with AJA re: arbitration question |
| 8505.000 | 05/22/07 | 38 | 1 | A |  | 1 | 270.00 | 2.10 | 567.00 | Research on choice of law issues relating to arbitration procedures |
| 8505.000 | 05/23/07 | 91 | 1 | A |  | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic from Steve Hearn; reply to same |
| 8505.000 | 05/23/07 | 91 | 1 | A |  | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: Hearn's e-mail |
| 8505.000 | 05/23/07 | 91 | 1 | A |  | 61 | 350.00 | 0.30 | 105.00 | E-mail to Steve Hearn |
| 8505.000 | 05/23/07 | 91 | 1 | A |  | 11 | 350.00 | 0.30 | 105.00 | Research WI corporate law |
| 8505.000 | 05/23/07 | 91 | 1 | A |  | 61 | 350.00 | 0.20 | 70.00 | E-mail to Steve Hearn |
| 8505.000 | 05/25/07 | 91 | 1 | A |  | 12 | 350.00 | 1.00 | 350.00 | Review interrogatory answers and response to request for production of documents |
| 8505.000 | 05/25/07 | 91 | 1 | A |  | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: discovery responses |
| 8505.000 | 05/26/07 | 91 | 1 | A |  | 10 | 350.00 | 3.60 | 1260.00 | Draft motion for discovery sanctions in arbitration |
| 8505.000 | 05/26/07 | 91 | 1 | A | 1 | 12 | 350.00 | 0.10 | 35.00 | Review e-mail from Jay; reply to same. |
| 8505.000 | 05/27/07 | 91 | 1 | A |  | 10 | 350.00 | 1.40 | 490.00 | Draft motion for discovery sanctions in arbitration (continued) |
| 8505.000 | 05/28/07 | 91 | 1 | A |  | 10 | 350.00 | 2.10 | 735.00 | Draft motion to compel (arbitration continued) |
| 8505.000 | 05/28/07 | 91 | 1 | A |  | 61 | 350.00 | 0.20 | 70.00 | E-mail to Jay |
| 8505.000 | 05/29/07 | 91 | 1 | A |  | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay (x2) re: Motion to Stay and discovery issues |
| 8505.000 | 05/29/07 | 91 | 1 | A |  | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic; reply to same |
| 8505.000 | 05/30/07 | 91 | 1 | A |  | 2 | 350.00 | 0.30 | 105.00 | Telephone calls with Jay (x2) re: discovery |
| 8505.000 | 05/30/07 | 91 | 1 | A |  | 8 | 350.00 | 0.30 | 105.00 | Office conference with SAD re: removal issue |
| 8505.000 | 05/30/07 | 91 | 1 | A |  | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: strategy |
| 8505.000 | 05/30/07 | 91 | 1 | A |  | 9 | 350.00 | 0.80 | 280.00 | Revise motion for discovery sanctions in arbitration |
| 8505.000 | 05/30/07 | 76 | 1 | A | 1 | 8 | 270.00 | 0.30 | 81.00 | Office conference with A. Schwartz regarding research on removal and diversity jurisdiction. |
| 8505.000 | 05/31/07 | 91 | 1 | A |  | 12 | 350.00 | 0.30 | 105.00 | Review interpleader claim |
| 8505.000 | 05/31/07 | 91 | 1 | A |  | 15 | 350.00 | 0.30 | 105.00 | Work on motion for sanctions in arbitration |
| 8505.000 | 05/31/07 | 91 | 1 | A |  | 6 | 350.00 | 1.00 | 350.00 | Letter to Bruce Boxberger re: discovery issues |
| 8505.000 | 05/31/07 | 91 | 1 | A |  | 2 | 350.00 | 0.40 | 140.00 | Telephone calls (x2) with Jay Ehrlich re: what to do about Diehl's interpleader complaint |
| 8505.000 | 05/31/07 | 76 | 1 | A |  | 11 | 270.00 | 1.20 | 324.00 | Research jurisdiction issues |
| 8505.000 | 06/01/07 | 91 | 1 | A |  | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Wilma Rooney at AAA re: motion for discovery sanctions |
| 8505.000 | 06/01/07 | 76 | 1 | A |  | 11 | 270.00 | 2.20 | 594.00 | Research jurisdiction and draft notice of removal |
| 8505.000 | 06/01/07 | 91 | 1 | A |  | 11 | 350.00 | 0.80 | 280.00 | Research removal issues |
| 8505.000 | 06/01/07 | 91 | 1 | A |  | 12 | 350.00 | 1.20 | 420.00 | Review SAD draft regarding notice of removal; edit same |
| 8505.000 | 06/02/07 | 91 | 1 | A |  | 10 | 350.00 | 1.00 | 350.00 | Draft Response to Motion for Stay |
| 8505.000 | 06/02/07 | 91 | 1 | A |  | 11 | 350.00 | 0.80 | 280.00 | Research case law and statutes regarding removal |
| 8505.000 | 06/02/07 | 91 | 1 | A | 2 | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay regarding same |
| 8505.000 | 06/02/07 | 91 | 1 | A |  | 9 | 350.00 | 0.40 | 140.00 | Revise Removal petition |
| 8505.000 | 06/03/07 | 91 | 1 | A |  | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay regarding removal and discovery issues |
| 8505.000 | 06/04/07 | 91 | 1 | A |  | 9 | 350.00 | 1.40 | 490.00 | Revise Notice of Removal (continued) |
| 8505.000 | 06/04/07 | 91 | 1 | A |  | 2 | 350.00 | 0.30 | 105.00 | Telephone calls with JE re: same |
| 8505.000 | 06/04/07 | 91 | 1 | A |  | 61 | 350.00 | 1.00 | 350.00 | E-mails to client and Steve Hearn |
| 8505.000 | 06/04/07 | 91 | 1 | A |  | 10 | 350.00 | 0.80 | 280.00 | Draft discovery letter for Hearn to send to Boxberger |
| 8505.000 | 06/04/07 | 91 | 1 | A |  | 2 | 350.00 | 0.40 | 140.00 | Telephone call with Steve Hearn re: removal |
| 8505.000 | 06/04/07 | 91 | 1 | A |  | 2 | 350.00 | 0.80 | 280.00 | Telephone calls (x3) with JE re: removal issues |

| Matter | Date | | | | | | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 8505.000 | 06/05/07 | 91 | 1 | A | | 12 | 350.00 | 0.50 | 175.00 | Review e-mail traffic; reply to same |
| 8505.000 | 06/05/07 | 91 | 1 | A | | 2 | 350.00 | 0.50 | 175.00 | Telephone calls (x2) with Jay re: arbitration and removal issues |
| 8505.000 | 06/05/07 | 91 | 1 | A | | 12 | 350.00 | 0.40 | 140.00 | Review Boxberger's e-mail; reply to same; review Larry Barnard's e-mail |
| 8505.000 | 06/05/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Wilma Rooney |
| 8505.000 | 06/05/07 | 91 | 1 | A | | 10 | 350.00 | 1.00 | 350.00 | Draft MTD Rozman Counterclaim |
| 8505.000 | 06/05/07 | 91 | 1 | A | | 7 | 350.00 | 0.20 | 70.00 | Memorandum re same to SAD |
| 8505.000 | 06/05/07 | 91 | 1 | A | | 10 | 350.00 | 0.30 | 105.00 | Draft Motion to Leave to file 2nd Supplemental to Arb Claim |
| 8505.000 | 06/05/07 | 91 | 1 | A | 1 | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay Ehrlich re: lawsuit |
| 8505.000 | 06/06/07 | 91 | 1 | A | | 10 | 350.00 | 0.80 | 280.00 | Draft 2nd supplement to arbitration claim |
| 8505.000 | 06/06/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic |
| 8505.000 | 06/06/07 | 91 | 1 | A | | 8 | 350.00 | 0.40 | 140.00 | Office conferences with MIW re: interpleader issue |
| 8505.000 | 06/06/07 | 91 | 1 | A | | 8 | 350.00 | 0.20 | 70.00 | Office conference with SAD re: research for MTD Rozman C-C |
| 8505.000 | 06/06/07 | 91 | 1 | A | | 9 | 350.00 | 0.60 | 210.00 | Revise MTD Rozman C-C |
| 8505.000 | 06/06/07 | 76 | 1 | A | 1 | 8 | 270.00 | 0.40 | 108.00 | Office conference with A. Schwartz regarding research applicable law, standing and jurisdiction |
| 8505.000 | 06/06/07 | 97 | 1 | A | | 1 | 275.00 | 0.80 | 220.00 | Interpleader research. |
| 8505.000 | 06/07/07 | 91 | 1 | A | | 11 | 350.00 | 0.40 | 140.00 | Research cases pulled by MIW re: interpleader issue |
| 8505.000 | 06/07/07 | 91 | 1 | A | | 9 | 350.00 | 0.30 | 105.00 | Revise Second Supplement |
| 8505.000 | 06/07/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic; teleconf. w/ JE re: settlement strategy |
| 8505.000 | 06/07/07 | 91 | 1 | A | 2 | 61 | 350.00 | 0.10 | 35.00 | E-mail to arbitrator Morsch and other side forwarding Second Supplement |
| 8505.000 | 06/07/07 | 97 | 1 | A | 1 | 1 | 275.00 | 0.20 | 55.00 | Discuss research with ARS. |
| 8505.000 | 06/08/07 | 91 | 1 | A | | 61 | 350.00 | 0.20 | 70.00 | E-mail to opp. counsel |
| 8505.000 | 06/08/07 | 91 | 1 | A | | 11 | 350.00 | 0.40 | 140.00 | Research internal affairs doctrine in Indiana; met w/ SAD (x2) re: same |
| 8505.000 | 06/08/07 | 76 | 1 | A | | 12 | 270.00 | 1.50 | 405.00 | Review case law in Indiana and Wisconsin re: which state law applies (.4); MTD (1.1). |
| 8505.000 | 06/11/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review SAD re-draft; revise same; e-mail to Jay |
| 8505.000 | 06/11/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Wilma Rooney re: scheduling deadlines |
| 8505.000 | 06/11/07 | 91 | 1 | A | | 61 | 350.00 | 0.20 | 70.00 | E-mail to Steve Hearn |
| 8505.000 | 06/11/07 | 97 | 1 | A | 2 | 1 | 275.00 | 0.40 | 110.00 | Office conference with ARS re: responding to interpleader in federal court |
| 8505.000 | 06/11/07 | 91 | 1 | A | | 2 | 350.00 | 0.50 | 175.00 | Telephone calls (x2) with JE re: progress on various matters, e-mail from Bruce Boxberger re: settlement; how to react |
| 8505.000 | 06/11/07 | 91 | 1 | A | 2 | 61 | 350.00 | 0.10 | 35.00 | E-mail to Boxberger re: settlement |
| 8505.000 | 06/11/07 | 91 | 1 | A | | 8 | 350.00 | 0.30 | 105.00 | Office conference with MIW re: strategy - filing a Rule 12(b)(6) motion vs. filing answer |
| 8505.000 | 06/11/07 | 91 | 1 | A | | 10 | 350.00 | 0.50 | 175.00 | Draft Answer/Aff. Defenses to Diehl's supplemental complaint for interpleader |
| 8505.000 | 06/11/07 | 76 | 1 | A | 1 | 15 | 270.00 | 0.20 | 54.00 | Pull cases for A. Schwartz cited in MTD |
| 8505.000 | 06/12/07 | 91 | 1 | A | | 12 | 350.00 | 0.40 | 140.00 | Review e-mail traffic and reply to same |
| 8505.000 | 06/12/07 | 91 | 1 | A | | 12 | 350.00 | 0.50 | 175.00 | Review Diehl's response to discovery motion in arbitration |
| 8505.000 | 06/12/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with JE re: Diehl's response to same |
| 8505.000 | 06/13/07 | 91 | 1 | A | | 10 | 350.00 | 1.50 | 525.00 | Draft reply in support of discovery sanctions motion (arbitration) |
| 8505.000 | 06/13/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic; reply to same |
| 8505.000 | 06/13/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: discovery issues |
| 8505.000 | 06/14/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review letter from Arbitrator; forward same to JE |
| 8505.000 | 06/14/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with JE re: discovery in arbitration |
| 8505.000 | 06/20/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay re: latest round of pleadings filed in Federal case |
| 8505.000 | 06/20/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review pleadings received today |
| 8505.000 | 06/20/07 | 91 | 1 | A | | 10 | 350.00 | 0.30 | 105.00 | Draft answer to Loukidis' cross-claim |
| 8505.000 | 06/21/07 | 91 | 1 | A | 2 | 10 | 350.00 | 0.20 | 70.00 | Draft application for admission to N.D. Indiana Federal Court pro hac vice |
| 8505.000 | 06/21/07 | 91 | 1 | A | | 6 | 350.00 | 0.20 | 70.00 | Letter to Steve Hearn |
| 8505.000 | 06/21/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: motions and pleadings recently filed |
| 8505.000 | 06/21/07 | 91 | 1 | A | | 9 | 350.00 | 0.20 | 70.00 | Revise Answer/Aff. Defenses to Loukidis' cross-claim |
| 8505.000 | 06/21/07 | 91 | 1 | A | | 1 | 350.00 | 1.20 | 420.00 | Telephone conference witrh JEre Motion for JOP |
| 8505.000 | 06/21/07 | 91 | 1 | A | 1 | 61 | 350.00 | 0.20 | 70.00 | E-mail to JE forwarding same |
| 8505.000 | 06/22/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic; reply to same |
| 8505.000 | 06/22/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with JE re: jurisdictional issue |
| 8505.000 | 06/22/07 | 91 | 1 | A | | 61 | 350.00 | 0.30 | 105.00 | E-mail to JE Federal jurisdictional consent issue |
| 8505.000 | 06/25/07 | 91 | 1 | A | | 10 | 350.00 | 1.50 | 525.00 | Draft Response to Motion to Stay |
| 8505.000 | 06/25/07 | 91 | 1 | A | | 10 | 350.00 | 0.30 | 105.00 | Draft response to motion to set hearing on Motion to Stay |
| 8505.000 | 06/25/07 | 91 | 1 | A | | 6 | 350.00 | 0.20 | 70.00 | Letter to Arbitrator Morsch |
| 8505.000 | 06/25/07 | 91 | 1 | A | | 10 | 350.00 | 2.50 | 875.00 | Draft response to motion to stay (continued) |
| 8505.000 | 06/25/07 | 91 | 1 | A | | 8 | 350.00 | 0.30 | 105.00 | Office conference with SAD re: arbitration research issue |
| 8505.000 | 06/25/07 | 76 | 1 | A | | 8 | 270.00 | 0.40 | 108.00 | Office conference with A. Schwartz regarding research regarding FAA and IN Arb Act. |
| 8505.000 | 06/26/07 | 91 | 1 | A | 1 | 10 | 350.00 | 0.80 | 280.00 | Draft response to motion to stay (continued) |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 8505.000 | 06/26/07 | 91 | 1 | A | | 61 | 350.00 | 0.30 | 105.00 | E-mails (x5) to Steve Hearn |
| 8505.000 | 06/26/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review Diehl's answer to Count V of Second Supplemental Complaint in Arbitration |
| 8505.000 | 06/26/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay re: what to do about same |
| 8505.000 | 06/26/07 | 91 | 1 | A | | 10 | 350.00 | 0.30 | 105.00 | Draft JE answer to Diehl's supplemental complaint |
| 8505.000 | 06/26/07 | 91 | 1 | A | | 9 | 350.00 | 0.30 | 105.00 | Revise response to Diehl's motion to set hearing |
| 8505.000 | 06/26/07 | 91 | 1 | A | | 61 | 350.00 | 0.30 | 105.00 | E-mail to JE re: JOP motion |
| 8505.000 | 06/26/07 | 91 | 1 | A | | 6 | 350.00 | 1.30 | 455.00 | Letter to Arbitrator |
| 8505.000 | 06/27/07 | 91 | 1 | A | 1 | 61 | 350.00 | 0.10 | 35.00 | E-mail to Jay Ehrlich |
| 8505.000 | 06/27/07 | 91 | 1 | A | 1 | 61 | 350.00 | 0.10 | 35.00 | E-mail to Arbitrator |
| 8505.000 | 06/27/07 | 91 | 1 | A | | 10 | 350.00 | 1.10 | 385.00 | Draft WAMCO's Arb. Interrogatories |
| 8505.000 | 06/27/07 | 91 | 1 | A | | 10 | 350.00 | 1.00 | 350.00 | Draft WAMCO's Arb. Document Requests |
| 8505.000 | 06/27/07 | 91 | 1 | A | 1 | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Jay Ehrlich re: same |
| 8505.000 | 06/28/07 | 91 | 1 | A | | 2 | 350.00 | 0.50 | 175.00 | Telephone call with arbitrator, opp. counsel and AAA case administrator |
| 8505.000 | 06/28/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with JE re: same |
| 8505.000 | 06/28/07 | 91 | 1 | A | | 61 | 350.00 | 0.20 | 70.00 | E-mail to Steve Hearn's office |
| 8505.000 | 06/29/07 | 91 | 1 | A | | 12 | 350.00 | 0.40 | 140.00 | Review e-mail traffic; reply to same |
| 8505.000 | 06/29/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review discovery letter from Boxberger |
| 8505.000 | 07/01/07 | 91 | 1 | A | 1 | 10 | 350.00 | 1.50 | 525.00 | Draft Motion to Compel |
| 8505.000 | 07/01/07 | 91 | 1 | A | | 12 | 350.00 | 1.10 | 385.00 | Review e-mail from client; revisions to JOP Motion; work on JOP Motion |
| 8505.000 | 07/02/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with JE |
| 8505.000 | 07/02/07 | 91 | 1 | A | | 61 | 350.00 | 0.20 | 70.00 | E-mail to opp. counsel re: delivery of package |
| 8505.000 | 07/02/07 | 91 | 1 | A | | 12 | 350.00 | 0.50 | 175.00 | Review e-mail traffic; reply to same |
| 8505.000 | 07/02/07 | 91 | 1 | A | | 12 | 350.00 | 1.10 | 385.00 | Review additional documents produced by Diehl; ARCH met w/ JE re: same |
| 8505.000 | 07/02/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review Diehl's motion for extension of time and 2nd supplemental complaint for interpleader |
| 8505.000 | 07/05/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail from Bruce Boxberger w/ letter; reply to same |
| 8505.000 | 07/05/07 | 91 | 1 | A | | 2 | 350.00 | 0.40 | 140.00 | Telephone call with Jay Ehrlich re: discovery issues; additional potential claim |
| 8505.000 | 07/06/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review order denying Diehl leave to file its second supplemental interpleader complaint; review cited case; teleconf. w/ Jay E. re: same |
| 8505.000 | 07/06/07 | 91 | 1 | A | | 2 | 350.00 | 0.40 | 140.00 | Telephone call with Jay Ehrlich re: JOP motion and interpleader issue |
| 8505.000 | 07/06/07 | 91 | 1 | A | 1 | 8 | 350.00 | 0.30 | 105.00 | Office conference with MRW re: interpleader issues |
| 8505.000 | 07/06/07 | 91 | 1 | A | | 10 | 350.00 | 0.60 | 210.00 | Draft JOP brief (continued) |
| 8505.000 | 07/07/07 | 91 | 1 | A | | 10 | 350.00 | 1.50 | 525.00 | Draft JOP brief (continued) |
| 8505.000 | 07/08/07 | 91 | 1 | A | | 61 | 350.00 | 0.30 | 105.00 | E-mail to Jay Ehrlich; review reply to same; reply to same |
| 8505.000 | 07/08/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review Rule 16 Order in Federal Case |
| 8505.000 | 07/09/07 | 91 | 1 | A | | 6 | 350.00 | 1.30 | 455.00 | Letter to Arbitrator Morsch |
| 8505.000 | 07/09/07 | 91 | 1 | A | 1 | 61 | 350.00 | 0.20 | 70.00 | E-mail to Steve Hearn re: magistrate |
| 8505.000 | 07/09/07 | 91 | 1 | A | | 61 | 350.00 | 0.20 | 70.00 | E-mail to Steve Hearn re: JOP motion |
| 8505.000 | 07/09/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone calls with Steve Hearn and JE re: consent to have magistrate judge preside over case |
| 8505.000 | 07/09/07 | 91 | 1 | A | | 61 | 350.00 | 0.20 | 70.00 | E-mails to JE and opp. counsel |
| 8505.000 | 07/10/07 | 91 | 1 | A | | 10 | 350.00 | 0.20 | 70.00 | Draft motion to appear at Rule 26 conference by telephone and proposed order granting same |
| 8505.000 | 07/10/07 | 91 | 1 | A | | 10 | 350.00 | 0.60 | 210.00 | Draft WAMCO joinder to Ehrlich JOP motion / WAMCO JOP motion |
| 8505.000 | 07/10/07 | 91 | 1 | A | 2 | 8 | 350.00 | 0.40 | 140.00 | Office conference with MRW re: procedural issues with WAMCO joinder |
| 8505.000 | 07/10/07 | 91 | 1 | A | | 17 | 350.00 | 0.50 | 175.00 | Prepare for conference call |
| 8505.000 | 07/10/07 | 91 | 1 | A | | 2 | 350.00 | 0.90 | 315.00 | Telephone call with Arbitrator and opp. counsel re: discovery issues |
| 8505.000 | 07/10/07 | 83 | 1 | A | | 4 | 350.00 | 0.40 | 140.00 | Meet with ARS to evaluate procedural options re: interpleader |
| 8505.000 | 07/10/07 | 83 | 1 | A | 1 | 1 | 350.00 | 0.40 | 140.00 | Meet with ARS to discuss options for addressing arguments made by Diehl, refuting same and procedural mechanisms for presenting arguments. |
| 8505.000 | 07/11/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review letter from AAA; forward same to Jay |
| 8505.000 | 07/11/07 | 91 | 1 | A | 1 | 10 | 350.00 | 0.20 | 70.00 | Draft Joinder to JOP Motion (continued) |
| 8505.000 | 07/12/07 | 83 | 1 | A | | 23 | 350.00 | 0.80 | 280.00 | Work with ARS on reply brief - JOP Motion |
| 8505.000 | 07/16/07 | 91 | 1 | A | | 8 | 350.00 | 0.60 | 210.00 | Office conference with JE |
| 8505.000 | 07/17/07 | 91 | 1 | A | | 12 | 350.00 | 0.60 | 210.00 | Review Rozman response to MTD counterclaim; researched Jorgensen case cited by Rozman |
| 8505.000 | 07/17/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with JE re: same |
| 8505.000 | 07/17/07 | 91 | 1 | A | | 10 | 350.00 | 0.50 | 175.00 | Draft Reply - MTD Rozman counterclaim |
| 8505.000 | 07/18/07 | 91 | 1 | A | | 10 | 350.00 | 0.80 | 280.00 | Draft reply - MTD Rozman CC |
| 8505.000 | 07/19/07 | 91 | 1 | A | | 9 | 350.00 | 0.50 | 175.00 | Revise reply - MTD Rozman CC |
| 8505.000 | 07/19/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with opp. attorneys re: Rule 26 conference |
| 8505.000 | 07/19/07 | 91 | 1 | A | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail traffic |
| 8505.000 | 07/22/07 | 91 | 1 | A | | 12 | 350.00 | 0.60 | 210.00 | Review and revise Planning Meeting Schedule |
| 8505.000 | 07/22/07 | 91 | 1 | A | | 61 | 350.00 | 0.20 | 70.00 | E-mail to opposing counsel re: same |
| 8505.000 | 07/23/07 | 91 | 1 | A | | 12 | 350.00 | 0.40 | 140.00 | Review e-mail from Larry Barnard; reply to same |
| 8505.000 | 07/23/07 | 91 | 1 | A | | 12 | 350.00 | 0.30 | 105.00 | Review and reply to e-mail traffic |
| 8505.000 | 07/24/07 | 91 | 1 | A | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Greg Kotsonis re: outstanding issues |

| Matter | Date | | | | | Hours | Rate | | Amount | Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 8505.000 | 07/24/07 | 91 | 1 | A | | 2 | 350.00 | 0.60 | 210.00 | Telephone call with arbitrator and opp. counsel re: final preliminary conference |
| 8505.000 | 07/24/07 | 91 | 1 | A | | 12 | 350.00 | 0.40 | 140.00 | Review Diehl's JOP reply; met w/ MRW re: same |
| 8505.000 | 07/24/07 | 91 | 1 | A | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with JE re: same |
| 8505.000 | 07/25/07 | 91 | 1 | A | | 10 | 350.00 | 1.00 | 350.00 | Draft reply in support of JOP motion |
| 8505.000 | 07/25/07 | 76 | 1 | A | | 10 | 350.00 | 1.30 | 455.00 | Draft JOP reply (continued) |
| 8505.000 | 07/25/07 | 91 | 1 | A | | 11 | 270.00 | 0.30 | 81.00 | Research re: JOP reply |
| 8505.000 | 07/26/07 | 91 | 1 | A | 1 | 10 | 350.00 | 0.70 | 245.00 | Draft JOP reply (continued) |
| 8505.000 | 07/27/07 | 91 | 1 | A | | 10 | 350.00 | 0.50 | 175.00 | Draft Rule 26(a) disclosure; e-mail same to JE |
| 8505.000 | 07/27/07 | 91 | 1 | A | | 8 | 350.00 | 0.30 | 105.00 | Office conference with JE re: newly-provided financial information |
| 8505.000 | 07/27/07 | 83 | 1 | A | 2 | 23 | 350.00 | 0.20 | 70.00 | Work with ARS regarding assessment of issues for oral argument on Motion for JOP |
| 8505.000 | 07/30/07 | 91 | 1 | A | | 2 | 350.00 | 0.40 | 140.00 | Telephone call with JE re: preparing for hearings; review and reply to e-mail traffic; review 7/30/07 Order; Telephone call with JE re: same |
| 8505.000 | 08/01/07 | 91 | 1 | P | | 12 | 350.00 | 0.60 | 210.00 | Review Diehl's motion to tender funds; draft response in opposition to same |
| 8505.000 | 08/01/07 | 91 | 1 | P | | 12 | 350.00 | 0.30 | 105.00 | Review e-mail traffic; reply to same |
| 8505.000 | 08/01/07 | 91 | 1 | P | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with JE re: discovery and settlement issues |
| 8505.000 | 08/01/07 | 91 | 1 | P | | 9 | 350.00 | 0.50 | 175.00 | Review and revise Rule 26 disclosure statement |
| 8505.000 | 08/02/07 | 91 | 1 | P | | 8 | 350.00 | 1.50 | 525.00 | Office conference with JE re: open issues for Rule 26(a) submission |
| 8505.000 | 08/02/07 | 91 | 1 | P | | 6 | 350.00 | 0.20 | 70.00 | Letter to opp. counsel |
| 8505.000 | 08/03/07 | 91 | 1 | P | | 2 | 350.00 | 0.50 | 175.00 | Telephone call with JE; revise damage calculations |
| 8505.000 | 08/03/07 | 91 | 1 | P | | 12 | 350.00 | 0.50 | 175.00 | Review and reply to e-mail traffic |
| 8505.000 | 08/03/07 | 91 | 1 | P | | 12 | 350.00 | 0.30 | 105.00 | Review letter from Wilma Rooney re: Diehl's non-Payment of AAA fees |
| 8505.000 | 08/03/07 | 91 | 1 | P | | 11 | 350.00 | 0.20 | 70.00 | Research AAA rules re: effect of same |
| 8505.000 | 08/03/07 | 91 | 1 | P | | 12 | 350.00 | 0.30 | 105.00 | Review Order re: deposit of funds; e-mail to JE forwarding same; teleconf. w/ JE re: same |
| 8505.000 | 08/03/07 | 91 | 1 | P | | 12 | 350.00 | 0.60 | 210.00 | Review and reply to e-mail traffic |
| 8505.000 | 08/04/07 | 91 | 1 | P | | 10 | 350.00 | 0.40 | 140.00 | Draft witness and exhibit lists for arbitration |
| 8505.000 | 08/05/07 | 91 | 1 | P | | 2 | 350.00 | 0.40 | 140.00 | Telephone call with JE re prep for hearing. |
| 8505.000 | 08/06/07 | 91 | 1 | P | | 12 | 350.00 | 0.10 | 35.00 | Review AAA invoice; e-mail to Jay forwarding same |
| 8505.000 | 08/06/07 | 91 | 1 | P | | 61 | 350.00 | 0.10 | 35.00 | E-mail to opposing counsel re: Rule 26(a) disclosures |
| 8505.000 | 08/06/07 | 91 | 1 | P | | 8 | 350.00 | 0.30 | 105.00 | Office conference with JE re: trial exhibits |
| 8505.000 | 08/06/07 | 91 | 1 | P | | 10 | 350.00 | 0.30 | 105.00 | Draft list of witnesses and exhibits (continued) |
| 8505.000 | 08/06/07 | 91 | 1 | P | | 12 | 350.00 | 0.20 | 70.00 | Review Diehl's Rule 26(a) Initial Disclosures |
| 8505.000 | 08/07/07 | 91 | 1 | P | | 12 | 350.00 | 0.40 | 140.00 | Review Diehl's motion to continue arbitration; e-mail same to JE; draft response to same |
| 8505.000 | 08/07/07 | 91 | 1 | P | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Wilma Rooney and Larry Barnard re: Diehl's non-payment of arbitrator's deposit |
| 8505.000 | 08/07/07 | 91 | 1 | P | | 17 | 350.00 | 4.30 | 1505.00 | Prepare for arbitration hearing |
| 8505.000 | 08/07/07 | 91 | 1 | P | | 61 | 350.00 | 0.20 | 70.00 | E-mail to Steve Hearn re 8/16 hearing |
| 8505.000 | 08/08/07 | 91 | 1 | P | | 17 | 350.00 | 2.10 | 735.00 | Prepare for hearing (continued) |
| 8505.000 | 08/08/07 | 91 | 1 | P | | 12 | 350.00 | 0.20 | 70.00 | Review e-mail from Wilma Rooney; forward same to JE; reply to Diehl's motion for continuance |
| 8505.000 | 08/09/07 | 91 | 1 | P | | 12 | 350.00 | 0.60 | 210.00 | Review e-mail from AAA; Diehl's witness and exhibit lists |
| 8505.000 | 08/09/07 | 91 | 1 | P | | 17 | 350.00 | 5.50 | 1925.00 | Prepare for arbitration hearing |
| 8505.000 | 08/09/07 | 91 | 1 | P | | 61 | 350.00 | 0.30 | 105.00 | E-mail traffic to opp. counsel |
| 8505.000 | 08/10/07 | 91 | 1 | P | | 17 | 350.00 | 6.50 | 2275.00 | Prepare for trial |
| 8505.000 | 08/11/07 | 91 | 1 | P | | 17 | 350.00 | 5.90 | 2065.00 | Prepare for arbitration hearing |
| 8505.000 | 08/12/07 | 91 | 1 | P | | 17 | 350.00 | 5.50 | 1925.00 | Prepare for arbitration hearing (continued) |
| 8505.000 | 08/13/07 | 91 | 1 | P | | 22 | 350.00 | 8.50 | 2975.00 | Trial (Arbitration Hearing). |
| 8505.000 | 08/14/07 | 91 | 1 | P | | 2 | 350.00 | 0.50 | 175.00 | Telephone call with JE re 8/16/07 Rule 216 conference; e-mail to Steve Hearn. |
| 8505.000 | 08/15/07 | 91 | 1 | P | | 12 | 350.00 | 0.40 | 140.00 | Review Diehl's withdrawal of motion to stay teleconf. w/ JE and Steve H. re: same |
| 8505.000 | 08/15/07 | 91 | 1 | P | | 2 | 350.00 | 0.30 | 105.00 | Telephone call with Judge Nuechterlein's clerk re: hearing tomorrow |
| 8505.000 | 08/15/07 | 91 | 1 | P | | 2 | 350.00 | 0.40 | 140.00 | Telephone call with JE and Steve Hearn (x2) re arbitration issues |
| 8505.000 | 08/16/07 | 91 | 1 | P | | 2 | 350.00 | 0.20 | 70.00 | Telephone call with JE re: what happened in Court today |
| 8505.000 | 08/16/07 | 91 | 1 | P | | 12 | 350.00 | 0.20 | 70.00 | Review AAA letter; e-mail to JE forwarding same |
| 8505.000 | 09/04/07 | 91 | 1 | P | | 12 | 350.00 | 0.20 | 70.00 | Review Rozman's Rule 26(a) initial disclosure statement; letter to Jay forwarding same |
| 8505.000 | 09/04/07 | 91 | 1 | P | | 10 | 350.00 | 1.00 | 175.00 | Draft fee affidavit |

15.    Some of the work charged to WAMCO was performed in the District Court case.

I have included that time in this fee affidavit for the following reasons:

a. All of the work included in this affidavit was performed on behalf of WAMCO to enforce the WAMCO/Diehl Asset Purchase Agreement and documents related to that Asset Purchase Agreement;

b. Much of the work performed in the District Court case has yielded information used by WAMCO in this arbitration. For instance, the parties in this arbitration litigated the arbitrability of this case in the District Court case. Likewise, the parties agreed to use discovery documents exchanged in the District Court case. When Diehl failed to produce numerous responsive documents in the lawsuit (then pending in Indiana state court), WAMCO filed a renewed notice to remove the case to Federal Court, which prompted Diehl to produce significant additional discovery responses; and

c. There is a significant overlap of issues between the two cases. As a result, much of the research pertinent to this case was performed in connection with the District Court case. Likewise, some of the pleadings used by WAMCO in this arbitration were derived from pleadings filed in the District Court case.

16.    I expect to incur additional charges for work yet to be performed in this matter, including the preparation of a post-closing brief, as well as work not yet posted on our TABS III system. I will submit a separate affidavit for those charges with my post-closing brief.

FURTHER AFFIANT SAITH NAUGHT.

The undersigned hereby states on his oath that the factual allegations contained in the foregoing **Affidavit** are true and correct to the best of my knowledge and belief.

ANDREW R. SCHWARTZ

Subscribed and sworn to this
5th day of September, 2007

Notary Public

OFFICIAL SEAL
SHANITA GOLDEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/13/08

119839-1                              12

# ANDREW R. SCHWARTZ

30 N. LaSalle St., #3000
Chicago, IL  60602
Tel.: (312) 704-2182
E-mail: aschwartz@sff-law.com

## Professional Experience

*Partner, SUGAR, FRIEDBERG & FELSENTHAL LLP, Chicago, IL*          *January, 2001 – present*
Litigating numerous civil and commercial matters, including contract, securities fraud, employment discrimination, fraudulent transfer, mechanic's lien/construction, real estate, probate, legal malpractice, tort, and bankruptcy.  Highlights include:
- Successfully prosecuted $30 million+ commercial fraud claim to judgment (Circuit Court, Cook County, IL)
- Successfully defended former corporate director/officer in $75 million fraud claim arising from collapse of publicly-traded company (Superior Court, Fulton County, GA)
- Successfully defended multi-million dollar personal injury claim arising from workplace injury (Circuit Court, Cook County, IL)
- Successfully represented railcar lessee in multi-million claim for fraud, breach of commercial leases and indirect civil contempt before 18th Judicial Circuit Court (Du Page County, IL)

*Civil Litigator, DAVIDSON & SCHWARTZ, Chicago, IL*          *November, 1988 – December, 2000*
Litigated numerous civil and commercial matters, including contract, fraudulent transfer, accounting, real estate, probate, divorce, tort, bankruptcy, real estate tax and appellate.  Highlights included:
- Lead appellate counsel, Griffith v. University Hospital, LLC, 249 F.2d 658 (7th Cir. 2001)
- Tried plaintiff's P.I. claim to successful jury verdict (Cook County, IL)
- Prosecuted $140,000+ contract claim and fee petition (Cook County, IL).  Over $290,000 collected.  Successfully defended four appeals in same case before Illinois Appellate Court, First District
- Prosecuted fraudulent transfer action (Cook County, IL).  Settled case for more than $450,000

## Martindale-Hubbell Rating
- AV (highest) rating
- 2007 *Illinois Super Lawyer* (business litigation)

## Publications
- *Litigating the Suit to Set Aside Fraudulent Transfers*, IICLE CHANCERY AND SPECIAL REMEDIES, CH. 14 (1999 Ed and 2002 Supplement, 2004 Ed (lead author))
- *Resolving Contract Ambiguity: Parol Evidence Versus the Rules of Contract Construction*, 87 Ill.B.J. 622 (April 1999) (lead author)
- *Recovering Costs in Illinois Civil Actions*, 88 Ill.B.J. 504 (Sept. 2000) (co-author)
- *Winner Take All: Recovery of Fees for Fee Litigation in Illinois*, 45 ISBA Fam.Law Newsletter No. 4 (April 2002)

## Education
- *Juris Doctorate*, LOYOLA UNIVERSITY OF CHICAGO SCHOOL OF LAW, 1988
  Academic honors included Dean's List, ABA Intraschool Negotiating Championship
- *Baccalaureate of Arts* (English Literature), UNIVERSITY OF MICHIGAN AT ANN ARBOR, 1985
  Academic honors included Dean's List

*APPENDIX 1*

**Licenses to Practice**
- All Illinois Courts
- U.S. District Courts: N.D.Ill., D.Colo., W.D.Wis.
- U.S. Seventh Circuit Court of Appeals
- Bankruptcy Courts: N.D.Ill.

**Professional Affiliations**
- Illinois Institute for Continuing Legal Education
- Illinois State Bar Association
- Lake County Bar Association

**References**
Available upon request

18

**BEFORE THE AMERICAN ARBITRATION ASSOCIATION**
**CHICAGO, ILLINOIS**

| | |
|---|---|
| WISCONSIN AUTOMATED MACHINERY CORP., ) | |
| ) | |
| *Claimant,* ) | |
| ) | |
| v. ) | No. 51 180 01918 06 |
| ) | |
| DIEHL WOODWORKING MACHINERY, INC., ) | Arbitrator Morsch |
| ) | |
| *Respondent.* ) | |

## CLAIMANT'S POST-CLOSING BRIEF

Wisconsin Automated Machinery Corp. ("WAMCO"), by its undersigned counsel,

hereby states as follows as its Post-Closing Brief:

### I.    INTRODUCTION

As stated more fully in its Second Supplement to Claims, WAMCO has five separate

claims against Diehl Woodworking Machinery, Inc. ("Diehl"), which are summarized as follows:

| | |
|---|---|
| Count I: | Declaratory Relief |
| Count II: | Breach of 2002 APA (unmodified by MOA) |
| Count III: | Breach of 2002 Asset Purchase Agreement (as modified by MOA) |
| Count IV: | Breach of Secured Note (Insecurity Clause) |
| Count IV: | Breach of Secured Note (Non-Payment) |

### II.    BACKGROUND FACTS

#### A.    The Parties

WAMCO is a Wisconsin corporation, with its principal place of business in Chicago, IL.

WAMCO previously manufactured woodworking machinery until it sold those manufacturing

lines. Now it provides management and consulting services. Jay Ehrlich ("Jay") is WAMCO's

president and majority shareholder. Jay is a licensed attorney with experience in commercial,

bankruptcy, and debtor-creditor matters, although he does not actively practice law; Jay works as

a financier at an Illinois firm handling transactions involving non-public companies, including

the purchase, turnaround and sale of distressed companies. Robert Rozman ("Rozman") owns a

minority interest in WAMCO, which he acquired from Dmitris "Jim" Loukidis ("Loukidis") in late 2006.

Diehl is an Indiana corporation, with its principal place of business in Wabash, IN. Diehl manufactures and sells woodworking machinery and related equipment, such as parts. Rozman is the president and majority shareholder of Diehl.

WAMCO and Diehl have had common shareholders since the 1990s. At one point, Ehrlich, Ehrlich's father ("Paul") and Loukidis each owned shares in both WAMCO and Diehl. Paul and Loukidis subsequently sold their Diehl shares to Rozman, who now holds a controlling interest in Diehl. Currently, the only common shareholders of WAMCO and Diehl are Jay and Rozman.

### B.    Transactional Documents at Issue in this Arbitration

This matter involves the enforceability and enforcement of the following transactional documents executed by the parties:

(1)    September 2002 Asset Purchase Agreement ("APA") (**CX-21**)[1];
(2)    Promissory note ("Note") (**CX-21 – Bates ##140-144**) and security agreement ("Security Agreement") (**CX-21 – Bates ##152-158**) executed in connection with the APA (the Note and Security Agreement are sometimes collectively described as the "Secured Note"); and
(3)    August 2005 Memorandum of Agreement ("MOA") (**CX-12**).

The parties do not dispute the execution or genuineness of these documents, although the parties disagree about their meaning and legal effect.

### 1.    The APA (CX-21)

WAMCO sold certain product lines and associated properties to Diehl pursuant to the APA. The APA did not require Diehl to make any cash payments to WAMCO; rather, Diehl would make payments over time, which would be evidenced by the Secured Note documents

---

[1] This brief will refer to WAMCO's trial exhibits as **CX-___**, and to Diehl's trial exhibits as **RX-___**, with references to the Bates page numbers for each document, where applicable.

(APA at ¶3.2).  The APA also requires Diehl to increase a fee for "management consulting and

services" to $15,000/month, beginning January 1, 2003 (APA at ¶6.7).

      The APA contains non-waiver language (¶14.4), as well as a full integration clause

(¶14.6).  The APA also contemplates subsequent written modifications (¶14.7), and provides that

it is to be governed, construed and enforced in accordance with Illinois law (¶14.8).  Paragraph

14.13 reads as follows, in relevant part:

> Any controversy, dispute or claim between the parties arising out
> of, *related to or in connection with this Agreement or the*
> *performance or breach hereof*, including with respect to the
> arbitrability of such controversy, dispute or claim and the scope
> and applicability of this paragraph 14.13, shall be submitted to
> and settled by arbitration conducted by the American Arbitration
> Association in Chicago, Illinois, in accordance with its commercial
> arbitration rules as then in effect; ... The determination of the
> arbitrator shall be accompanied by a written opinion of the
> arbitrator ... *[T]he arbitrator may in his discretion award*
> *attorneys' fees and expenses in addition to any other remedy*
> *that is allowed and regardless of whether such remedy*
> *includes an award of damages*.

(Emphasis added).

      The evidence presented at the hearing overwhelmingly contradicts any claim by Diehl

that the APA resulted from any duress or coercion by WAMCO.  The exhibits show that

WAMCO and Diehl had been negotiating the APA since May 2001 (**CX-74**; **CX-56**; **CX-57**;

**CX-75**; **CX-54**).  Rozman also testified that Diehl was represented by its own independent

counsel in connection with the negotiation and drafting of the APA (**CX-54**).  Diehl signed the

APA pursuant to a unanimous resolution by its board (**CX-21 Bates ##162-66**; **CX-22**).  Diehl

then accepted the benefits and complied with the obligations of the APA for years.  Moreover,

Resolution #5 of Diehl's June 28, 2005 directors' minutes show that its board voted to "ratify,

confirm and adopt all prior acts of the officers and directors of the corporation" (**CX-24 – Bates**

**##207-09**).

## 2.  The reason for the management fee

The APA devotes only one sentence of text (¶6.7) to the management fee, and does not

identify the services expected of WAMCO, except to characterize them as "management

consulting and services." According to Diehl, no specific management services were

contemplated before the execution of the APA (**CX-86 at page 3**). The APA does not provide

any termination date for Diehl's obligation to pay $15,000/month in management fees.

Some of Rozman's own e-mails helped him to remember that some function of the

management fee is to maintain obligations between the WAMCO shareholders (**CX-2**), that the

management fee was "...not really a really management fee for management services

provided" (**CX-16 – Bates #0085**), and that it was "... really a method to fund the primary

stockholders" (**CX-44 – Bates #0656 at ¶2(b)**). Jay testified that the management fee increase

was additional consideration for the sale of WAMCO's manufacturing lines. Diehl did not rebut

that evidence.

Diehl has not taken a consistent position about WAMCO's actual provision of

management consulting and services. In ¶5 of its Response to WAMCO's Supplement to

Claims, Diehl denied "... that WAMCO ever provided management consulting services to

Diehl." *And see* Diehl's answer to Interrogatory #20 ("WAMCO has provided no service to

Diehl at any time") (**CX-82** at ¶20).

Likewise, WAMCO offered a substantial number of e-mails from Jay, in which Jay:

- Identified opportunities for Diehl to acquire assets from auctions and bankruptcy sales (**CX-64**; **CX-65**; **CX-66**; **CX-72**);

- Helped procure financing (**CX-73 – Bates ##D71-81**);

- Contributed his legal expertise to Diehl on several occasions involving potential litigation (**CX-64**; **CX-65**; **CX-66**; **CX-70**; **CX-71**).

Jay also testified that he worked to identify and develop opportunities for Diehl to meet with potential business acquisition candidates.

Rozman originally testified that WAMCO did not provide any services to Diehl. However, many of Rozman's own e-mails contradict that position, and show that Rozman was communicating with Jay about various business matters as recently as June 2006 (*See* **CX-7**; **CX-8**; **CX-9**; **CX-10**; **CX-47**). When asked to explain these own e-mails acknowledging WAMCO's services, Rozman mumbled something like "I write a lot of e-mails."

A trip taken by Jay to Los Angeles to investigate a potential transaction with CTD Machines in November 2005 deserves special mention. Jay testified that the trip was taken on behalf of Diehl – but at WAMCO's expense. Jay offered a billing statement from WAMCO's corporate credit card showing all the associated charges, including charges for Jay's airplane flight, hotel, car rental and gas (**CX-90**).

Diehl did not rebut Jay's testimony with credible evidence. To the contrary, a chain of e-mails show quite clearly that Rozman knew all about Jay's Los Angeles trip, that Rozman forwarded the information to Paul, and that Rozman prepared an outline of topics for Jay to discuss during that trip, that Rozman had planned to join Jay in Los Angeles so he could participate (**CX-28 – Bates ##320-34; CX-45 – Bates ##667-70**). At the hearing, Rozman had no credible explanation why Diehl claimed that WAMCO had never provided any services, in light of his own e-mails proving otherwise.

### 3. The Secured Note documents (CX-21 Bates ##142-44 and ##152-58)

Rozman testified that the transaction contemplated by the APA closed in early October 2002. At that closing, Diehl executed the Secured Note documents, which memorialize Diehl's payment obligations to WAMCO.

The Note reads as follows, in relevant part:

FOR VALUE RECEIVED, [Diehl] hereby unconditionally promises to pay to the order of [WAMCO], the principal amount of Six Hundred Thousand Dollars ($600,000), with interest on the balance of principal remaining from time to time unpaid at the rate of 6.198% (herein called the "Interest Rate"), such principal sum and interest to be payable in seventy-two (72) equal monthly installments of Ten Thousand Dollars ($10,000.00) each, commencing January 1, 2003 and on the 1st day of each successive month thereafter through and including December 1, 2008. Payment of principal hereof and interest hereon shall be made in lawful money of the United States at ... or at such other place as the holder of this Promissory Note may appoint from time to time. All past due principal shall bear interest at the rate equal to the Interest Rate from time to time in effect, plus three percent (3%) per annum, payable on demand.

*          *          *          *

In the event that:

(a) the undersigned shall fail to pay any installment of principal of, or interest on, this Promissory Note when due and such failure shall continue for at least five (5) days; or

(b) there shall have occurred any default under the Security Agreement or event by which, under the terms of the Security Agreement, the principal amount hereof may become due and payable; or

*          *          *          *

then, in any such event and so long as such event is continuing, the then holder hereof may, without notice of any kind, declare all unpaid principal and interest on this Promissory Note to be due and payable, whereupon all unpaid principal of and accrued interest on this Promissory Note shall forthwith be and become due and payable.

*          *          *          *

If this Promissory Note is not paid when due, whether at maturity or by acceleration ... the holder hereof shall be entitled to recover all costs of collection, including without limitation reasonable attorneys' fees, in addition to and not in lieu of any other right or remedy at law.

The Security Agreement identifies Diehl as the "Debtor" and WAMCO as the "Secured

Party." The Security Agreement defines the term "Liabilities" as follows:

> ... all obligations of Debtor hereunder, ***and all other debts, liabilities and obligations of Debtor to Secured Party ... howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due,*** including without limitation under the Promissory Note.

(Emphasis added). The Security Agreement then defines the term "Default" as:

... the occurrence of any one or more of the following events: (a) Debtor fails to pay, when due, any amount on any of the Liabilities; ... (g) any change in Debtor's financial condition or ability to pay the Liabilities deemed by Secured Party to be materially adverse or the occurrence of any other event as a result of which Secured Party deems itself insecure.

### 4. Diehl's deferred payment of management fees

In Spring 2004 Diehl faced difficult financial conditions, as evidenced by Rozman's March 15, 2005 letter (**CX-76** at Bates #D0122). To accommodate Diehl, WAMCO agreed to the deferral of some of the management fees required under the APA. WAMCO did not waive any management fees at that time. Indeed, Diehl acknowledged its continuing obligation to pay $15K/month to WAMCO as and for management fees in two separate spreadsheets it produced in discovery (**CX-14** and **CX-77**); these same also show the amounts Diehl actually paid for those months, as well as the unpaid balances due to WAMCO.

### 5. Paul sells his WAMCO shares to Jay

In late 2004 Paul sold his WAMCO shares to Jay, who bought them based upon Paul's representation that WAMCO would continue to receive management fees, and that Diehl would restore the management fees to their prior level. Unfortunately, Paul did not intend to stand behind that representation. Once he had sold his WAMCO shares to Jay, Paul began to look for ways to eliminate Diehl's management fee obligations to WAMCO.

At this point, it is important to understand that Paul and Jay do not get along, and that Jay does not trust Paul. Jay's unrebutted testimony at the arbitration hearing was that Paul is not honest. Rozman's testimony about Paul also supported that characterization; Paul did not tell Rozman about Paul's divestiture of WAMCO shares – while Paul was purportedly negotiating on behalf of WAMCO to reduce the management fee.

It is equally important to note that Paul's motivations are non-economic, as well as economic. WAMCO asks this Panel to consider line item #6 of a September 5, 2006 settlement

proposal from Paul's attorney to the undersigned (**CX-88**), Paul tried to extract a grandparents'
visitation schedule with Jay's son as part of a settlement proposal.[2]

### 6. The MOA (CX-12)

After selling his WAMCO shares, Paul began to work with Rozman to "reduce" the
management fee in 2005. However, their real intent was to dupe WAMCO into entering into an
obligation that Paul and Rozman did not consider binding. As evidenced by e-mails exchanged
between Rozman and Paul, neither of them ever intended that Diehl would be bound to pay
management fees to WAMCO (**CX-16**; **CX-49**; **CX-46**; **CX-20**). Indeed, at one point, Rozman
characterized the management fee as a "gift" (**CX-33**); when asked about this particular e-mail,
Rozman agreed that a "gift" does not create a binding obligation.

In August 2005 the parties executed the two-page MOA, which was drafted by counsel
for Diehl. The MOA acknowledges Diehl's payment of fees to WAMCO for management
consulting and services, and that:

> ... the parties intend that [WAMCO] shall continue to provide such
> management consulting and services to Diehl, and Diehl shall
> continue to pay a monthly management fee therefore as business
> conditions permit and in accordance with the terms and
> conditions herein set forth.

Paragraph 1 of the MOA then states as follows, in relevant part:

> [WAMCO] hereby waives all unpaid and accrued management fees,
> if any, due from Diehl prior to July 31, 2005. [WAMCO] shall
> continue to provide to Diehl from time to time management
> consulting and services as reasonably requested by Diehl ...

(*See* **CX-12** at ¶1). Paragraph 1(b) of the MOA also states that the management fee :

> ... might be reconsidered and reduced, increased, eliminated
> and/or reinstated *by mutual agreement of the parties* as
> Diehl's business conditions requires [sic] ...

(Emphasis added).[3]

---

[2] Having known the Ehrlich family since junior high school, the undersigned considers the current
animosity between Paul and Jay terribly sad.

Rozman signed the MOA on behalf of Diehl, pursuant to a resolution signed by all Diehl directors – including Rozman (**Exhibit C-24** Bates #207-11). Loukidis signed it on behalf of WAMCO. The execution and genuineness of the MOA are not disputed, although its legal effect and validity are disputed issues.

### B.    Diehl's Failure and Refusal to Pay Management Fees to WAMCO

#### 1.    Rozman decides to buy a controlling interest in Diehl

In early 2006 Rozman decided to buy Diehl shares from Jay, Paul and Loukidis (**CX-1**, **CX-2** and **CX-30**), to give himself a controlling interest. By his own admission, Rozman "didn't want to worry about management fees," and hoped to buy himself a job. Indeed, the primary concern Rozman expressed to Paul in his was "... how Diehl will support [him]" (**CX-31**).

However, Rozman did not want to overpay for the Diehl shares, so he – with Paul's assistance and encouragement – worked to depress the perceived value of Jay's and Loukidis' shares. First, Rozman fed Jay and Loukidis bad news about Diehl. Then he caused Diehl to file suit against them – and WAMCO.

#### 2.    Diehl seeks a reduction in the amount of its management fee obligation to WAMCO, but WAMCO refuses to consent to any such reduction

Throughout Spring and Summer 2006, Rozman painted a gloomy picture of Diehl's business conditions (**CX-1 – Bates ##1-12; CX-5; CX-20**). However, Rozman's interest in acquiring a controlling interest in Diehl stock at exactly that same moment detracts from the credibility of his "gloom and doom" statements about Diehl's business.

Jay disagreed with Rozman's overall business outlook for Diehl; Jay thought the business could return to profitability, as reflected in his responsive e-mails (**CX-6; CX-9 – Bates ##52-54**). When questioned at the hearing why he believed Diehl's business conditions were far from

---

[3] WAMCO asks this Panel to recall Rozman's testimony at the hearing – that he neglected to produce an earlier draft of the MOA in discovery – which WAMCO had rejected precisely because the earlier draft of the MOA gave Diehl a unilateral right to alter or eliminate the management fee.

hopeless in early to mid-2006, Jay provided credible explanations, and pointed to some of the financial reports that Diehl produced in discovery.

### 3. Diehl unilaterally stops making management fee payments and files suit

Diehl unilaterally reduced the management fee payment to WAMCO in July 2006, to which WAMCO objected (**CX-15**). On July 26, 2007 Jay sent a lengthy e-mail to Rozman identifying various business concerns and explaining Jay's and WAMCO's positions. Jay then proposed several options by which he believed that Diehl could improve its business health – one of which was to have "... more involvement on my end to work on a day to day basis ..." Jay also proposed the following:

> 3) I can roll up my sleeves and have significantly more involvement on the administrative side so that you [Rozman] are free to explore new products and focus on sales.

Jay then closed by urging Rozman to avoid litigation "... and come to some type of mutually beneficial agreement" (**CX-9 – Bates ##52-54**).

Within a week after Jay sent that e-mail, Diehl unilaterally discontinued the management fee payments and filed suit in Wabash County, IN. Diehl's complaint made the following allegations:

> 9.   Diehl's business conditions require the elimination of the management fee.
> 10.  WAMCO has refused to eliminate the management fee despite requests to do so by Diehl.
> 11.  Diehl contends that ***its obligation to pay the monthly management fee to WAMCO*** should be eliminated as a result of the failure of consideration and pursuant to the provisions of the [MOA].

(**CX-82** at ¶¶9-11) (Emphasis added). Diehl repeated those same allegations in the amended complaint it subsequently filed (**CX-83** at ¶¶9-11).

### 4. Diehl breaches are vexatious; it has acknowledged that its actions are in bad faith, and that its lawsuit is meritless

Diehl has admitted that it has not acted in good faith, and that its lawsuit is factually baseless. For example, Diehl's complaint and amended complaint both allege that Diehl's business conditions require elimination of its admitted obligation to pay management fees to WAMCO (**CX-83 at ¶¶9, 11; CX-84 at ¶¶9, 11**). However, when asked by interrogatory to explain, Diehl answered only that business conditions require "... a closer inspection of Diehl's expenses" (**CX-82 at ¶22**). When asked further about this silly answer at the hearing, Rozman testified that Diehl – like every other business – routinely looks at its expenses. Therefore, the underlying premise of Diehl's claim against WAMCO is simply false.

It is also worth noting that Rozman took great pains to line his own pockets. Rozman testified that Diehl owed a "shareholder debt" to Rozman and certain other Diehl shareholder-employees (**CX-79**), and that much of that "shareholder debt" was owed to Rozman. Diehl repaid that debt; indeed, Diehl accelerated the final payment of that debt – even as Rozman continued to claim that Diehl was ostensibly in distress (**CX-25**). Likewise, Rozman caused Diehl to reimburse his *personal* legal fees to acquire Loukidis' WAMCO shares. In short, while Diehl was ostensibly losing money, Rozman caused it to fund his own personal acquisition of a minority interest in WAMCO – while Diehl was suing WAMCO.

The e-mails produced by Diehl in discovery also prove that Diehl simply intended to use the lawsuit as financial pressure to bludgeon WAMCO into surrender, and Jay into selling his Diehl shares to Rozman for short money. Rozman's 9/5/06 e-mail to Paul – entitled "the memo I shouldn't have sent" – says that Diehl was "preparing to stall," that "the defense will very quickly run out of financial momentum," and "... we're either playing hardball or beach ball" (**CX-32**). Likewise, Rozman's 9/29/06 e-mail to Paul reads as follows in relevant part:

11

> 5. Unless we put full pressure on the situation, it will languish. Only the threat of financially dealing with dual complaints is what will cause Schwartz to realize that the situation requires attention to settlement, and he'll call *our bluff* for awhile.

(**CX-34**) (emphasis added). Rozman's characterization of Diehl's litigation as a "bluff" speaks for itself; Rozman had no credible explanation for that statement at the hearing. Similarly, at least one other Rozman e-mail shows that the litigation was simply a way to generate financial pressure, so Rozman could acquire Jay's Diehl shares at a lower price (**CX-38**).

### 5. WAMCO files this arbitration claim

WAMCO filed its original arbitration claim with the AAA in December 2006, seeking only to recover management fees then due and owing. In February 2007 WAMCO amended its claim to include a claim on the Note. At this Panel's request, WAMCO filed a Supplement to Claim and a Second Supplement to Claim, which elaborated on the claims at issue herein.

### 6. Diehl discontinues making payments under the Note in June 2007

After consistently making monthly payments on the Note – including five payments made after WAMCO filed this arbitration – Diehl did not make its June 2007 Note payment to WAMCO. Instead, Diehl filed a "supplemental complaint" for interpleader in the litigation (**CX-85**). Diehl's interpleader complaint alleges that:

- Diehl owes money to WAMCO pursuant to the APA (Id. at ¶1);

- A dispute exists between WAMCO's shareholders (Jay and Rozman) "concerning the proper recipient between the shareholders of WAMCO of any funds paid to WAMCO" (Id. at ¶2); and

- Diehl wishes to withhold payment of its admittedly uncontested debt to WAMCO from WAMCO, and is willing to deposit those funds with the Clerk of the Court.

The interpleader complaint does not allege that either Jay or Rozman are parties to – or third-party beneficiaries of – the APA. It also does not allege that either Jay or Rozman have claims

against Diehl, or that Diehl might reasonably face exposure to double or multiple liability by paying what it admittedly owes to WAMCO.

Diehl has not made any subsequent payments to WAMCO on the Note; all subsequent payments were also made to the Clerk (**RX-10**).

## III.    ARGUMENT

### A.    As a Matter of Illinois[4] Contract Law, the MOA Fails Because Diehl did not Give any Consideration to WAMCO; Therefore, the APA Governs Diehl's Obligation to Pay Management Fees

#### 1. Diehl's agreement in the MOA to pay management fees that it was already obligated to does not constitute valid consideration to support a contract

It is axiomatic that past consideration will not support a contract. *E.g.*, Johnson v. Johnson, 244 Ill.App.3d 518, 528 (1ˢᵗ Dist. 1993) ("if the alleged consideration for a promise has been conferred prior to the promise upon which alleged agreement is based, there is no valid contract"); *and see* Baum v. Palmer, 76 N.E. 108, 110 (Ind. 1905) (promissory note executed after borrower received the funds in question was not supported by consideration, in the absence of a new agreement between borrower and lender supported by some new consideration).

Count I of WAMCO's Second Supplemental Claim asks this Panel to declare that the MOA is void because Diehl give no new consideration to WAMCO in connection with the MOA. As discussed *supra*, the APA (signed in 2002) required Diehl to pay $15,000/month in management fees to WAMCO, which Diehl acknowledged in its own spreadsheets (**CX-14** and **CX-77**). Therefore, the MOA gave nothing of value to WAMCO, in which Diehl promised to pay the very same $15,000/month in management fees that it was already obligated to pay. In short, WAMCO did not receive any new value in exchange for (a) its agreement to waive over

---

[4]  By denying Diehl's motions to stay the arbitration, this Panel effectively held that the MOA is a modification of the APA, which is governed by Illinois' contract law (*See* APA at ¶14.8). Nevertheless, Indiana contract law is substantially consistent with that of Illinois on the material issues presented herein.

$100,000 in accrued management fees due and owing from Diehl, and (b) WAMCO's agreement

to put a termination date on its entitlement to receive monthly management fees from Diehl.

### 2. Diehl's interpretation of the MOA as a non-binding, or illusory promise is untenable because it would render the MOA unenforceable

An 'illusory promise' appears to be a promise, but on closer examination reveals that the

promisor has not actually promised to do anything, or has retained the option to perform. Either

way, it is not sufficient consideration to support a contract. <u>W.E. Erickson Construction, Inc. v.</u>

<u>Chicago Title Ins. Co.</u>, 266 Ill.App.3d 905, 909 (1st Dist. 1994); <u>Mimica v. Area Interstate</u>

<u>Trucking, Inc.</u>, 250 Ill.App.3d 423, 427 (1st Dist. 1993); <u>Indiana-American Water Co., Inc. v.</u>

<u>Town of Seelyville</u>, 698 N.E.2d 1255 (Ind.App. 1998).

In this case, Diehl asks this Panel to interpret the MOA as an illusory promise – which

never really required Diehl to do anything. Diehl identifies the "consideration" it allegedly gave

to WAMCO for the MOA as a "... promise from Diehl to pay WAMCO for management

consulting service" (**CX-82 at ¶15**). However, Rozman's and Paul's e-mails clearly show that

Diehl's promise was one Diehl that did not consider binding (**CX-16**; **CX-49**; **CX-46**; **CX-20**).

Indeed, the following passage from Rozman's July 10, 2006 e-mail to Paul articulates the issue

quite well:

> The fact that we never challenged the matter doesn't mean the
> agreement is valid, it just means that Diehl has gone along with
> an unenforceable agreement and not exercised its right to void the
> agreement.

(**CX-20**). The MOA cannot be "consideration" if it is not enforceable. Otherwise, it is an

illusory promise, which is void for want of mutuality. *E.g.*, <u>Wabash Chemical Corp. v. Scholle</u>

<u>Chemical Corp.</u>, 67 Ill.App.2d 222 (1st Dist. 1966); *accord*, <u>Paul v. Rosen</u>, 3 Ill.App.3d 423 (1st

Dist. 1954).

It is no answer for Diehl to say that the MOA gave Diehl discretion whether or not to

request any management services; that would only give Diehl an unlimited right to decide later

the nature or extent of its own performance under the MOA – which would render its

performance completely optional.  The Illinois Supreme Court has completely rejected that type

of "phantom consideration" in Dwyer v. Graham, 99 Ill.2d 205 (1983), holding:

> There was no real undertaking or promise by the defendants
> under the "rental agreement." They were to have "use of rental
> agreement [ sic ] as long as desired." The option given the
> defendants was unlimited, and the claimed promise was only
> illusory. Williston states: "One of the commonest kind of promises
> too indefinite for legal enforcement is where the promisor retains
> an unlimited right to decide later the nature or extent of his
> performance. This unlimited choice in effect destroys the promise
> and makes it merely illusory." [Citation omitted].  In the
> Restatement (Second) of Contracts section 77, comment *a,* at 195
> (1981), it is observed: " *Illusory Promises.* Words of promise which
> by their terms make performance entirely optional with the
> 'promisor' do not constitute a promise."

Id. at 209. *And see,* Indiana-American Water Co., 698 N.E.2d at 1259-60 (differentiating

enforceable "requirements" contracts from unenforceable "indefinite quantities" contracts).  The

illustrations to Comment *a* of §77 of the Restatement (Second) of Contracts are equally

instructive.  They read as follows:

> 1. A offers to deliver to B at $2 a bushel as many bushels of
>    wheat, not exceeding 5,000, as B may choose to order within
>    the next 30 days. B accepts, agreeing to buy at that price as
>    much as he shall order from A within that time. B's acceptance
>    involves no promise by him, and is not consideration.

> 2. A promises B to act as B's agent for three years from a future
>    date on certain terms; B agrees that A may so act, but reserves
>    the power to terminate the agreement at any time. B's
>    agreement is not consideration, since it involves no promise by
>    him.

REST 2d CONTR § 77.

### 3. The rules of construction require contracts to be interpreted as valid, fair and sensible

Contracts are always construed in a way which renders the agreement valid, rather than void. Schiro v. W.E. Gould & Co., 18 Ill.2d 538, 542-3 (1960); Indiana-American Water, 698 N.E.2d at 1259 ("Where possible, courts will construe contracts as being valid, rather than void"). Likewise, contracts are interpreted to avoid absurd results or ridiculous interpretations. Omnitrus Merging Corp. v. Illinois Tool Works, Inc., 256 Ill.App.3d 31 (1st Dist. 1993). In NutraSweet Co. v. American Nat. Bank & Trust Co. of Chicago, 262 Ill.App.3d 688, 695 (1st Dist. 1994), the Court held:

> ... where a contract is susceptible to one of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred.

Rieth-Riley Const. Co., Inc. v. Auto-Owners Mut. Ins. Co., 408 N.E.2d 640, 645 (Ind.App. 1980) ("In construing a contract, we must adopt the construction which appears to be in accord with justice, common sense and the probable intention of the parties in light of honest and fair dealing").

### 4. *Contra proferentum*

Ambiguous contractual language is construed against the drafter of the language. *E.g.,* Duldulao v. Saint Mary of Nazareth Hosp. Center, 115 Ill.2d 482, 493 (1987); Steve Silveus Ins., Inc. v. Goshert, 2007 WL 2654699, *8 (Ind. App. 2007) ("we resolve an ambiguity in a contract against the drafter"). Rozman testified that Diehl's lawyer prepared the MOA. Therefore, any ambiguities in the MOA must be construed against Diehl and in favor of WAMCO.

### 5. The only rational interpretation of the MOA is as a contract requiring WAMCO to make itself available to provide services on an "as requested" basis

With these principles in mind, WAMCO's agreement in the MOA – assuming this Panel deems it valid at all – was to make itself available to provide services upon request by Diehl. In that respect, the MOA is best analogized to a membership in a health club, the payment of a monthly cable television bill, or other transactions where the member/subscriber has the right to use – or not to use – services upon demand; in such cases, the member/subscriber's obligation to pay arises from the provider's *availability* – not whether the member chose to receive services on a particular date.

The MOA is equally analogous to a "true," "general," or "classic" retainer paid to secure a lawyer's availability to provide services. *See* Dowling v. Chicago Options Assoc., Inc., 2007 WL 1288279, *4 (Ill. Sup. Ct. 2007) ("Such a retainer is paid by a client to the lawyer to secure the lawyer's availability during a specified period of time or for a specified matter. This type of retainer is earned when paid and immediately becomes property of the lawyer, regardless of whether the lawyer ever actually performs any services for the client.").

Jay testified that he understood the MOA as a contract for WAMCO's availability upon demand. That understanding is absolutely consistent with the parties' course of performance. Diehl's pleadings in this case (Response #5 to WAMCO's Claim Supplement) and interrogatory answers (**CX-82** at ¶¶17, 20) state that WAMCO never provided services to Diehl. Therefore, the only logical conclusion is that Diehl's obligation to pay management fees did not – and does not – depend on the actual provision of services by WAMCO.

It is no answer for Diehl to say that WAMCO breached the APA or MOA by failing to provide services, or to make itself available. The evidence at the hearing conclusively established that WAMCO *did* provide various services (**CX-64**; **CX-65**; **CX-66**; **CX-70**; **CX-71**;

**CX-72; CX-73 – Bates ##D71-81**), and that Diehl's denials simply have not been truthful. The evidence also showed that Jay repeatedly offered to help, including his offer to do so just before Diehl filed suit (**CX-9 – Bates ##52-54**).

Moreover, even if this Panel ignores all of the testimony and evidence showing that WAMCO did provide services, Diehl's position – that it never requested or received services from WAMCO – would nevertheless fail. That would only prove that the parties to the MOA did not intend to predicate the payment of fees upon services actually provided.

The interpretation of the MOA urged by Diehl would render the MOA as a void illusory promise. Moreover, it would be absurd to believe that WAMCO waived over $100,000 in accrued management fees in return for an illusory promise by Diehl. *That* is why Rozman withheld the prior draft of the MOA.

### C.    Diehl Breached the APA by Failing to Pay Management Fees to WAMCO

Whether this Panel ultimately finds that Diehl's obligation to pay management fees is governed by the APA, or by the MOA, there is no dispute that Diehl did not make its full payment in July 2006, or that Diehl has not made *any* payments since then. As noted *supra*, Diehl has repeatedly acknowledged its obligation to continue making those payments in Court pleadings (**CX-83 at ¶11; CX-84 at ¶11**).

Both the APA and MOA require *mutual agreement* to change the management fee, and Diehl has does not even contend that it has the right to eliminate the management fee unilaterally (**CX-82** at ¶25).

Diehl cannot seriously claim that the APA or MOA are unenforceable, due to "economic duress," "oppression," or any similar defense. A party who accepts the benefits flowing from a contract for any considerable length of time ratifies the contract. *E.g.*, Inland Land Appreciation Fund, L.P. v. County of Kane, 344 Ill.App.3d 720, 728 (2nd Dist. 2003) (acceptance of contract

benefits for 8 months constituted ratification and precluded later claim for economic duress).

Moreover, as noted *supra*, Diehl's board – including directors who had no interest in WAMCO

at the time (like Rozman) authorized Diehl to sign both documents.

## D.     Diehl has Defaulted on the Secured Note, Justifying Acceleration of the Debt and Payment of WAMCO's Reasonable Attorneys' Fees

WAMCO's claim on the Secured Note is straightforward. Diehl executed the Note and

subsequently defaulted. As the holder of the Note, WAMCO is entitled to enforce it.

810 ILCS 5/3-104(a) defines a "negotiable instrument" as:

> ... an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder:
>
> (2) is payable on demand or at a definite time; and
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order must contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of any obligor.[5]

The Note qualifies as a "negotiable instrument." It promises to pay a fixed sum, plus accrued

interest. It is payable to the order of WAMCO or its order at a definite time – monthly payments

are due on the first day of each month starting at a date certain, and it contains no other

instructions beyond paying the amounts owed.

Diehl admitted signing the Secured Note. Likewise, admitted the debt in its interpleader

complaint (**CX-85**). Given these admissions, there is nothing left to dispute. Illinois law entitles

WAMCO to be paid. 810 ILCS 5/3-308(b) ("a plaintiff producing the instrument is fully entitled

to payment if the plaintiff proves entitlement to enforce the instrument under Section 3-301,

---

[5] An "instrument" necessarily means a "negotiable instrument." 810 ILCS 5/3-104(b).

unless the defendant proves a defense or claim in recoupment"). Diehl did not establish any
defense, and made no claim in recoupment.

As the possessor and holder of the Note, Diehl plainly qualifies as a party entitled to
enforce it. See 810 ILCS 5/3-301(i). And, with respect to a negotiable instrument made payable
to an identified person, the "holder" necessarily means "the person in possession." 810 ILCS
5/1-201(20).

As discussed *supra*, upon any event of default by Diehl, the Note permits WAMCO to:

> ... declare all unpaid principal and interest on this Promissory
> Note to be due and payable, whereupon all unpaid principal of and
> accrued interest on this Promissory Note shall forthwith be and
> become due and payable.

Moreover, Diehl's failure to make timely payment when due, whether at maturity or by
acceleration, entitles WAMCO to recover all of its costs of collection, including its reasonable
attorneys' fees.

### 1.  WAMCO properly deemed itself insecure under the Security Agreement

The Security Agreement defines "Default" to include:

> (g) any change in Debtor's financial condition or ability to pay the
> Liabilities deemed by Secured Party to be materially adverse or
> the occurrence of any other event as a result of which Secured
> Party deems itself insecure.

In this case, WAMCO deemed itself insecure due to its perception of materially adverse changes
in Diehl's financial condition; WAMCO then accelerated the Note (**CX-19**).

The facts strongly support WAMCO's determination of insecurity and acceleration, to
wit:

- Diehl stopped paying management fees to WAMCO;

- Diehl alleged in multiple court pleadings that its business conditions "require the
  elimination of the management fee" (**CX-83**; **CX-84**);

- The timing of Diehl's lawsuit – within a week after Jay offered to "roll up his sleeves" and help on a day-to-day basis (**CX-9 – Bates ##52-54**);

- Rozman admitted in a September 28, 2006 e-mail to Paul that Diehl "can't afford" the management fee (**CX-33 – Bates ##514-18**);

- Diehl has admitted materially adverse changes in its financial condition (**CX-82** at ¶49);

- Diehl refused to provide current financial information to WAMCO showing that it could continue to afford its current obligations. Indeed, Diehl resisted producing that information until forced to do so by this Panel; and

- Since the filing of the lawsuit, Rozman continued to issue a steady stream of "gloom and doom" communications about Diehl's business conditions, on the following dates:

  o **CX-33** (9/28/06)
  o **CX-35** (10/9/06)
  o **CX-36** (11/3/06)
  o **CX-37** (11/7/06)
  o **CX-39** (12/19/06)
  o **CX-29** (12/20/06)
  o **CX-23** (12/22/06)
  o **CX-40** (4/7/06)
  o **CX-41** (4/27/07)

Consequently, given the information available to it at the time, WAMCO's determination of

insecurity was reasonable, and its acceleration of the debt then due under the Note was justified.

### 2. Diehl breached the Note and Security Agreement by failing to pay management fees to WAMCO

The Note provides for acceleration if Diehl breaches any term of the Security Agreement.

As discussed above, a "Default" under the Security Agreement occurs where Diehl fails to pay

any "Liabilities," which the Security Agreement defines to include all obligations from Diehl to

WAMCO. Diehl's obligation to pay management fees to WAMCO is such a "Liability."

Indeed, Diehl admitted its obligation to pay management fees in ¶11 of its complaint (**CX-83**)

and amended complaint (**CX-84**), and asked the Court to *eliminate* that obligation.

### 3. Diehl breached the Note and Security Agreement by failing to make monthly principal and interest payments to WAMCO

Diehl has not made a Note payment to WAMCO since May 1, 2007, when it made its

$10,000 payment for May 2007. To the extent this Panel finds that the Note was not previously

accelerated, Diehl's non-payment constitutes an "event of default" under the Note for two

reasons:

### a. Diehl's payments to the Clerk of the Court do not constitute proper payments under the Note

The Note requires Diehl to pay $10,000/month *to its holder* on or before the first day of

each month. Any failure by Diehl to make timely payment *to the Note holder*, which failure

continues for at least five days, constitutes an "event of default," and triggers the remedies

available under the Note, including acceleration. Therefore, it is no answer for Diehl to say that

it made the payments to someone else – namely the Clerk of the Court. Diehl did not have

WAMCO's permission to make those payments to anyone other than WAMCO.

In any event, the uncontroverted evidence proves that Diehl's "interpleader" is a sham

because it is groundless. Fed.R.Civ.Pro. 22(1) reads as follows, in relevant part:

> Persons having claims against the plaintiff may be joined as
> defendants and required to interplead when their claims are such
> that the plaintiff is or may be exposed to double or multiple
> liability. ...

By the plain language of Rule 22(1), an interpleader claim requires (a) multiple persons having

claims against the plaintiff, (b) which may expose the plaintiff to double or multiple liability.

Diehl cannot face exposure to multiple liability if it pays WAMCO, because only WAMCO has

asserted claims against Diehl under the APA, the Secured Note, or the MOA. The same analysis

applies to an interpleader claim under Indiana law (its interpleader complaint was filed prior to

the removal of the lawsuit from Indiana state court). Interpleader actions in Indiana are governed

by Rule 22 of the Indiana Rules of Trial Procedure, which is largely identical to the Federal interpleader rule.[6]

Rozman testified at the hearing that neither he nor Jay has asserted a competing claim against Diehl – or against any of the funds due from Diehl to WAMCO under the Note. That is hardly surprising, because neither Jay nor Rozman is a party to – or a third-party beneficiary of – the APA, the Secured Note or the MOA.

The entire premise of Diehl's "interpleader" – that:

> ... a dispute exists in this matter concerning the proper recipient between the shareholders of WAMCO of any funds paid to WAMCO.

fails as a matter of elementary Wisconsin corporate law.[7]  Disputes between corporate shareholders does not impair the corporation's contractual rights against third parties. In Shepard v. State, 197 N.W. 344 (1924), the Supreme Court of Wisconsin long ago declared:

> The property of a corporation is its property and not that of the stockholders. There is a fundamental difference between the capital of a corporation and its capital stock. The former belongs to the corporation; the latter, when issued, to the stockholders.

Id. at 346; Fowler v. Shadel, 400 F.3d 1016, 1019 (7th Cir. 2005). It is *WAMCO* – not Jay or Rozman – which owns the right to payment from Diehl under the APA, the Secured Note and/or the MOA. By contrast, neither Jay nor Rozman owns any rights in WAMCO's assets. Therefore, any disputes between Rozman and Jay relate solely to their ownership of capital stock in WAMCO, but do not affect WAMCO's rights against Diehl.

Diehl cannot do an "end around" WAMCO's rights by pretending that WAMCO does not exist. A corporation is a separate legal entity. Conservatorship of Prom v. Sumitomo Rubber Ind., Ltd., 224 Wis.2d 743, 760 (Wis. App. 1999); *accord*, North Gate Corp. v. Nat'l. Food

---

[6] Indiana T.R.22(C)(3) requires a party seeking interpleader to allege that it "... is or may be exposed to double or multiple liability." Diehl's interpleader complaint (**CX-85**) makes no such allegation.

[7] WAMCO is a Wisconsin corporation, and the rights of its shareholders are governed by Wisconsin corporate law.

Stores, Inc., 30 Wis.2d 317, 324 (1966) (ordinary rule is that a corporation is an entity separate from its shareholders).

### b. The Note provides for acceleration if Diehl breaches any term of the Security Agreement

As discussed above, a "Default" under the Security Agreement occurs if Diehl fails to pay any "Liabilities," which the Security Agreement defines to include all obligations from Diehl to WAMCO – including debts due under the Note.

### E. Diehl Cannot Claim the Benefit of its own Breach

One of the arguments suggested by Diehl at the hearing is that WAMCO has no income, and is therefore incapable of providing any "management consulting and services." Even if that were true, Diehl could not make that argument here.

Under Illinois law, the "wrongful prevention" doctrine provides that a party who prevents the fulfillment of a condition upon which his own liability rests many not defeat his liability by asserting the failure of the condition he himself has rendered impossible. Cummings v. Beaton & Assoc., Inc., 249 Ill.App.3d 287, 294 (1st Dist. 1992). To the extent it caused WAMCO's lack of income, Diehl cannot now assert that alleged lack of income as a defense against its own contractual liability.

### F. The Secured Note and the MOA Clearly Relate to the APA, and are Therefore Subject to Arbitration, Pursuant to ¶14.13 of the APA

This Panel has twice addressed the arbitrability issue. On both occasions, the Panel rejected Diehl's request to stay the arbitration, and found the dispute subject to arbitration. Nevertheless, at the August 13th hearing, Diehl's counsel specifically preserved its "lack of arbitrability" defense, and announced that he would pursue his then-pending motion to stay the arbitration before the U.S. District Court. Two days later, on August 15th, Diehl filed a notice of

intent to withdraw its motion to stay the arbitration (**CX-92**).[8]  By withdrawing its motion to

stay, Diehl has effectively conceded the arbitrability issue.

To the extent this Panel considers its rulings regarding arbitrability as merely interim or

temporary relief, WAMCO offers the following analysis:

### 1.  Disputes arising from the APA and Secured Note are clearly arbitrable

There is no dispute that the APA requires arbitration of all related disputes, or that the

Secured Note documents were executed in conjunction with the APA.  All disputes and/or claims

relating to the APA and/or Secured Note must be arbitrated, and there is no basis to avoid

arbitration of those issues.

Diehl cannot legitimately respond that this Court "unenforceability" defense belongs in

Court.  Under the Federal Arbitration Act ("FAA"), a Court presented with an arbitration

agreement resolves only questions about the *existence* of an agreement to arbitrate.  The trial

court determines only whether: (1) a valid agreement to arbitrate exists between the parties; and

(2) the dispute in question falls within the scope of that agreement.  Personal Sec. & Safety

Systems, Inc. v. Motorola, Inc., 297 F.3d 388, 392 (5th Cir. 2002).[9]

A dispute about the *existence* of an agreement to arbitrate focuses on its formation,

whereas, a challenge to the *validity* of an agreement – whether based upon "unconscionability"

or otherwise – focuses on its legality and scope.  These two issues are inherently different, and

require very different treatment. *See* Buckeye Check Cashing, Inc. v. Cardenga, 126 S.Ct. 1204,

---

[8]  WAMCO hereby submits the Notice of Withdrawal for admission into evidence as an exhibit.
WAMCO could not present Diehl's withdrawal of its motion to stay at the August 13th hearing, because it
did not receive that withdrawal notice until after the hearing concluded.

[9]  An interesting question arises whether the FAA or the Illinois Arbitration Act ("ILAA") governs the
question of arbitrability.  The APA and MOA each involve interstate commerce (citizens of different
states), which implicates the FAA.  However, to the extent the MOA modifies the APA, ¶14.8 of the APA
implicates the ILAA.  WAMCO submits that the result would be the same under either statute.

1207, FN 1 (2006) ("The issue of the contract's validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded.")

There is no question that the Note and Security Agreement are part and parcel of the APA. As discussed *supra*, ¶3.2 of the APA references the Note and Security Agreement, and attaches specimens of each document as exhibits.

### 2. The MOA is related to, and arises from, the APA; therefore, the interpretation and enforcement of the MOA is arbitrable

Where an arbitration clause purports to cover all disputes "related to" or "connected with" the agreement, courts applying the FAA have not limited arbitrability to claims literally arising under the contract containing the arbitration clause; such an arbitration clause embraces *all* disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute. Personal Sec. & Safety Systems at 392 (requiring arbitration of dispute with a "significant relationship to" the subject matter of the transaction). In this case, the all-inclusive arbitration language of APA ¶14.13 manifests the parties' intent to submit *all* related disputes to arbitration.

The MOA is obviously a modification of the APA because the essence of the MOA is the *continued* provision by WAMCO of management consulting and services to Diehl, in exchange for Diehl's *continued* payment of management fees at a modified rate. The use of the phrases "continue to provide" and "continue to pay" obviously refer to extensions of obligations under a prior agreement. Paragraph 1 of the MOA then identifies the amount to be paid to WAMCO on a prospective basis, which alters Diehl's prior payment obligation. Moreover, the MOA does not describe the "management consulting and services" WAMCO must continue to provide; to understand the MOA, the reader must refer to extrinsic evidence to understand the services WAMCO *previously* provided.

Diehl's contrary argument – that the parties need not arbitrate because the MOA itself does not contain an arbitration clause, and does not specifically refer to the APA – is overly simplistic and ignores the points raised above. One cannot read a "modification" in a vacuum, because it necessarily requires an understanding of the agreement being modified. At the hearing, Rozman admitted that one would need to look outside the MOA to understand what "management consulting and services" WAMCO was supposed to provide.

Contracts expressing a complete agreement will typically include an integration clause. Air Safety, Inc. v. Teachers Realty Corp., 185 Ill.2d 457, 465 (1999) (an integration clause is a clear indication that the parties desire the contract be interpreted solely according to the language used in the final agreement); I.C.C. Prot. Coatings, Inc. v. A.E. Staley Mfg. Co., 695 N.E.2d 1030, 1035 (Ind. App. 1998). The converse is equally true, especially between sophisticated business entities. In this case the MOA contains no integration clause – notwithstanding that the APA did so. The parties' omission of integration language in the MOA reflects their intent that the MOA is not a complete expression of their agreement.

Rozman's August 15, 1005 e-mail (**CX-16** at Bates ##0008-0009) describing the MOA as an "amendment of our formal agreement," and as a reflection of "the spirit of our original agreement" – further support WAMCO's position. At the hearing, Rozman testified that the APA was the "formal" agreement referenced in this e-mail.

### G.   Damages

#### 1.   Principal and interest due on the Note

| | |
|---|---|
| Principal unpaid balance: | $186,481.31 |
| Accrued interest as of 9/19/07: | $ 6,527.49 |
| **TOTAL as of September 19, 2007:** | **$193,008.80** |

WAMCO has calculated this element of damages based upon the principal balance of the Promissory Note at the date of acceleration, plus interest due thereafter at 9.198 % *per annum* on

that balance (the default rate permitted under the Note), less credits for payments by Diehl. An

additional $47.65 *per diem* in interest will accrue for each day after September 19, 2007.

### 2. Unpaid management fees

In August 2005, Diehl owed **$120,000** in accrued, unpaid management fees to WAMCO.

These fees were purportedly waived by the MOA.

Another $10,000 went unpaid between September 2005 and December 2005, after giving

credit for partial payments by Diehl. Since June 2006, the following management fees are due

and owing from Diehl to WAMCO:

| | |
|---|---|
| July 2006: | $ 6,000 |
| August 2006: | $ 15,000 |
| September 2006: | $ 15,000 |
| October 2006: | $ 15,000 |
| November 2006: | $ 15,000 |
| December 2006: | $ 15,000 |
| January 2007: | $ 15,000 |
| February 2007: | $ 15,000 |
| March 2007: | $ 15,000 |
| April 2007: | $ 15,000 |
| May 2007: | $ 15,000 |
| June 2007: | $ 15,000 |
| July 2007: | $ 15,000 |
| August 2007: | $ 15,000 |
| September 2007: | $ 15,000 |

The total amount accrued after the MOA (including the $10,000 unpaid between September 2005

and December 2005) is **$226,000**. If this Panel adds the pre-MOA and post-MOA management

fees, the amount is **$346,000**. An additional $15,000 in management fees will become due and

owing on the first day of each successive month.

WAMCO is also entitled to 5% pre-judgment interest on the unpaid balances from their

due dates, pursuant to §2 of the Illinois Interest Act.

### 3. Attorneys' fees and costs

Paragraph 14.13 of the APA gives this Panel discretion to award attorneys' fees and costs to the prevailing party in the event of a breach. Diehl's willful and dishonest behavior warrants such an award here. The Note requires an award of attorneys' fees and costs relating to WAMCO's efforts to collect on the debt, due to Diehl's non-payment, as well as its dishonest litigation tactics.

WAMCO has incurred **$94,278** in attorneys' fees in connection with the enforcement of the management fee, and in collection of the debt evidenced by the Note. The charges are identified in the affidavits submitted by the undersigned ($84,968 incurred through 9/4/07 – *see* original affidavit; $9,310 incurred since 9/4/07, – *see* supplemental affidavit). WAMCO has also incurred AAA filing fees and charges in connection with this claim, which it seeks to recover.

Diehl's counsel has not filed a fee affidavit.

WHEREFORE, Wisconsin Automated Machinery Corp. moves this Panel to enter an Award in its favor, and against Diehl Woodworking Machinery, Inc., for the relief requested in WAMCO's Second Supplement to Claims, and for such other and further relief as the Arbitrator deems necessary and appropriate.

Respectfully submitted,
**WISCONSIN AUTOMATED MACHINERY CORP.**

**DATED:** September 19, 2007    By:
One of its attorneys

*Andrew R. Schwartz, Esq.*
SUGAR, FRIEDBERG & FELSENTHAL LLP
Counsel for Wisconsin Automated
  Machinery Corp.
30 North LaSalle Street, Suite 3000
Chicago, Illinois 60602
(312) 704-9400

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DIEHL WOODWORKING          )
MACHINERY, INC.            )
                           )
        Plaintiff,         )
            case 3:07-cv-00263-JVB-CAN    document 59    filed 08/15/2007    page 1 of
    -vs-                   )                CIVIL NO:  3:07-CV-263
                           )
WISCONSIN AUTOMATED        )
MACHINERY CORP., JAY       )
EHRLICH and DIMITRIS       )
LOUKIDIS                   )
                           )
        Defendants.        )

## NOTICE OF WITHDRAWAL OF
## MOTION TO STAY ARBITRATION

Comes now the plaintiff, Diehl Woodworking Machinery, Inc. (hereinafter "Diehl"), by counsel, and hereby provides notice of the withdrawal of its Motion to Stay Arbitration. In support of this Notice, Diehl would show the Court as follows:

1.    Prior to the removal of this action, Diehl filed a Motion to Stay Arbitration.

2.    This Court has scheduled a hearing on the Motion to Stay Arbitration for August 16, 2007 at 11:00 a.m.

3.    The hearing of arbitration at issue was conducted in Chicago, Illinois on Monday, August 13, 2007.

4.    As the hearing has already been conducted, Diehl wishes to withdraw its Motion to Stay the Arbitration.


EXHIBIT
C-92

WHEREFORE, plaintiff, Diehl Woodworking Machinery, Inc., hereby notifies the Court it withdraws its Motion to Stay Arbitration set for hearing on August 16, 2007 and for all other just and proper relief in the premises.

CARSON BOXBERGER LLP

case 3:07-cv-00263-JVB-CAN s/Larry L. Barnard    filed 08/15/2007    page 2 of

Larry L. Barnard (11904-49)
Bruce O. Boxberger (3535-02)
Attorneys for Plaintiff and Third-
Party Defendant

1400 One Summit Square
Fort Wayne, Indiana 46802
Telephone: (260) 423-9411
F:\Diehl Woodworking Machinery 19,554\Notice of Withdrawal.doc

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: **Stephen Downs, Esq; R. Steven Hearn, Esq. and Andrew Schwartz, Esq.**

s/Larry L. Barnard
(Larry L. Barnard)

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION
## CHICAGO, ILLINOIS

| | |
|---|---|
| WISCONSIN AUTOMATED MACHINERY CORP.,      *Claimant*, | ) ) ) ) |
| v. | )    No. 51 180 01918 06 |
| DIEHL WOODWORKING MACHINERY, INC.,    *Respondent*. | ) )    Arbitrator Morsch ) |

### SUPPLEMENTAL AFFIDAVIT OF ANDREW R. SCHWARTZ

Andrew R. Schwartz, a licensed attorney at law, certifies and states as follows pursuant to 735 ILCS 5/1-109:

1.     I have personal knowledge of the facts alleged herein, and would so testify under oath if called as a witness at trial.

2.     I am an attorney at law. I have been licensed to practice before the Courts of the State of Illinois continuously from November 10, 1988 to the present. I am also licensed to practice before the U.S. District Courts for the Northern District of Illinois, District of Colorado, and Western District of Wisconsin, as well as the U.S. Court of Appeals for the Seventh Circuit. I also have several *pro hac vice* admissions, including an admission to practice before the U.S. District Court for the Northern District of Indiana in a related lawsuit now pending there involving the parties to this case.

3.     I am a partner at Sugar, Friedberg & Felsenthal LLP ("SF&F"), where I concentrate my practice in commercial and civil litigation. I have access to, and am a "custodian" of our billing records.

4.     I have substantial experience handling commercial, civil and matrimonial litigation. In my 18+ years of practice before the Courts of this State, I have handled hundreds of civil cases, including numerous contested matrimonial cases. I hold an AV (highest) rating from

Martindale-Hubbell, and I was honored as one of the top attorneys in Illinois in the 2007 edition of *Illinois Super Lawyers*. I also have several publications to my credit, including an IICLE chapter on fraudulent transfer litigation, two *Illinois Bar Journal* articles on civil litigation, and an article on attorneys' fee litigation published in the ISBA Matrimonial Section newsletter. A copy of my current resume is attached as **Appendix 1** to the affidavit I previously submitted.

5.  The other SF&F timekeepers are associate attorneys at my office, whose rates are commensurate with their expertise and experience.

6.  SF&F represents Wisconsin Automated Machinery Corp. ("WAMCO") in the above-captioned matter. I am the SF&F billing partner responsible for this matter.

7.  SF&F has rendered valuable legal services to WAMCO and incurred certain charges in connection with the arbitration of this matter, and in connection with the related lawsuit now pending before the U.S. District Court for the Northern District of Indiana. The pertinent services and charges are accurately described in the attached petition.

8.  SF&F's charges are reasonable and proper. In support, I state as follows:

a.  I have substantial experience in civil and commercial litigation;

b.  My billing rate ($350/hr) is well within the range of fees charged by litigators practicing in the Chicago metropolitan area with comparable experience.

c.  The services rendered and costs are reasonable and were necessarily incurred in providing legal representation to WAMCO;

d.  The amount in controversy exceeds $500,000.

d.  Some of the issues in this case have involved contract and arbitration law, as well as relatively complex questions of choice-of-law, comity and civil procedure.

9.  I have kept careful records of the time spent working on behalf of WAMCO in connection with this case.

10.    Billing records are kept in the ordinary course of our practice at SF&F, using TABS III (ABA-approved legal billing software).  For each billable service, the SF&F timekeeper providing that service records each time entry at or immediately after he or she performs each and every item of billable work.  This is done by entering the following data, either onto time sheets, or by inputting it directly into a computer that is networked to our server:

- client;
- matter;
- date;
- billing attorney's initials;
- billing code;
- description of service; and
- hours spent, or fraction thereof.

11.    Similarly, costs are recorded by the individual advancing them, and given to the SF&F secretary for compilation.

12.    A billing secretary subsequently inputs the information written onto time cards into TABS III. At the end of each billing period, our bookkeeper compiles and prints a detailed computer billing "time run" from the data entered by the timekeepers.

13.    Before an SF&F bill is finalized and submitted to WAMCO, I review a draft bill, at which time I check it for accuracy, and may discount or waive certain charges.  Any changes made to the time run are reflected in the final statement sent to the client.  SF&F followed this procedure with respect to the billing statements generated for WAMCO.

14.    My prior affidavit was submitted on September 5, 2007 and showed entries through and including 9/4/07. That affidavit did not include the following additional time spent in connection with this matter since then:

```
09/05/07   91  1    P      10   350.00    3.20    1120.00 Draft fee affidavit
09/05/07   91  1    P      61   350.00    0.30     105.00 E-mail to JE forwarding same for review and
                                                          comment; teleconf. w/ JE re: same
09/05/07   91  1    P      61   350.00    0.10      35.00 E-mail to AAA forwarding fee affidavit
09/10/07   91  1    P       2   350.00    0.20      70.00 Telephone call with JE re: mediation
09/10/07   91  1    P      10   350.00    0.80     280.00 Draft post-closing brief
09/11/07   91  1    P      10   350.00    1.00     350.00 Draft post-closing brief
09/12/07   91  1    P       6   350.00    1.00     350.00 Letter to Mediator Whiteleather
```

| 09/13/07 | 91 | 1 | P | 2 | 350.00 | 1.20 | 420.00 | Telephone call with J. Ehrlich regarding mediation issues; review e-mail traffic; reply to same; letter to mediator (cont'd) |
| 09/14/07 | 91 | 1 | P | 2 | 350.00 | 0.20 | 70.00 | Telephone call with JE re: settlement issues |
| 09/14/07 | 91 | 1 | P | 12 | 350.00 | 0.40 | 140.00 | Review e-mail traffic; reply to same |
| 09/16/07 | 91 | 1 | P | 10 | 350.00 | 3.10 | 1085.00 | Draft post-closing brief. |
| 09/17/07 | 91 | 1 | P | 2 | 350.00 | 0.20 | 70.00 | Telephone call with Jay re: settlement issues |
| 09/17/07 | 91 | 1 | P | 10 | 350.00 | 2.80 | 980.00 | Draft post-closing brief (continued) |
| 09/17/07 | 91 | 1 | P | 2 | 350.00 | 0.50 | 175.00 | Telephone calls (x4) with JE re: mediation/ settlement issues; no serious settlement offer by Diehl/Rozman/Loukidis |
| 09/18/07 | 91 | 1 | P | 10 | 350.00 | 5.30 | 1855.00 | Draft post-closing brief (continued) |
| 09/19/07 | 91 | 1 | P | 10 | 350.00 | 6.30 | 2205.00 | Draft post-closing brief |

I extracted all of the current line items for which WAMCO seeks reimbursement from a work-in-progress report on our SF&F billing system for WAMCO's account, showing time since September 4, 2007.

FURTHER AFFIANT SAITH NAUGHT.

The undersigned hereby states on his oath that the factual allegations contained in the foregoing **Affidavit** are true and correct to the best of my knowledge and belief.

ANDREW R. SCHWARTZ

Subscribed and sworn to this
19th day of September, 2007

Notary Public

"OFFICIAL SEAL"
JENNIFER L. SHERPAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/17/2007

(1

## AMERICAN ARBITRATION ASSOCIATION
### Commercial Arbitration Tribunal

In the matter of the Arbitration between

Re: 51 180 01918 06

      Wisconsin Automated Machinery Corp.
      and
      Diehl Woodworking Machinery, Inc.,
     -  Chicago, Illinois

Case Manager:   Kimberly Emerson

## AWARD OF ARBITRATOR

      I, the undersigned arbitrator, having been designated in accordance with the arbitration agreement entered into by the parties dated September 13, 2002, having been duly sworn, having heard the proofs and allegations of the parties, and having considered the parties' post-hearing briefs, FIND as follows:

### Agreements at Issue

      Claimant Wisconsin Automated Machinery Corp. (WAMCO) has asserted claims against Respondent Diehl Woodworking Machinery, Inc. under a series of agreements between the parties. These are an Asset Purchase Agreement dated September 13, 2002, a Promissory Note in the face amount of $600,000.00 dated October 1, 2002, a Security Agreement dated October 1, 2002, and a Memorandum of Agreement dated August 2005. Diehl has denied liability on the claims asserted.

### WAMCO's Claim for Declaratory Relief

      WAMCO asks that the Memorandum of Agreement be declared null and void for lack of consideration. The evidence shows that there was an ongoing dispute between the parties regarding Diehl's obligation to continue paying WAMCO management fees under Section 6.7 of the Asset

Purchase Agreement, and the amount of fees due. The parties made an effort to resolve their dispute by entering into the Memorandum of Agreement. The attempt to settle the dispute and clarify the parties' rights and obligations was sufficient consideration to support the Memorandum of Agreement. Moreover, the Memorandum of Agreement would have been valid and enforceable even if it had not been supported by consideration inasmuch as it was a mutual agreement to change the management fee in accordance with Section 6.7 of the Asset Purchase Agreement.

### WAMCO's Claim for Breach of Asset Purchase Agreement (unmodified by Memorandum of Agreement)

WAMCO's claim for unpaid management fees under Section 6.7 of the Asset Purchase Agreement fails because that provision was modified and superseded by the Memorandum of Agreement.

### WAMCO's Alternative Claim for Breach of Asset Purchase Agreement (as modified by the Memorandum of Agreement)

WAMCO's claim for unpaid management fees under the Memorandum of Agreement fails because Diehl never requested that WAMCO provide management or consulting services and WAMCO never provided any such services. Even Paul Ehrlich, the major shareholder of WAMCO who "called all the shots" when the management fees were first imposed on Diehl, acknowledged in June 2006 that the services provided to Diehl had "become minimal" (Ex. C24).

Moreover, the parties could not have intended that Diehl would be obligated to pay management fees after WAMCO withdrew from the industry and became a holding company with only one employee and thus unable to provide management and consulting services. The occasions on which Jay Ehrlich, as a major investor in Diehl, made suggestions or provided information to Diehl did not constitute the provision of management or consulting services. His email message dated July 26, 2006 (Exhibit C9) in which he made multiple suggestions for improving the operations of Diehl and expressed his willingness to "roll up my sleeves and have significantly more involvement" in the business was an attempt to create a paper record that WAMCO could use in its ongoing dispute with Diehl and not a good faith effort to provide management and consulting services.

### WAMCO's Claim on Promissory Note

WAMCO has failed to show that there has been any materially adverse change in Diehl's financial condition or ability to pay the amounts owed to WAMCO under the Promissory Note, or the occurrence of another event as a result of which WAMCO could deem itself insecure under the Security Agreement. On the contrary, Jay Erlich, after reviewing Diehl's financial results in June 2006 on WAMCO's behalf acknowledged that Diehl appeared to be better off financially in 2006 than in 2005. (Exhibit C6). The failure of Diehl to pay rent to a third party is not a default under the Security Agreement. The conclusory allegation "Diehl's business conditions require the elimination of the management fee" in Diehl's co-pending action against WAMCO does not support WAMCO's claim of insecurity.

### WAMCO's Claim on Promissory Note (Failure to Make Monthly Payments)

Diehl offered no evidence in this arbitration proceeding that would justify its payment of monthly installments from June 2007 to the Clerk of Court in Indiana rather than to WAMCO.

### WAMCO's Claim for Attorneys' Fees and Expenses

WAMCO has asserted a claim for attorneys' fees and expenses. It will serve the interests of justice and facilitate the resolution of the remaining disputes between the parties if this claim is denied.

Accordingly, I AWARD as follows:

1. On or before October 31, 2007, Diehl shall pay to WAMCO $50,000.00 for the installments on the Promissory Note due in June, July, August, September and October 2007, plus interest at the rate of 5% per annum on each installment from the date on which it was due to the date of payment.

2. WAMCO shall consent to any motion made by Diehl for leave to withdraw the funds deposited with the Clerk of Court, but Diehl shall be obligated to make the payment set forth in Paragraph 1 whether or not such funds are withdrawn.

The administrative fees and expenses of the American Arbitration Association totaling $4,400.00 and the compensation of the arbitrator totaling $ 12,200.00 shall be borne by the parties equally. Therefore, Diehl shall reimburse WAMCO the sum of $2,000.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by WAMCO.

This award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

October 1 2007
_____
Date

Thomas H. Morsch
_____
Thomas H. Morsch

**51-180-01918-06**
**Diehl Woodworking Machinery**

**Administrative Fees and Expenses:**

| | | |
|---|---:|---:|
| Filing Fees | $0.00 | |
| Case Services Fee | $0.00 | |
| Hearing Fees | $0.00 | |
| AAA Room Rental Fee | $200.00 | |
| Abeyance/Misc. AAA Fees | $0.00 | |
| Non-AAA Conference Room Expenses | $0.00 | |
| Misc Expenses | $0.00 | |
| Your Share of Administrative Fees and Expenses: | | $200.00 |
| Amount Paid for Administrative Fees and Expenses: | | $200.00 |
| Balance Administrative Fees and Expenses: | | $0.00 |

**Neutral Compensation and Expenses:**

| | |
|---|---:|
| Your Share of Neutral Compensation and Expenses: | $6,100.00 |
| Amount Paid for Neutral Compensation and Expenses: | $6,800.00 |
| Balance Neutral Compensation and Expenses: | ($700.00) |

| | |
|---|---:|
| **Party Balance:** | ($700.00) |

**51-180-01916-06**
**Wisconsin Automated Machinery Corp.**

**Administrative Fees and Expenses:**

| | | |
|---|---|---|
| Filing Fees | $2,750.00 | |
| Case Services Fee | $1,250.00 | |
| Hearing Fees | $0.00 | |
| AAA Room Rental Fee | $200.00 | |
| Abeyance/Misc. AAA Fees | $0.00 | |
| Non-AAA Conference Room Expenses | $0.00 | |
| Misc Expenses | $0.00 | |
| Your Share of Administrative Fees and Expenses: | | $4,200.00 |
| Amount Paid for Administrative Fees and Expenses: | | $4,150.00 |
| Balance Administrative Fees and Expenses: | | $50.00 |

**Neutral Compensation and Expenses:**

| | |
|---|---|
| Your Share of Neutral Compensation and Expenses: | $6,100.00 |
| Amount Paid for Neutral Compensation and Expenses: | $6,800.00 |
| Balance Neutral Compensation and Expenses: | ($700.00) |

| | |
|---|---|
| **Party Balance:** | **($650.00)** |

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Central Case Management Center*
Molly Bergenquest
Vice President
Tracey Patton
Assistant Vice President

13455 Noel Road – Suite 1750, Dallas, TX 75240
telephone: 972-702-8222 facsimile: 972-490-9008
internet: http://www.adr.org/

# FAX

Date:  October 2, 2007

To
Andrew R. Schwartz, Esq.
Sugar, Friedberg & Felsenthal
30 North LaSalle Street, Suite 3000
Chicago, IL  60602
312-372-7951

Larry L. Barnard, Esq.
Carson Boxberger LLP
1400 One Summit Square
Ft. Wayne, IN  46802
260-423-4329

Fax Number:  972-490-9008

From:  Kimberly L. Emerson

Number of Pages:   (including cover)

Re: 51 180 01918 06
    Wisconsin Automated Machinery Corp.
    and
    Diehl Woodworking Machinery
    - Chicago, Illinois
    Claim: $225,000.00

MESSAGE:

THIS FAX TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS
ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR
OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE
PERSON AUTHORIZED TO DELIVER THIS FAX TO THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY DISSEMINATION OF THIS FAX IS PROHIBITED. IF YOU HAVE RECEIVED THIS
FAX IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AT THE NUMBER LISTED
ABOVE AND RETURN THE ORIGINAL FAX TO US BY FIRST CLASS MAIL AT THE ABOVE ADDRESS.

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Central Casa Management Center*
Molly Bargenquest
Vice President
Tracey Patten
Assistant Vice President

October 2, 2007

13455 Noel Road - Suite 1750, Dallas, TX 75240
telephone: 972-702-8222 facsimile: 972-490-9008
internet: http://www.adr.org/

**VIA FACSIMILE ONLY**

Andrew R. Schwartz, Esq.
Sugar, Friedberg & Felsenthal
30 North LaSalle Street, Suite 3000
Chicago, IL 60602

Larry L. Barnard, Esq.
Carson Boxberger LLP
1400 One Summit Square
Ft. Wayne, IN 46802

Re: 51 180 01918 06
    Wisconsin Automated Machinery Corp.
    and
    Diehl Woodworking Machinery
    - Chicago, Illinois
    Claim: $225,000.00

Gentlemen:

By direction of the Arbitrator we herewith transmit to you the duly executed Award in the above matter.

Enclosed please find a financial breakdown. The financial information contained in the Award was calculated as of the date of the Award's preparation. The Association will provide information on any adjustments to same caused by subsequent payments.

Please note that the case file will be destroyed fifteen (15) months after the date of this letter.

As always, please do not hesitate to contact the undersigned if you have any questions.

Sincerely,

Jeremy May for

Kimberly L. Emerson
Senior Case Manager
800 804 9718
Emersonk@adr.org

*Supervisor Information: Jennifer L. Bell, 972 702 8222, Bellj@adr.org*

Encl.

cc:    Thomas H. Morsch, Esq. **VIA FACSIMILE ONLY**