79

EXHIBIT

tables'

C 79

# Diehl Woodworking Machinery

## Board of Directors Meeting Agenda

# Tuesday, June 28, 2005

D 0127

## J. Ehrlich

Meeting Agenda
Diehl Woodworking Machinery Company
Board of Directors Meeting
June 28, 2005

## Old Business & Up to Current Matters/Issues

1. Formal replacement of H. Kempler with M. Ruffner on board.
2. Bank Relationship with National City
   - Current Notes Payable Table...............................Schedule No. 1
3. General & Health Insurance Situation
   - Position Memo...............................................Schedule No. 2
4. Sales/Shipments relative to 2005 Plan......................Schedule No. 3
5. Cash Position in consideration of impact by:
   - Recent used chassis purchases..........................Schedule No. 4
     -17 rip saws
     -8 veneer splicers
   - 5000 Inventory purchases...............................Schedule No. 5
   - PELLA 900 & 450 orders
   - Impact of Recent Delay Conversations
6. Building/Facility Concerns.................................Schedule No. 6
   - Roof Repair
     -Main Roof
     -Center Rear Section
   - Structural
     -Weldshop/Attic Wall Repair
     -Center rear Roof                        Internal I/D Labor
     -Tuck point North and South Wall
     -Tuck point indent wall and roof
     -Rebuild Shop outer wall foundation   Internal I/D Labor
   - Paint North Wall
   - Office Ceiling Tile                       Internal I/D Labor
7. Concern for completion of existing PELLA Order
   - Delay implications, if any.
   - Projected 15% margin.

D 0128

New Business

8. Sales Prospects for remainder of 2005 and 2006...........Schedule No. 7
- Traditional Business
  - -Rip Saws
  - -Splicers
  - -Remanufactured others
  - -Diehl Parts
  - -Bell/Challoner
- Price increases on traditional products
  - -Effective July 15, 2005      Average 6.5%
- Tenoners
  - -PELLA
- Dyken -Wrapping
  - -Knauf (Gary thinks 75-85% probability)...........Schedule No. 8

9. Potential Impact of Increased Orders
- Could remain at present engineering levels with just PELLA
- Knauf requires a dedicated project engineer (see Schedule No. 8)
- Building Modifications required:
  - -New Dock & Door ($27K)
- Other indirect/overhead/personnel requirement *considerations*
  - -Foreman, w/current foreman to production control ($50K)
  - -Software for manufacturing ($3K)
  - -Additional engineering CAD seat/computer ($10K)
  - -Service Manual Software ($2K)
  - -Maintain Passmore on contract basis
  - -Coordinate Measuring Machine (used CMM @ $15K)
  - -Forklift, used, #10,000 ($15K)

10. Cash Position Based on New Orders & Others
- PELLA-900's 2 & 3 provide $293K sales, $103K DP
- Knauf-D50's provide $1.35MM sales, $470K DP
- Insurance rebate

11. Employee Labor Relations
- Potential Wage Increase upon receipt of PELLA's down payment for The second and third tenoner. In return, ask for one year contract.
- Concern for employees who are not performing at 50% when compared to new employees who are performing more efficiently.
- Possible retirement incentive?
- Non-Union Increases...for selected employees

12. Potential Acquisition Considerations
- Saco-Lowell
- Kimwood

D 0129

# Schedule No. 1

Diehl Woodworking Machinery, Inc.
Summary of Bank Arrangement
National City Bank

- Date: June 12, 2003, renewed in 2004.

- Line of Credit: 1,000,000

  - Interest rate is established quarterly, based on the ratio of total unsubordinated debt to EBITDA. Varies from prime up to prime plus 1.0%. Interest rate is fixed for each quarter, so it varies from the current prime. For instance, the current prime is 6.0%, but we are paying 5.75%.

  - Borrowing base is 50% of inventory (excluding WIP, supplies and obsolete or slow moving inventory) plus 80% of accounts receivable (excluding government, foreign, over 90 days and "tainted" current amounts – where the over 90 day amount is more than 25% of the total.)

  - The notes payable to shareholders and to WAMCO are currently subordinated to the line of credit. The bank has given us permission to repay the shareholder debt and would consider funding the WAMCO debt as well. (The WAMCO debt is $384,700 at May 31, 2005.)

  - Personal guarantees are in place totaling $600,000. We have explored the possibility of such guarantees not being required at renewal, and the bank seems agreeable, though no formal agreement has been reached.

- Term Loan Number One

  - Original amount: $50,000

  - Original date: June 30, 2004

  - Term: 36 months

  - Interest at prime rate

  - Monthly payment of $1,389 plus interest

  - Unsecured, but taken out to purchase Haas VF-3 that we had leased.

  - The shareholder debt and the WAMCO debt are subordinated to this term loan.

  - Balance at May 31, 2005: $34,721

D 0130

- Term Loan Number Two

  - Original amount:  $115,000

  - Original date:  January 7, 2005

  - Term:  60 months

  - Interest at prime rate

  - Monthly payment of $1,916.67 plus interest

  - Unsecured, but originally taken out to purchase Haas lathe.

  - The shareholder debt is subordinated to this term loan.  The bank originally asked for a subordination agreement for the WAMCO debt, but has never pursued it, so there is no subordination for the WAMCO debt.

  - Balance at May 31, 2005:  $107,333

I would consider our relationship with National City Bank to be excellent.  I am extremely satisfied at the way they work and they are obviously satisfied with our performance since we changed away from LaSalle.  Their fees are MUCH lower, their day to day operating procedures are much easier and they do not require "audits" from their internal audit staff, which cost us approximately $5,000 a year with LaSalle.  In addition, LaSalle charged us a substantial fee each year just to renew the loan.  There are no such fees with National City.

D 0131

## Schedule No. 1

Diehl Woodworking Machinery, Inc.
Schedule of Debt
May through September, 2005

| | Interest Rate | | Balance | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Rate | Current | Date | Amount | Jun-05 | Jul-05 | Aug-05 | Sep-05 |
| **National City Bank:** | | | | | | | | |
| Line of Credit | Fixed Quarterly | 5.75% | 31-May-05 | 99,000.00 | 474.38 | 490.19 | 490.19 | 474.38 |
| Term Loan (VF-5) | Prime | 6.00% | 31-May-05 | 34,721.00 | | | | |
| | | | 30-Jun-05 | 33,332.00 | 173.38 | | | |
| | | | 30-Jul-05 | 31,943.00 | | 171.75 | | |
| | | | 30-Aug-05 | 30,554.00 | | | 164.58 | |
| | | | 30-Sep-05 | 29,165.00 | | | | 157.40 |
| Term Loan (Lathe) | Prime | 6.00% | 31-May-05 | 107,333.32 | | | | |
| | | | 07-Jun-05 | 105,416.65 | 536.35 | | | |
| | | | 07-Jul-05 | 103,499.98 | | 544.01 | | |
| | | | 07-Aug-05 | 101,583.31 | | | 534.11 | |
| | | | 07-Sep-05 | 99,666.64 | | | | 524.21 |
| **Shareholders:** | | | | | | | | |
| Subordinated Debt | Prime | 6.00% | 31-May-05 | 83,000.00 | 415.00 | 428.83 | 428.83 | 415.00 |
| **Capital Lease:** | | | | | | | | |
| Haas (VF-3) | Fixed | 6.33% | 31-May-05 | 67,540.15 | | | | |
| | | | 30-Jun-05 | 65,829.68 | 346.41 | | | |
| | | | 31-Jul-05 | 64,110.44 | | 337.64 | | |
| | | | 31-Aug-05 | 62,382.38 | | | 328.82 | |
| | | | 30-Sep-05 | 60,645.46 | | | | 319.96 |
| **WAMCO Debt:** | | | | | | | | |
| Product Line Purchase | Fixed | 6.19% | 31-May-05 | 384,708.07 | | | | |
| | | | 30-Jun-05 | 376,695.19 | 1,987.12 | | | |
| | | | 31-Jul-05 | 368,640.92 | | 1,945.73 | | |
| | | | 31-Aug-05 | 360,345.05 | | | 1,904.13 | |
| | | | 30-Sep-05 | 352,407.16 | | | | 1,862.31 |

D 0132

Diehl Woodworking Machinery, Inc.
Management Fees
Scheduled Payment vs. Actual Payment

| | Scheduled | Paid | Accrued | Difference By Month | Cumulative |
|---|---|---|---|---|---|
| January-02 | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.00 |
| February-02 | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.00 |
| March-02 | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.00 |
| April-02 | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.00 |
| May-02 | 10,000.00 | 10,000.00 | 0.00 | 0.00 | 0.00 |
| June-02 | 10,000.00 | 5,000.00 | 0.00 | 0.00 | 0.00 |
| July-02 | 10,000.00 | 5,000.00 | 0.00 | 5,000.00 | 5,000.00 |
| August-02 | 10,000.00 | 5,000.00 | 0.00 | 5,000.00 | 10,000.00 |
| September-02 | 10,000.00 | 5,000.00 | 0.00 | 5,000.00 | 15,000.00 |
| October-02 | 10,000.00 | 5,000.00 | 0.00 | 5,000.00 | 20,000.00 |
| November-02 | 10,000.00 | 5,000.00 | 0.00 | 5,000.00 | 25,000.00 |
| December-02 | 10,000.00 | 5,000.00 | 0.00 | 5,000.00 | 30,000.00 |
| January-03 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 35,000.00 |
| February-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| March-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| April-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| May-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| June-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| July-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| August-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| September-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| October-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| November-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| December-03 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| January-04 | 15,000.00 | 40,000.00 | (25,000.00) | 0.00 | 35,000.00 |
| February-04 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| March-04 | 15,000.00 | 10,000.00 | 5,000.00 | 0.00 | 35,000.00 |
| April-04 | 15,000.00 | 25,000.00 | (10,000.00) | 0.00 | 35,000.00 |
| May-04 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 40,000.00 |
| June-04 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 45,000.00 |
| July-04 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 50,000.00 |
| August-04 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 55,000.00 |
| September-04 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 60,000.00 |
| October-04 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 65,000.00 |
| November-04 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 70,000.00 |
| December-04 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 75,000.00 |
| January-05 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 80,000.00 |
| February-05 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 85,000.00 |
| March-05 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 90,000.00 |
| April-05 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 95,000.00 |
| May-05 | 15,000.00 | 10,000.00 | 0.00 | 5,000.00 | 100,000.00 |
| | | | | | 105,000.00 |

D 0133

Diehl Woodworking Machinery, Inc.
Building Rent Paid to Wabash River, LLC
Scheduled Payment vs. Actual Payment

| | Scheduled | Paid | Accrued | Difference | |
| --- | --- | --- | --- | --- | --- |
| | | | | By Month | Cumulative |
| December-01 | 12,000.00 | 3,000.00 | 0.00 | | |
| January-02 | 12,000.00 | 3,000.00 | 0.00 | 9,000.00 | 9,000.00 |
| February-02 | 12,000.00 | 3,000.00 | 0.00 | 9,000.00 | 18,000.00 |
| March-02 | 12,000.00 | 3,000.00 | 0.00 | 9,000.00 | 27,000.00 |
| April-02 | 12,000.00 | 3,000.00 | 0.00 | 9,000.00 | 36,000.00 |
| May-02 | 12,000.00 | 3,000.00 | 0.00 | 9,000.00 | 45,000.00 |
| June-02 | 12,000.00 | 500.00 | 0.00 | 9,000.00 | 54,000.00 |
| July-02 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 65,500.00 |
| August-02 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 77,000.00 |
| September-02 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 88,500.00 |
| October-02 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 100,000.00 |
| November-02 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 111,500.00 |
| December-02 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 123,000.00 |
| January-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 134,500.00 |
| February-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 146,000.00 |
| March-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 157,500.00 |
| April-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 169,000.00 |
| May-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 180,500.00 |
| June-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 192,000.00 |
| July-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 203,500.00 |
| August-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 215,000.00 |
| September-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 226,500.00 |
| October-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 238,000.00 |
| November-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 249,500.00 |
| December-03 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 261,000.00 |
| January-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 272,500.00 |
| February-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 284,000.00 |
| March-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 295,500.00 |
| April-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 307,000.00 |
| May-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 318,500.00 |
| June-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 330,000.00 |
| July-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 341,500.00 |
| August-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 353,000.00 |
| September-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 364,500.00 |
| October-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 376,000.00 |
| November-04 | 12,000.00 | 500.00 | 0.00 | 11,500.00 | 387,500.00 |
| December-04 | 12,000.00 | 36,500.00 | 0.00 | 11,500.00 | 399,000.00 |
| January-05 | 12,000.00 | 500.00 | 3,000.00 | (24,500.00) | 374,500.00 |
| February-05 | 12,000.00 | 500.00 | 3,000.00 | 8,500.00 | 383,000.00 |
| March-05 | 12,000.00 | 500.00 | 3,000.00 | 8,500.00 | 391,500.00 |
| April-05 | 12,000.00 | 500.00 | 3,000.00 | 8,500.00 | 400,000.00 |
| May-05 | 12,000.00 | 500.00 | 3,000.00 | 8,500.00 | 408,500.00 |
| | | | | 8,500.00 | 417,000.00 |

D 0134

Diehl Woodworking Machinery, Inc.
Salary Reduction Plan
Summary through May 31, 2005

| | November 30, 2001 Payroll less Actual Payroll Rate | | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 01-Dec-01 through 30-Jun-02 | 01-Jul-02 through 31-Aug-02 | 01-Sep-03 through 15-Oct-03 | 16-Oct-03 through 31-Dec-03 | 01-Jan-04 through 30-Apr-04 | 01-May-04 through 15-Sep-04 | 16-Sep-04 through 31-Oct-04 | 01-Nov-04 through 31-Dec-04 | 01-Jan-05 through 31-May-05 | Total | Dec-03 Bonus | Dec-04 Bonus | Difference |
| Douglas | 2,421.44 | 4,842.88 | 259.44 | 432.40 | 691.84 | 1,555.11 | 258.87 | 0.00 | 0.00 | 10,461.98 | 500.00 | 3,000.00 | 6,961 |
| Rob | 2,100.00 | 4,200.00 | 225.00 | 375.00 | 600.00 | 1,350.00 | 225.00 | 0.00 | 0.00 | 9,075.00 | 200.00 | 3,000.00 | 5,875 |
| William | 2,735.88 | 5,471.76 | 291.13 | 488.55 | 781.68 | 1,761.03 | 293.64 | 0.00 | 0.00 | 11,825.67 | 750.00 | 2,400.00 | 7,175 |
| Lacinda | 2,012.50 | 4,025.00 | 242.61 | 404.35 | 646.96 | 727.83 | 0.00 | 0.00 | 0.00 | 8,059.25 | 750.00 | 4,000.00 | 3,309 |
| Jan | 4,217.50 | 8,435.00 | 903.75 | 1,506.25 | 2,410.00 | 3,262.50 | 542.25 | 0.00 | 0.00 | 21,277.25 | 5,200.00 | 6,250.00 | 7,827 |
| Gary | 5,045.88 | 10,091.76 | 1,081.26 | 1,802.10 | 2,883.36 | 3,894.03 | 649.26 | 0.00 | 0.00 | 25,447.65 | 6,275.00 | 7,450.00 | 11,722 |
| Richard | 3,675.00 | 7,350.00 | 787.50 | 1,312.50 | 2,100.00 | 2,815.00 | 472.50 | 5,083.32 | 0.00 | 18,532.50 | 500.00 | 5,450.00 | 12,582 |
| Ruben | 12,355.00 | 12,914.00 | 3,526.50 | 5,877.50 | 9,404.00 | 13,237.47 | 3,812.49 | 0.00 | 12,708.30 | 98,918.58 | 8,055.00 | 13,000.00 | 77,865 |
| Michael | 4,915.00 | 9,870.00 | 1,057.50 | 1,762.50 | 2,820.00 | 3,807.00 | 637.50 | 0.00 | 0.00 | 24,889.50 | 6,170.00 | 7,300.00 | 11,412 |
| | 19,498.20 | 87,200.40 | 8,376.69 | 13,961.15 | 22,337.84 | 11,973.47 | 7,148.76 | 5,083.32 | 12,708.30 | 210,288.13 | 28,400.00 | 51,850.00 | 150,632 |

NOTES:

1. Yoder has been removed from this schedule because of his changes in responsibility and the resultant pay increases.

2. Salaries for all non-management personnel were increased 09/01/03 in the amount of one half of the reduction at 12/01/01.

3. Salaries reduced by the amount in 2 above effective 05/01/04, and management salaries were reduced another 2% of the 11/30/01 amount, except Rozman was reduced by 5% of the 11/30/01 amount.

4. Reduction in 3 above restored effective 09/15/04. Management reduction restored by one-half of difference from 11/30/01, except Rozman increased by $200.

5. All salaries restored to 11/30/01 levels effective 11/01/04, except Rozman.

D 0135

# Diehl Woodworking Machinery, Inc.
## Subordinated Debt
### May 31, 2005

| Last Name | First Name | Subordinated Debt |
|-----------|------------|-------------------|
| Fredrickson | Gary | 10,000.00 |
| Meldrum | Richard | 10,000.00 |
| Rozman | Robert | 32,500.00 |
| Ruffner | Michael | 17,000.00 |
| Zolman | Jan | 13,500.00 |
| | | 83,000.00 |

Originally due 05/07/04.  Renewed at that time for five more years.

D 0136

## Schedule No. 2

Diehl Woodworking Machinery, Inc.
Health Insurance Summary

- Plan year ends July 31, 2005.

- Current TPA is SIHO.

- Settlement with SIHO and the reinsurer (Companion) has been reached and the funds ($60,000) have been deposited into our bank account. Will be recorded as a decrease in health insurance expense over the last six months of the year.

- The reserve balance for claims at May 31, 2005 is $131,300. Based on expected claims for two months as determined by SIHO plus the unused portion of the aggregate stop loss, the reserve is overstated by approximately $60,800. Based on actual claims (excluding the cancer patient) for the five months ended May 31, 2005, the reserve is overstated by approximately $92,400. This will be addressed in the second half of the year as more data is available, but at this time it appears that at least $120,000 of income (reduced expense) will be recorded before the end of the year because of this overaccrual and the above $60,000 recovery.

- There are still approximately $110,000 of claims outstanding for the cancer patient. We have received a check for $68,000 for some of those claims, but will have to fund them for payment, probably the week of June 27. At that time, we will also have to fund the additional approximately ,000 of the stop loss that we have not paid out yet. (This is reserved as discussed above.) The rest of the claims will be funded after the reinsurance company is satisfied and has paid us. The TPA does not ask us to fund claims such as this until the reinsurance company has paid.

- The current individual stop loss is $25,000 and the aggregate stop loss is $125,000. The latter will likely decrease in the next plan year. It was increased from $25,000 to $125,000 in the current plan year because of the cancer patient.

- Renewal options being explored:

  - SIHO has asked for a chance to quote for the coming plan year. I have agreed, but have informed them that the chances of us renewing with them is remote. SIHO has stopped doing business with the reinsurer that we are currently with, so their quotation may be competitive because the reinsurer will not be trying to get back from us what they had to pay in claims.

  - Our current broker (Beauchamp & McSpadden) has suggested the following options:

    - A different TPA (Pro-Claim Plus) in Ft. Wayne. I visited their facility on June 13 and was favorably impressed by their staff and their claims system.

    - A fully insured plan with Anthem. This is not likely to be a cost effective option due to the age and health condition of our employees, but I will explore it.

D 0137

- A Health Reimbursement Arrangement (HRA) with Benicorp. I need to learn much more about this option before making a decision. It is similar to a TPA arrangement, but there are features that are different.

- A Health Savings Account (HSA) compatible plan, whether with a fully insured arrangement or a TPA. This option is a fairly radical change from what we now have in that the employees and the company would contribute money to an HSA that would be controlled by the employee. This could be a less expensive way to furnish health insurance, but would only be real beneficial with a fully insured plan. As with the HRA arrangement mentioned above, this option will require further study, and is more likely to be an option for the following year renewal.

- Another broker (JW Flynn) is considering quoting on our group. They are owned by Old National Bank, which also owns a TPA. We have furnished data to them for them to decide if there is a chance that they can be competitive with our current TPA or with the new TPA we are considering.

D 0138

## Schedule No. 2

Diehl Woodworking Machinery, Inc.
Summary of Risk Insurance Coverage
May 7, 2005 to May 6, 2006

| Carrier | Named Insureds | Premium | Limits of Insurance | | Deductible | Comment |
|---|---|---|---|---|---|---|
| **GENERAL LIABILITY** | | | | | | |
| Burlington | DWMI | 48,431 | General Aggregate | 2,000,000 | 1,000 | |
| | Wabash River LLC | | Products-Completed Operations | 2,000,000 | | |
| | Employee Benefit Plans | | Personal and Advertising Injury | 1,000,000 | | |
| | 401(k) Retirement Plan | | Each Occurance | 1,000,000 | | |
| | Group Line Insurance Plan | | Damages to Rented Premises | 50,000 | | |
| | Group LTD Insurance Plan | | Employee Benefits Aggregate | 1,000,000 | | |
| | Business Travel Accident Plan | | Employee Benefits Each Claim | 1,000,000 | | |
| | Flexible Benefit Plan | | | | | |
| | WAMCO | | | | | |
| | WAMCO 401(k) Plan | | | | | |
| | JJ Allenton Venure, LLC | | | | | |
| **UMBRELLA EXCESS LIABILITY** | | | | | | |
| St. Paul Insurance | Same as above | 23,063 | General Aggregate | 3,000,000 | 10,000 | |
| | | | Products and completed work aggregate | 3,000,000 | | |
| | | | Personal injury and advertising injury | 3,000,000 | | |
| | | | Each occurance limit | 3,000,000 | | |
| **COMMERCIAL PROPERTY** | | | | | | |
| Cincinnati Insurance | 981 S. Wabash | 28,141 | Building | 2,500,000 | 5,000 | |
| | Wabash, IN | | Business Personal Property | 2,550,000 | 5,000 | |
| | | | Functional Personal Property | 1,191,000 | 5,000 | |
| | | | Business Income | 12 Mo. ALS | 5,000 | |
| | | | Building 2 (Storage Shed) | 10,000 | 5,000 | |
| | | | Business Personal Property - 2 | 10,000 | 5,000 | |
| | 536 Main St. | 1,755 | Building | 1,400,000 | 5,000 | |
| | Allenton, WI | | Building 2 | 265,000 | 5,000 | |
| | | 153 | Business Income | 125,000 | 5,000 | |
| **CRIME** | | | | | | |
| Cincinnati Insurance | DWMI | 648 | Employee Dishonesty | 250,000 | 1,000 | |
| | Wabash River | | | | | |
| | Diehl 401(k) Plans | | | | | |
| **ELECTRONIC DATA PROCESSING** | | | | | | |
| Cincinnati Insurance | | 1,100 | Equipment | 150,000 | 1,000 Basic | |
| | | | Data and Media | 10,000 | 2,500 Specified Losses | |

D 0139

**Schedule No. 2**
Diehl Woodworking Machinery, Inc.
Summary of Risk Insurance Coverage
May 7, 2005 to May 6, 2006

| Carrier | Named Insureds | Premium | Limits of Insurance | | Deductible | Comment |
|---|---|---|---|---|---|---|
| GENERAL FLOATER | | | | | | |
| | | | Loss of Income | 165,000 | | |
| | | | In Transit and Ways from Premises | 32,000 | | |
| | | | Duplicate and Backup Data | 2,000 | | |
| Cincinnati Insurance | | 8,050 | Patterns, Molds and Dies | 1,150,000 | 5,000 | |
| INSTALLATION FLOATER | | | | | | |
| Cincinnati Insurance | | 400 | Materials and supplies to be used in the installation of machinery | 50,000 | 5,000 | |
| AUTOMOBILE | | | | | | |
| Cincinnati Insurance | Diehl: | | | | | |
| | Cadillac DeVille | 1,303 | Liability | 1,000,000 | | |
| | Chevrolet Pickup | 1,608 | Medical Payments | 5,000 | | |
| | Ford Expedition | 1,016 | Uninsured Motorist | 1,000,000 | | |
| | Ford Taurus | 830 | Underinsured Motorist | 1,000,000 | | |
| | Ford Van | 843 | Comprehensive | ACV | | |
| | Hired and Nonowned | 317 | Collision | ACV | | |
| | Broadened Endorsement | 100 | | | | |
| | | 6,017 | | | | |
| | WAMCO: | | | | | |
| | Lexus ES300 | 1,589 | | | | |
| | Lincoln Town Car | 2,327 | | | | |
| | Porsche Boxster | 2,327 | | | | |
| | | 6,243 | | | | |
| WORKERS' COMPENSATION | | | | | | |
| Cincinnati Insurance | | 22,216 | Bodily Injury by Accident | 100,000 | | |
| | | | Bodily Injury by Disease | 100,000 | | |
| | | | Policy Limit - Disease | 500,000 | | |

D 0140

## Schedule No. 2
Diehl Woodworking Machinery, Inc.
Summary of Risk Insurance Coverage
May 7, 2005 to May 6, 2006

| Carrier | Named Insureds | Premium | Limits of Insurance | Deductible | Comment |
|---|---|---|---|---|---|
| EXPORTERS PACKAGE | | | | | |
| Chubb | DWMI | 4,845 | International General Liability | 1,000,000 | |
| | | | International Auto Liability | | |
| | | | International Workers' Compensation | | |
| OCEAL CARGO | | | | | |
| Chubb | DWMI | 1,000 | Merchandise aboard one conveyance | 250,000 | |
| | | | Except: | | |
| | | | On deck | 25,000 | |
| | | | Mail or parcel post | 1,000 | |
| | | | Federal Express or similar | 25,000 | |
| | | | Via messenger | 25,000 | |
| | | | Aboard barge or tow | 100,000 | |
| DIRECTORS AND OFFICERS | | | | | |
| Chubb | DWMI | 5,500 | Directors and Officers Liability | 1,000,000 | Limit is aggregate for all coverages |
| | | | Employment Practices Liability | | |
| | | | Fiduciary Liability | | |

D 0141

# Schedule No. 3

Diehl Woodworking Machinery, Inc.
2005 Shipments vs. Plan
YTD and Backlog

| Product | 2005 Plan | | Actual | Backlog |
| --- | --- | --- | --- | --- |
| | Total Year | Through 06/30 | Through 06/30 | |
| Lathes | 0 | 0 | 0 | 0 |
| Rip Saws | 742,000 | 387,000 | 288,500 | 168,000 |
| Rip Saws - Remanufactured | 486,000 | 243,000 | 369,400 | 0 |
| Gang Rip Saws | 0 | 0 | 0 | 0 |
| Gang Rip Saws - Remanufactured | 34,000 | 34,000 | 35,200 | 42,000 |
| Splicers | 0 | 0 | 0 | 0 |
| Splicers - Remanufactured | 64,000 | 32,000 | 99,600 | 52,900 |
| Moulders - D Series Remanufactured | 80,000 | 80,000 | 0 | 0 |
| Moulders - D 5000 | 150,000 | 0 | 0 | 0 |
| Grinders | 64,000 | 32,000 | 30,000 | 0 |
| Grinders - Remanufactured | 0 | 0 | 0 | 14,500 |
| Tenoners - Double End | 145,000 | 145,000 | 0 | 525,000 |
| Tenoners - Single End | 360,000 | 240,000 | 0 | 0 |
| Tenoners - Single End - Remanufactured | 0 | 0 | 0 | 54,000 |
| Other | 13,000 | 6,500 | 0 | 0 |
| | 2,138,000 | 1,199,500 | 822,700 | 856,400 |
| Diehl Parts | 1,680,000 | 840,000 | 798,000 | 125,100 |
| Diehl Recovered Parts | 96,000 | 48,000 | 84,000 | 0 |
| WAMCO Parts | 600,000 | 300,000 | 196,000 | 94,900 |
| Tooling | 78,000 | 39,000 | 39,400 | 11,500 |
| Service Revenue | 36,000 | 18,000 | 29,500 | 0 |
| GRAND TOTAL | 4,628,000 | 2,444,500 | 1,969,600 | 1,087,900 |

D 0142



Schedule No. 6

Diehl Woodworking Machinery
Proposed Areas of Repair to Facility
June 2005

Replace Roof Areas

$38,000    Center Section Hall
$53,000    Office Roof

Power Wash & Paint Walls

$3,700    South Office Wall
$5,400    Office Area North Side
$2,600    Assembly Area
$7,600    Weld Shop

D 0143

## Supporting Notes to Facility Repair Figures
## June 2005

The items identified in the illustrated cost page reflect the more important major concerns we will have to deal with in 2005/2006. While the painting can be portioned to address certain areas which are essentially esthetic concerns, the matter of the roof is much more serious.

**The Office Roof** - is a shingle that is over 25 years old and has significant problems. We have "made due" for the past three years with buckets in the attic, but can only project that the problem will be more serious this coming year. If nothing, we know it will not get better. To date, we don't believe we have any structural problems, but some section of the roof deck will have to be replaced in the re-roofing process. The cost for this roof reflects a "built up" membrane type design and not replacing the unit with shingles. Actually, only the outer slopes are shingle, the two inner slopes (the roof has two pair of symetrically sloped surfaces) are already a built up design.

**The Center Section Hall** - is the area between the machine shop and weldery and the one, in general, with which we have had the most problems. We did spend about $5K this year in repairs and they have been very effective. This roof requires both limited structural repair to the wooden deck trusses and a complete removal replacement of the membrane exterior surface. When it leaks, and it still does in a few places, it drops primarily in areas not seen by customers and the problem can yet be addressed with visquine sheets unless; 1) the structural problem begins to deteriorate rapidly, or 2) we make an acquisition. In this latter case, the area becomes too important.

**What Needs Really to be Done?**
1. Repair the office roof.
2. Paint the office area, north side.
3. Make shift the center section hall.

D 0144

## Schedule No. 4

## Used Rip Saw & Splicer Chassis Purchases

$50,050 — Bought 17 rip saws, 16-SL52's & 1-750

Less *conservative* recovery for the following parts:

| | | |
|---|---|---|
| | $14,700 | 14 Cone reducers |
| | 2,210 | 8 Variable speed sheave units |
| | 1,875 | 3 Stock guides |
| 26,285 | 7,500 | 3 Chain & race sets |

$23,765 — Projected long term investment, with approximately $1,400 invested in each used chassis for remanufacture.

$7,880 — **Bought** 8 veneer splicers
No projected parts recovery

$972 — Average chassis cost.

## Schedule No. 5

In January 2005, we ordered $9,325 of 5000 Series Moulder components from Taiwan. These components were those items we needed to balance our inventory to manufacture two more machines and to address the more common service items associated with that product line. These items have shipped from our vendor and we have paid for the components. We expect that these components will arrive in Wabash during the second week of July.

D 0145

# Schedule No. 7

Diehl Woodworking Machinery, Inc.
2005 Shipments vs. Plan
YTD and Backlog

| Product | 2005 Plan Total Year | 2005 Plan Through 06/30 | Actual Through 06/30 | Backlog | Estimated 2nd Half Orders | Projected 2005 Shipments |
|---|---|---|---|---|---|---|
| Lathes | 0 | 0 | 0 | 0 | 0 | 0 |
| Rip Saws | 742,000 | 387,000 | 288,500 | 168,000 | 375,000 | 571,500 |
| Rip Saws - Remanufactured | 486,000 | 243,000 | 369,400 | 0 | 325,000 | 600,400 |
| Gang Rip Saws | 0 | 0 | 0 | 0 | 0 | 0 |
| Gang Rip Saws - Remanufactured | 34,000 | 34,000 | 35,200 | 42,000 | 0 | 77,200 |
| Splicers | 0 | 0 | 0 | 0 | 0 | 0 |
| Splicers - Remanufactured | 64,000 | 32,000 | 99,600 | 52,900 | 105,000 | 169,600 |
| Moulders - D Series Remanufactured | 80,000 | 80,000 | 0 | 0 | 115,000 | 0 |
| Moulders - D 5000 | 150,000 | 0 | 0 | 0 | 0 | 0 |
| Grinders | 64,000 | 32,000 | 30,000 | 0 | 30,000 | 60,000 |
| Grinders - Remanufactured | 0 | 0 | 0 | 14,500 | 0 | 14,500 |
| Tenoners - Double End | 145,000 | 145,000 | 0 | 525,000 | 294,000 | 525,000 |
| Tenoners - Single End | 360,000 | 240,000 | 0 | 0 | 92,000 | 92,000 |
| Tenoners - Single End - Remanufactured | 0 | 0 | 0 | 54,000 | 0 | 54,000 |
| Other | 13,000 | 6,500 | 0 | 0 | 0 | 0 |
|  | 2,138,000 | 1,199,500 | 822,700 | 856,400 | 1,336,000 | 2,168,200 |
| Diehl Parts | 1,680,000 | 840,000 | 798,000 | 125,100 | 810,000 | 1,608,000 |
| Diehl Recovered Parts | 96,000 | 48,000 | 84,000 | 0 | 70,000 | 154,000 |
| CAMCO Parts | 600,000 | 300,000 | 196,000 | 94,900 | 190,000 | 386,000 |
| Tooling | 78,000 | 39,000 | 39,400 | 11,500 | 35,000 | 74,400 |
| Service Revenue | 36,000 | 18,000 | 29,500 | 0 | 25,000 | 54,400 |
| GRAND TOTAL | 4,628,000 | 2,444,500 | 1,969,600 | 1,087,900 | 2,466,000 | 4,445,000 |

D 0146

## Schedule No. 8

Knauf Dyken D-50's
*Preliminary* Projected Cost Pricing Analysis
Based on WAMCO 6872 & 6879 (1999)
June 21, 2005

### Original Basic Design

| | |
|---|---|
| $57,550 | Material    (was 40,529 x 1.42) |
| 56,000 | Assembly Labor   700 hours @ 80  (was 628 hours x 1.1) |
| 50,220 | Machine Shop Labor 620 @ 81 (was 560 hours x 1.1) |
| 163,770 | Projected FBC, if made as was        (was $93K) |

### Additional Items Required

| | | |
|---|---|---|
| | $5,500 | For servo proportional valve to handle compression in lieu of cam operated manual valve. |
| | 3,500 | For PLC to direst electrical circuit. |
| 29,000 | 20,000 | For 30 HP hydraulic drive unit, heat exchanger, etc. |
| $192,770 | | |

### Add for engineering staff addition

| | |
|---|---|
| 20,000 | Projected cost for each of four machines |
| $212,700 | Project FBC w/engineering |

| | |
|---|---|
| 122,500 | Desired Margin (37.5%) |
| $327,230 | Sell price for basic machine |

### Optional Equipment

| | | | |
|---|---|---|---|
| 26,900 | Core Inserting System: Material | 3,200 | |
| | A/Labor | 6,400 | |
| | MS/Labor | 6,480 | 16,080 |
| 13,725 | Taping Over-wrapper with mounting units est. FBC @ $8K | | |

**PRELIMINARY** - based on "seat of the pants pricing"

So pricing comes in at:  Two machines at 327,230 + 2(13,725)= $354,680

Two at 327,230 + 2(13,725) + 26,900= $381,580

Four machines total        $1,472,520

Projected 5200 manufacturing labor hours of absorption.  During 2004, we generated 13,598.  This order alone represents 38% of 2004's total labor.

D 0147

Notes

Notes

D 0149

$80$

EXHIBIT

C 80

Date:        July 11, 2006
To:          Jay Ehrlich     cc: P. Ehrlich, J. Loukidis, M. Ruffner
From:        Bob Rozman
RE:          *Situation at Diehl – Your Note to Mike of July 7, 2006*

I read your note to Mike, and with all due respect, I don't see where you're coming from when you suggest that the next three months should be profitable and positive cash flow?

We showed a profit in June because we reversed all ($76,850) of our accruals and did not accrue for building repair, R&D or a mgmt bonus, which we haven't done since March anyway and reduced office salaries by $4250 every two weeks. So no matter how you look at it, scratch, we lost $13,170, and that was with over $35K in recovered parts, which has a 99% margin!

At this moment,
- We have about $135K in outstanding A/P
- There's about $35K more coming on the Dyken alone
- We owe the bank  $232K
- There's a shop payroll four times a month at $10K a pop
- There's two office payrolls at $40K each
- Half of the Dyken payment ($243K) is already received

So, to suggest that July will be both profitable and positive in cash flow is quite questionable. We entered less than $10K in new parts orders during the first week of July and that's on top of being down about $100K in Diehl parts orders YTD. We've shipped a splicer and will ship another SL30 we got yesterday…the MR90 is nip and tuck for July. So if we don't get a good parts base, there's nothing to justify saying that July will be profitable. Where would the profit come from?  The NC tenoner and rip saw will ship in August and there should be reasonable margin on those machines, but if we don't get any parts that month, it will take that to make up for both July and August. Diehl needs $225-$250K in parts a month and 3-1/2 machines to make things work, it's as simple as that. Halfway through the third week of every month, ever since I've been here and before that, we begin focusing

on service parts orders. This company, and any viable machinery company, is alive only because we (it) can still sell parts…and it's the same reason WAMCO could not sustain itself. I'm not trying to grandstand and make things appear dome & gloom, better or worse than they really are; I'm just telling you from realistic experience that unless those parts and machines happen consistently, we don't make money and it doesn't matter how much cash you think you have or can save, the operation doesn't make it.

On a shipment or cash collection schedule, you don't see the labor inefficiency, the outright mistakes and other expenses that are there. Without a consistent production schedule, the start-stop, "work on this-no work on that" situation that develops (as we've been experiencing) makes machinery cost more, discourages the people and creates an all around negative environment. Manufacturing machinery is not like a throttling a valve; you can't just turn it on and off and expect things to just pick up where you left off!

What you have to understand is that Diehl can't sustain shipping a Dyken one month, a Challoner two months later and possibly two Dykens next year if there's not a solid parts and machine base in between. We can't produce enough labor to absorb the manufacturing burden. We went for nearly 10 weeks without a SL rip saw order and that just about demoralized the entire company!

Your interest in the company is short term and to extract as much return as you can during that remaining time frame. Mine is the opposite. You think we have the next two Dykens in the bag; I don't. We have a run off of a completely new machine with people who have never built the machine and don't know what problems they will encounter. The project engineer who bought the machines, Warren Beglin, retired last month and remains on a "consultant basis" to insure the installation of the first machine and that's unsettling because he's not really there defending his decision. Will we complete the project? Yes, but the machine could ship as later as October, and will be tying up 55% of our assembly floor. And every week its here, the cost goes up.

So what do I plan for? At this moment, we have two other rip saws to plan for in the last five months of the year. If we maintain our monthly YTD average of $162K in repair parts, even if we sell two more Dykens, that won't cut it. We have to sell about 20 rip saws to catch up with last year's

results because at this point, we're at 56% of last year's YTD rip saw shipments. There is plenty to be concerned about.

If Atlanta doesn't bring some solid rip saw/splicer business, what is going to make Diehl profitable?  Cutting salaries is a difficult decision, and there are a lot of those when you deal with the day-to-day operation of this company. I'm responsible for making the company profitable and insuring it's future. Therefore, at this point, Diehl will take a conservative approach and the rent will be reduced to $500, the funds paid to WAMCO will be $9K.

Finally, with respect to my offer to purchase the stock of Jim and Jay, made last week...I remove any contingency about waiting for the show's results to confirm that offer. It's not that anything better has happened, or that I'm reversing the opinion I've just presented. It's just that I'm committing to the reality that I am resigned to be here no matter the outcome. The situation we're in right now can't continue. Diehl has to either get very very lucky or get smaller. Under the more likely alternative, we have to make the company solvent or the entire thing tips over.

D 0152

81

Andrew Schwartz

n:      Addisonst@aol.com

at:     Thursday, December 14, 2006 9:23 AM

To:     rfr@diehlmachines.com; gary.fredrickson@diehlmachines.com; mike.ruffner@diehlmachines.com; jan.zolman@diehlmachines.com; dick.meldrum@diehlmachines.com

Cc:     Andrew Schwartz

Subject: Re: Fw: Special Shareholders Meeting, Diehl Woodworking Machinery

Gentleman:

I will attend the meeting by telephonic conference.

—————————————

In light of the problems suggested about Diehl's projected loss, I am truly astounded by Mr. Rozman's proposal that Diehl should now purchase a minority interest in Wamco from Mr. Rozman.

First, I am unaware of any documentation showing that Mr. Rozman owns any interest in Wamco or its stock.

Second, even if Mr. Rozman can prove that he owns a transferable interest in any Wamco stock, I would remind all of you that Diehl is currently engaged in litigation against Wamco. If that lawsuit proceeds, Diehl would have an inherent conflict of interest. I would also wonder if such a purchase was made by Mr. Rozman and it was such a great opportunity for Diehl, why he did not offer the opportunity to Diehl in the first place.

Third, if the Diehl lawsuit against Wamco succeeds, the value of the Wamco shares would be reduced.

In order to prepare for this meeting, I will need copies of recent financial statements as well as weekly reports, information about any share transfers that have occurred and documentation regarding transfer of Wabash River Real Estate to an officer of Diehl as well as the lease, corporate minutes of any shareholder and directors meetings that have taken place since July 2006, legal fees broken down so that I may see what Messrs. Boxberger and Perlman have billed to Diehl as opposed to shareholders.

As this is a Diehl Shareholders meeting, I will not discuss any litigation involving Wamco. I also will not discuss any claims I have personally versus the management team of Diehl. Those matters are for the attorneys to handle.

I would further note that none of these issues call for a Shareholders Meeting as there are no resolutions being voted upon and any resolutions would require new notice. If any shareholder resolutions are forthcoming, then I shall not attend this meeting via telephone and will instead wait for notice of a new meeting.

D 0176

EXHIBIT
C81
tabbies

STATE OF INDIANA    )
                     ) SS:
COUNTY OF WABASH   )

IN THE WABASH CIRCUIT COURT

CAUSE NO: 85C01-0608-PL-380

DIEHL WOODWORKING MACHINERY, INC.,  )
     *Plaintiff,*              )
                     )
     v.                  )
                     )
WISCONSIN AUTOMATED MACHINERY  )
CORP., JAY EHRLICH and DIMITRIS  )
LOUKIDIS,                )
     *Defendants.*         )

## PLAINTIFF DIEHL WOODWORKING MACHINERY, INC.'S ANSWERS TO JAY EHRLICH'S FIRST SET OF INTERROGATORIES

Comes now Plaintiff, Diehl Woodworking Machinery, Inc., by its attorneys, Carson Boxberger LLP, pursuant to Rule 33 of the Indiana Rules of Trial Procedure, and respectfully answers the following Interrogatories propounded by Defendant, Jay Ehrlich, as follows:

1.    *Identify* the *person*(s) answering these interrogatories and, if different, the *person*(s) verifying or certifying the accuracy of these interrogatories.

*ANSWER:*    Robert F. Rozman
              President, Diehl Machines

2.    *Identify* all *persons* with knowledge of the allegations in *Diehl*'s complaint.

*ANSWER:*    Robert F. Rozman
              Gary Frederickson
              Richard Meldrum
              Jan Zolman
              Mike Ruffner
              Paul Ehrlich

3.    *Identify* each *person* whom *Diehl* expects to call as an expert witness at trial. For each expert witness *identified*, state the subject matter on which the expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

EXHIBIT
C 82

*ANSWER:*    Plaintiff has not retained any expert at this time.    However, Plaintiff will supplement this Answer in accordance with the Court's Scheduling Order and Fed. Rule of Civil Procedure, Rule 26.

4.    *Identify* all *communications* between *Diehl* and any other *person*(s) *relating to Ehrlich.*

*ANSWER:*    Objection. Plaintiff asserts this interrogatory as overly broad and burdensome and is not reasonably calculated to lead to the discovery of admissible evidence.  In addition, Plaintiff asserts that there may be communications responsive to this interrogatory that are not discoverable due to attorney-client privilege.  Notwithstanding, *see* response to Request for Production No. 9.

5.    *Identify* all *communications* between *Diehl* and any other *person*(s) *relating to WAMCO.*  In addition, Plaintiff asserts that there may be communications responsive to this Interrogatory that are not discoverable due to attorney-client privilege.

*ANSWER:*    Objection. Plaintiff asserts this interrogatory as overly broad and burdensome and is not reasonably calculated to lead to the discovery of admissible evidence.  In addition, Plaintiff asserts that there may be communications responsive to this interrogatory that are not discoverable due to attorney-client privilege.

6.    *Identify* all *communications* between *Diehl* and any other *person*(s) *relating to Loukidis.*

*ANSWER:*    Objection. Plaintiff asserts this interrogatory as overly broad and burdensome and is not reasonably calculated to lead to the discovery of admissible evidence.  In addition, Plaintiff asserts that there may be communications responsive to this interrogatory that are not discoverable due to attorney-client privilege.

7.    *Identify* all *documents relating to Ehrlich.*

*ANSWER:*    *See* Response to Request for Production No. 9.

8.    *Identify* all *documents relating to WAMCO.*

*ANSWER:*    *See* Response to Request for Production No. 11.

9.    *Identify* all *documents relating to Loukidis.*

*ANSWER:*    *See* Response to Request for Production No. 13.

10.    Has *Diehl* agreed to release, relinquish, refrain from suing, or refrain from enforcing any claims that *Diehl* has asserted against *Loukidis* in the *lawsuit*?

*ANSWER:*    No.

11.    How did *Ehrlich* and/or *Loukidis* breach their fiduciary duties as *Diehl* shareholders, as alleged in ¶6 of *your* complaint? *Describe* all facts in sufficient detail to provide this explanation.

*ANSWER:*    Ehrlich/Loukidis/WAMCO, as the owners of 35.5% of Diehl stock, as directors of the company, and as officers of the company could clearly see the deteriorating business conditions prevailing in the market place and the resulting impact on Diehl. Furthermore, they experienced the same conditions at WAMCO during its operation. They were privileged to the receipt of financial documents, privileged to letters sent by Robert Rozman outlining the serious business situation and rejected the validity of the prevailing circumstance. In light of the prevailing market conditions fully known to Ehrlich/Loukidis/WAMCO, and in light of no management or consulting services being performed or requested by Diehl, Diehl believes it unconscionable for Ehrlich/Loukidis/WAMCO, given their position with and knowledge of Diehl and the DIEHL/WAMCO relationship, to continue to demand payment of such fee, to their benefit and to the detriment of Diehl.

12.    Has *Rozman* acquired all of *Loukidis'* interests in *WAMCO* and *Diehl*?

*ANSWER:*    Yes.

13.    If *your* answer to the preceding interrogatory is affirmative, *identify* all *communications* and *documents relating to* the transactions by which *Rozman* acquired *Loukidis'* interests in *WAMCO* and *Diehl*.

*ANSWER:*    *See* Response to Request for Production No. 12.

14.    Since acquiring all of *Loukidis'* interests in *WAMCO, describe* the actions that *Rozman* has taken to rectify *Loukidis'* alleged breach of fiduciary duty as a *Diehl* shareholder.

*ANSWER:*    Rozman does not control the actions of WAMCO and is unable to rectify the breach of fiduciary duty.

15.    What did *WAMCO* receive from *Diehl* in return for *WAMCO's* execution of the *Memorandum of Agreement*?

*ANSWER:*    A promise from Diehl to pay WAMCO for management consulting service.

16.    *Describe* all payments by *Diehl* to *WAMCO* since the execution of the *Memorandum of Agreement.*

*ANSWER:*    Diehl has paid WAMCO $161,500 from August 2005 through July 2006.

17.    What "management consulting and services" was *WAMCO* supposed to provide to *Diehl* pursuant to the *Memorandum of Agreement?*

*ANSWER:*    Management Consulting and Services could have included:

a)    To understand the condition of Diehl's market.
b)    To understand how a manufacturing firm operates.
c)    To have initiated a request for a meeting to sit down and discuss the demanding issues facing the firm.
d)    To have visited the Diehl plant, with the purpose of observing the situation, and make positive recommendations to benefit the firm.
e)    To have created some constructive document reflecting its' observations regarding the Diehl/WAMCO circumstance and evaluated the situation.
f)    To have prepare some formal report reflecting "management recommendations."
g)    To examine the marketplace and make recommendations regarding the operation of the business.
h)    To understand how a special manufacturing firm operates with a standard cost system.
i)    To generate a viable acquisition candidate.

However, WAMCO provided no such services at any time and Diehl is not aware of any such service WAMCO could have adequately provided.

18.    Has *Diehl* requested any services from *WAMCO* since the execution of the *Memorandum of Agreement?*

*ANSWER:*    No.

19.    If *your* answer to the preceding interrogatory is affirmative, *identify* all *communications* between *Diehl* and *WAMCO* by which *Diehl* requested such services from *WAMCO.*

*ANSWER:*    Not applicable.

4

20.    Has *WAMCO* refused to provide any services to *Diehl* since the execution of the *Memorandum of Agreement*?

*ANSWER:*    WAMCO has provided no service to Diehl at any time.  It is apparent to Diehl that WAMCO is incapable of providing services to Diehl.  Therefore, no services have been requested by Diehl.

21.    If *your* answer to the preceding interrogatory is affirmative, *identify* all *communications* between *WAMCO* and *Diehl* in which *WAMCO* refused to provide the services requested by *Diehl*.

*ANSWER:*    Not applicable.

22.    *Describe* the "business conditions" which require the elimination of the management fee, as alleged in ¶9 of *your* complaint and ¶9 of *your* amended complaint, and *identify* any *documents* containing information *relating to your* answer to this interrogatory.

*ANSWER:*    While Diehl is capable of paying its creditors, the declining market for Diehl's products has required a closer inspection of Diehl's expenses.  See Response to Request for Production No. 6.

23.    *Identify* all *communications* from August 2005 to the present between *WAMCO* and *Diehl* by which *Diehl* notified *WAMCO* about any change in *Diehl's* business conditions.

*ANSWER:*    As a Diehl director, officer and principle shareholder of Diehl during the period of August 2005 to July 2006, Ehrlich/WAMCO was aware of the deterioration of markets served by Diehl.  As such, we refer Ehrlich/WAMCO to the weekly, monthly and annual statements provided to him in his positions with Diehl, regarding the trend of these conditions, along with the annual summary of financial information provided in Response to Request for Production Nos. 6 and 27.

24.    *Describe* all facts in support of the allegation in ¶11 of *your* complaint about "the failure of consideration" under the *Memorandum of Agreement*.

*ANSWER:*    Consideration for the Memorandum of Agreement was WAMCO's promise to provide management service in exchange for a fee.  The fee has been provided, yet no services have been provided, nor is WAMCO capable of providing such services.

25.    Do *you* contend that the *Memorandum of Agreement* permits *Diehl* to eliminate the management fee without the consent of *WAMCO*?

*ANSWER:*   No. However, Diehl contends there has never been consideration for the management fee and asks this Court to terminate Diehl's obligation to pay such.

26.   *Identify* all current *Diehl* shareholders, as well as their respective ownership interests in *Diehl.*

*ANSWER:*
| | |
|---|---|
| Robert F. Rozman | 69.875% |
| Joy Ehrlich | 17.5% |
| Michael Ruffner | 4.25% |
| Gary Fredrickson | 2.5% |
| Richard Meldrum | 2.5% |
| Jan Zolman | 3.375% |

27.   *Describe* the damages *Diehl* has allegedly sustained damages as a result of the actions by *Ehrlich* and *Loukidis.*

*ANSWER:*   Diehl has paid WAMCO management fees of $62,500 during 2005 and a similar unnecessary expense of $99,000.00 during 2006, for which no services have been provided Diehl has also incurred legal expenses in excess of $10,000 related to recovery of these funds, and lost management time due to the necessity to address this dispute.

28.   *Identify* each *Diehl* director and officer who voted to authorize the filing of the *lawsuit* and *identify* all *documents* and *communications relating to* that decision.

*ANSWER:*   Every officer and director with the exception of J. Ehrlich and Dimitris Loukidis voted to authorize the filing of the legal action made the subject of this complaint.

The relevant documents memorializing these actions are reflected in the Minutes of the Diehl Woodworking Machinery Special Shareholders Meeting and subsequent Board of Directors Meeting held on September 19, 2006. See Response to Request for Production No. 47.

29.   *Identify* each *Diehl* director and officer who voted to authorize the filing of the *lawsuit* and identify all *documents relating to* that decision.

*ANSWER:*   Objection. Plaintiff asserts this interrogatory as cumulative to Interrogatory No. 28.

30.   *Identify* all directors and officers of *Diehl.*

*ANSWER:*   Robert Rozman, Chairman of the Board, President of Diehl Machines
Michael Ruffner, Board Member, Treasurer, Secretary
Gary Fredrickson, Board Member

31.    With respect to each *Diehl* director and officer identified in the answer to the preceding interrogatory, state the total amount of compensation (salary, bonus and otherwise) paid to him/her for the years 2005, 2006 and 2007 (annualized for 2007).

| *ANSWER:* | 2005 | 2006 | 2007 |
|---|---|---|---|
| Robert Rozman | $146K | $136K | $146K |
| Michael Ruffner | 94K | 81K | 30K |
| Gary Fredrickson | 99K | 84K | 84K |

32.    Has *Diehl* paid any legal fees to *Carson Boxberger* for any legal representation by *Carson Boxberger* on behalf of *Rozman*?

*ANSWER:*    Objection. Plaintiff asserts this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. In addition, Plaintiff asserts that there may be communications responsive to this interrogatory that are not discoverable due to attorney-client privilege.

33.    If *your* answer to the preceding interrogatory is affirmative, state the date and amount of each such payment, and *identify* all *communications* and *documents relating to* such payment.

*ANSWER:*    Objection. Plaintiff asserts this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. In addition, Plaintiff asserts that there may be communications responsive to this interrogatory that are not discoverable due to attorney-client privilege.

34.    Has *Diehl* promised to pay any legal fees to *Carson Boxberger* for any legal representation by *Carson Boxberger* on behalf of *Rozman*?

*ANSWER:*    Objection. Plaintiff asserts this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence. In addition, Plaintiff asserts that there may be communications responsive to this interrogatory that are not discoverable due to attorney-client privilege.

35.    If *your* answer to the preceding interrogatory is affirmative, *identify* all *communications* and *documents relating to* each such promise.

*ANSWER:*    Objection.  Plaintiff asserts this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.  In addition, Plaintiff asserts that there may be communications responsive to this interrogatory that are not discoverable due to attorney-client privilege.

36.    *Identify* all *communications* and *documents relating to* all agreements between *WAMCO* and *Diehl* to reduce any management fees payable by *Diehl* to *WAMCO*, and *describe* the terms of such agreements.

*ANSWER:*    *See* Response to Request for Production No. 27.

37.    *Identify* the individuals who acted on behalf of *WAMCO* and *Diehl relating to* the amount of the reduction of the management fee to be paid by *Diehl*.

*ANSWER:*    Ehrlich (WAMCO) and Rozman (Diehl).

38.    *Identify* all *communications* between Paul Ehrlich and *Rozman relating to* the reduction of the management fee between *WAMCO* and *Diehl*.

*ANSWER:*    *See* Response to Request for Production No. 27.

39.    *Identify* all *documents* and *communications relating to* the agreement *described* in *your* answer to the preceding interrogatory.

*ANSWER:*    Not applicable.

40.    *Identify* any instances of assertion of product liability claims against *WAMCO*, or against *Diehl* arising out of the *Asset Purchase Agreement*.

*ANSWER:*    Plaintiff is not aware of any such claims.

41.    *Identify* all *documents* and *communications relating to* contractual obligations of *WAMCO* to *Diehl*.

*ANSWER:*    The Asset Purchase Agreement and Memorandum of Agreement.

42.    *Identify* all waivers granted by *Diehl* to *WAMCO relating to* contractual obligations owed by *WAMCO* to *Diehl*.

*ANSWER:*    Plaintiff is not aware of any such waivers.

43.    *Identify* all *communications* with Michael Moss *relating to* the *lawsuit*, the *Memorandum of Agreement* and/or the *Asset Purchase Agreement*.

*ANSWER:*    Plaintiff is not aware of any such communications.

44.    *Identify* all *communications* with Paul Ehrlich *relating to* the *lawsuit*, the *Memorandum of Agreement* and/or the *Asset Purchase Agreement*.

*ANSWER:*    *See* Response to Request for Production No. 27.

45.    *Identify* all *communications* with Michael Ruffner *relating to* the *lawsuit*, the *Memorandum of Agreement* and/or the *Asset Purchase Agreement*.

*ANSWER:*    Plaintiff acknowledges Rozman and Ruffner had several conversations relating to either this lawsuit, the Memorandum of Agreement or Asset Purchase Agreement. However, no written communications or notes of these conversations exist.

46.    *Identify* all *communications* with Gregory Kotsonis *relating to* the *lawsuit*, the *Memorandum of Agreement* and/or the *Asset Purchase Agreement*.

*ANSWER:*    Plaintiff is not aware of any such communications.

47.    *Identify* all *communications* with Carson Boxberger *relating to* the *lawsuit*, the *Memorandum of Agreement* and/or the *Asset Purchase Agreement*.

*ANSWER:*    Objection. Plaintiff asserts this interrogatory, even on its face, requests only that which is not discoverable due to attorney-client privilege and attorney work product. As such no privilege log will be produced.

48.    *Identify* all *communications* with Bernard Schlifke *relating to* the *lawsuit*, the *Memorandum of Agreement* and/or the *Asset Purchase Agreement*.

*ANSWER:*    Plaintiff is not aware of any such communications.

49.    Have there been any changes in *Diehl*'s financial condition since September 13, 2002 which are materially adverse to *Diehl*?

*ANSWER:*    Yes. While Diehl is capable of paying its creditors, the declining market for Diehl's products has required a closer inspection of Diehl's expenses. See Response to Request for Production No. 6.

50.    If *your* answer to the preceding interrogatory is affirmative, *describe* each such change in *Diehl*'s financial condition.

*ANSWER:*    *See* Response to Request for Production No. 6.

51.    Why did *Diehl* execute the *Memorandum of Agreement*?

*ANSWER:*    To establish the first contractual and legitimate basis for the payment of management fees by Diehl to WAMCO. Up to the execution of the Memorandum of Agreement and even after, management fees were being paid solely because the majority of Diehl shareholders, who concurrently held the majority interest of WAMCO stock, willed that it be that way.

52.    Why did *Diehl* execute the *Asset Purchase Agreement*?

*ANSWER:*    It was executed in its format (a non-arms length transaction) because WAMCO shareholders held the controlling interest in Diehl Machines. While Diehl hoped it to be in its best interest, Diehl was not capable of negotiating the agreement independent of the WAMCO's shareholders best interests.

53.    *Describe* all facts and on which *you* base *your* affirmative defense of unconscionability.

*ANSWER:*    WAMCO was abundantly aware of the potential conflict of interest by their concurrent ownership of the majority of Diehl Machines stock, yet representing them to be two independent firms. During any and all of the transactions and relations between the two firms, WAMCO had a responsibility to treat Diehl equitably because Diehl could not take any independent actions to alter or reject directives placed upon it by the synonymous WAMCO/DIEHL shareholders, who owned controlling interest in both firms. WAMCO violated that relationship on several occasions, most egregiously with continual demand for payment of a management fee when Diehl obtained no tangible or intangible benefit for the fees paid. The sole benefit of the management fee was to WAMCO, at the expense of Diehl, in a most unconscionable act.

I solemnly affirm, under the penalties of perjury, that I have read the foregoing Answers to Interrogatories and that they are true and correct.

DATED: _MAY 24, 2007_

Diehl Woodworking Machines, Inc.

By: _Robert F. Rozman_

Robert F. Rozman,
Diehl Woodworking
Machines, Inc., President

Respectfully submitted,

CARSON BOXBERGER LLP

By _____

       Larry L. Barnard (11904-49)
       Bruce O. Boxberger (3535-02)
       Attorneys for Plaintiff
       Diehl Woodworking Machinery

1400 One Summit Square
Fort Wayne, Indiana 46802
Telephone:  260.423.9411
F:\diehl Woodworking Machinery 19,554\Answers to Interrogatories (Diehl).DOC

## CERTIFICATE OF SERVICE

    This will certify that on this 24 day of May, 2007, a true and complete copy of the above and foregoing document was mailed to Gregory A. Kotsonis, Esq., 411 East Wisconsin Avenue, #700, Milwaukee, Wisconsin, 53202 and Steven Hearn, ESQ., 212 N. Buffalo St., P.O. Box 770, Warsaw, Indiana 46581-0770

_____
       (Larry L. Barnard)

STATE OF INDIANA          )            IN THE WABASH CIRCUIT COURT
                          ) SS:
COUNTY OF WABASH          )            CAUSE NO:  85C01-0608-PL-360

DIEHL WOODWORKING         )
MACHINERY, INC.           )
                          )
            Plaintiff,    )
                          )
     -vs-                 )
                          )
WISCONSIN AUTOMATED       )
MACHINERY CORP., JAY      )
EHRLICH and DIMITRIS      )
LOUKIDIS                  )
                          )
            Defendants.   )

FILED

AUG 02 2006

~~signature~~
WABASH CIRCUIT SUPERIOR COURT CLERK

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

### COUNT I

Comes now the plaintiff, Diehl Woodworking Machinery, Inc., (hereinafter "Diehl"), by counsel, and for its first cause of action against defendant, Wisconsin Automated Machinery Corp. (hereinafter "WAMCO") alleges and says as follows:

1.    Diehl is an Indiana corporation with its principal place of business in Wabash County, Indiana.

2.    WAMCO is a Wisconsin corporation.

3.    Defendant, Jay Ehrlich, is a resident of Chicago, Illinois.

4.    Defendant, Dimitris Loukidis, is a resident of Racine, Wisconsin.

5.    In August, 2005, Diehl and WAMCO entered into a Memorandum of Agreement ("Agreement"). A true and exact copy of the Agreement is attached hereto, made a part hereof, and marked as Exhibit "A".



EXHIBIT

C 83

6.    The Agreement provides, in pertinent part, that the parties intended that WAMCO should provide management consulting services to Diehl and Diehl pay a monthly management fee therefore.

7.    The Agreement further provides that "from time to time said management fee might be reconsidered and reduced, increased, eliminated and/or reinstated by mutual agreement of the parties as Diehl's business conditions require, and WAMCO shall only be responsible to provide consulting services that are consistent with the then current level of such management fee."

8.    From the time of the execution of the Agreement, WAMCO has not provided to Diehl any management consulting and services.

9.    Diehl's business conditions require the elimination of the management fee.

10.    WAMCO has refused to eliminate the fee despite requests to do so by the management of Diehl.

11.    Diehl contends that its obligation to pay the monthly management fee to WAMCO should be eliminated as a result of the failure of consideration and pursuant to the provisions of the Agreement.

12.    An actual dispute exists between the parties as to whether Diehl's obligation to pay the monthly management fee pursuant to the terms of the Agreement should be terminated.

WHEREFORE, plaintiff, Diehl Woodworking Machinery, Inc., prays that the Court enter a judgment declaring the rights of the parties under the Agreement, and declaring that Diehl has no obligation to pay the monthly management fee to WAMCO; for the cost of this action; and for all other just and proper relief in the premises.

2

## COUNT II

Comes now the plaintiff, Diehl Woodworking Machinery, Inc., by counsel, and for its second cause of action against defendants, Jay Ehrlich and Dimitris Loukidis, alleges and says as follows:

1.     Diehl incorporates herein by this reference the same as if set forth in full the allegations of rhetorical Paragraphs 1 through 11 of Count I of its Complaint.

2.     Defendants, Jay Ehrlich and Dimitris Loukidis, are shareholders and directors of Diehl, which is a closely-held Indiana corporation.

3.     Defendant, Jay Ehrlich, is the President of WAMCO and a shareholder in WAMCO.

4.     Defendant, Dimitris Loukidis, is a shareholder in WAMCO.

5.     Defendants, Jay Ehrlich and Dimitris Loukidis, own a controlling interest of the shares of WAMCO.

6.     Defendants, Jay Ehrlich and Dimitris Loukidis, as shareholders of Diehl, have breached their fiduciary duties owed to Diehl by refusing to permit the termination of the monthly management fee paid by Diehl to WAMCO, despite the fact that WAMCO provides no management consulting and services to Diehl.

7.     Diehl has sustained damages as a result of the breach of fiduciary duties by defendants, Jay Ehrlich and Dimitris Loukidis.

WHEREFORE, plaintiff, Diehl Woodworking Machinery, Inc., prays that the Court enter a judgment in its favor and against defendants, Jay Ehrlich and Dimitris Loukidis, in an amount sufficient to compensate Diehl for the damages sustained as a

3

result of the breach of fiduciary duties by the defendants; for the cost of this action; and for all other just and proper relief in the premises.

CARSON BOXBERGER LLP

By _____

Larry L. Barnard (11904-49)
Bruce O. Boxberger (3535-02)
Attorneys for Plaintiff
Diehl Woodworking Machinery

1400 One Summit Square
Fort Wayne, Indiana 46802
Telephone: (260) 423-9411
F:\Diehl Woodworking Machinery 19,554\Complaint.doc

4

## MEMORANDUM OF AGREEMENT

THIS MEMORANDUM OF AGREEMENT (hereinafter called "Agreement") is made and entered into as of the _____ day of August. 2005. by and between WISCONSIN AUTOMATED MACHINERY CORP., a Wisconsin corporation (herein called "WAM"), and DIEHL WOODWORKING MACHINERY, INC., an Indiana corporation (herein called "Diehl");

### WITNESSETH:

WHEREAS, Diehl has previously paid. and is currently paying. to WAM or its affiliates a monthly management fee for management consulting and services. which fee has varied from time to time upon the mutual agreement of the parties: and

WHEREAS, the parties intend that WAM shall continue to provide such management consulting and services to Diehl. and Diehl shall continue to pay a monthly management fee therefor as business conditions permit and in accordance with the terms and conditions herein set forth:

NOW, THEREFORE, in consideration of the premises hereof (which the parties hereby incorporate and make a part of their agreements herein) and the mutual agreements hereinafter set forth, it is agreed as follows:

1.    Wam hereby waives all unpaid and accrued management fees. if any. due from Diehl prior to July 31, 2005. WAM shall continue to provide to Diehl from time to time management consulting and services as reasonably requested by Diehl and, effective as of July 31. 2005, Diehl shall pay to WAM. as consideration for such management consulting and services provided, a management fee of $12,500 per month (increased from the immediately preceding fee of $10,000 per month) through December 31, 2005. and $15,000 per month commencing January 31. 2006. through December 31, 2008; provided however that (a) such mutual commitments to provide such services and to pay such management fee shall terminate as of January 1, 2009. unless extended by the mutual agreement of the parties, and (b)from time to time the said management fee might be



reconsidered and reduced, increased, eliminated and or reinstated by annual agreement of the parties, as Diehl's business conditions requires, and WAM shall only be responsible to provide consulting and services at a level consistent with the then current level of such management fee.

2. The parties shall cooperate and use reasonable efforts to inform each other concerning any change in such business conditions and contemplated changes in the management fee level and commensurate level of management consulting and services to be provided.

IN WITNESS WHEREOF, the parties hereto have executed this Consulting Agreement as of the day and year first above written.

WISCONSIN AUTOMATED MACHINERY CORP.

By _____

Title _____

DIEHL WOODWORKING MACHINERY INC.

By _____

Title _____

84

STATE OF INDIANA ) IN THE WABASH CIRCUIT COURT
                   ) SS:
COUNTY OF WABASH ) CAUSE NO: 85C01-0608-PL-380

| | |
|---|---|
| DIEHL WOODWORKING<br>MACHINERY, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) |
| WISCONSIN AUTOMATED<br>MACHINERY CORP., JAY<br>EHRLICH and DIMITRIS<br>LOUKIDIS | ) |
| | ) |
| Defendants. | ) |

## AMENDED COMPLAINT FOR
## DECLARATORY JUDGMENT AND DAMAGES

### COUNT I

Comes now the plaintiff, Diehl Woodworking Machinery, Inc., (hereinafter "Diehl"), by counsel, and for its first cause of action against defendant, Wisconsin Automated Machinery Corp. (hereinafter "WAMCO") alleges and says as follows:

1.     Diehl is an Indiana corporation with its principal place of business in Wabash County, Indiana.

2.     WAMCO is a Wisconsin corporation.

3.     Defendant, Jay Ehrlich, is a resident of Chicago, Illinois.

4.     Defendant, Dimitris Loukidis, is a resident of Racine, Wisconsin.

5.     In August, 2005, Diehl and WAMCO entered into a Memorandum of Agreement ("Agreement"). A true and exact copy of the Agreement is attached hereto, made a part hereof, and marked as Exhibit "A".



EXHIBIT

C84

6.     The Agreement provides, in pertinent part, that the parties intended that WAMCO should provide management consulting services to Diehl and Diehl pay a monthly management fee therefore.

7.     The Agreement further provides that "from time to time said management fee might be reconsidered and reduced, increased, eliminated and/or reinstated by mutual agreement of the parties as Diehl's business conditions require, and WAMCO shall only be responsible to provide consulting services that are consistent with the then current level of such management fee."

8.     From the time of the execution of the Agreement, WAMCO has not provided to Diehl any management consulting and services.

9.     Diehl's business conditions require the elimination of the management fee.

10.    WAMCO has refused to eliminate the fee despite requests to do so by the management of Diehl.

11.    Diehl contends that its obligation to pay the monthly management fee to WAMCO should be eliminated as a result of the failure of consideration and pursuant to the provisions of the Agreement.

12.    WAMCO is no longer an operating entity and instead, serves only as a conduit for the receipt of payments from Diehl in favor of some of its shareholders, including, Jay Ehrlich.

13.    An actual dispute exists between the parties as to whether Diehl's obligation to pay the monthly management fee pursuant to the terms of the Agreement should be terminated.

WHEREFORE, plaintiff, Diehl Woodworking Machinery, Inc., prays that the Court enter a judgment declaring the rights of the parties under the Agreement, and declaring that Diehl has no obligation to pay the monthly management fee to WAMCO; for the cost of this action; and for all other just and proper relief in the premises.

## COUNT II

Comes now the plaintiff, Diehl Woodworking Machinery, Inc., by counsel, and for its second cause of action against defendants, Jay Ehrlich and Dimitris Loukidis, alleges and says as follows:

1. Diehl incorporates herein by this reference the same as if set forth in full the allegations of rhetorical Paragraphs 1 through 11 of Count I of its Complaint.

2. Defendants, Jay Ehrlich and Dimitris Loukidis, were shareholders and directors of Diehl, which is a closely-held Indiana corporation.

3. Defendant, Jay Ehrlich, is the President of WAMCO and a shareholder in WAMCO.

4. Defendant, Dimitris Loukidis, was a shareholder in WAMCO.

5. Defendants, Jay Ehrlich and Dimitris Loukidis, owned a controlling interest of the shares of WAMCO.

6. Defendants, Jay Ehrlich and Dimitris Loukidis, as shareholders of Diehl, breached their fiduciary duties owed to Diehl by refusing to permit the termination of the monthly management fee paid by Diehl to WAMCO, despite the fact that WAMCO never provided management consulting and services to Diehl.

7.    Diehl has sustained damages in the sum of $174,000.00 in management fees paid to WAMCO since the execution of the Memorandum of Agreement despite the fact that WAMCO has never provided management and consulting services to Diehl.

WHEREFORE, plaintiff, Diehl Woodworking Machinery, Inc., prays that the Court enter a judgment in its favor and against defendants, Jay Ehrlich and Dimitris Loukidis, in an amount sufficient to compensate Diehl for the damages sustained as a result of the breach of fiduciary duties by the defendants; for the cost of this action; and for all other just and proper relief in the premises.

CARSON BOXBERGER LLP

By _____

    Larry L. Barnard (11904-49)
    Bruce O. Boxberger (3535-02)
    Attorneys for Plaintiff
    Diehl Woodworking Machinery

1400 One Summit Square
Fort Wayne, Indiana 46802
Telephone: (260) 423-9411
F:\Diehl Woodworking Machinery 19,554\Amended Complaint.doc

## CERTIFICATE OF SERVICE

This will certify that on this ____ day of March, 2007, a true and complete copy of the above and foregoing document was mailed to Gregory A. Kotsonis, Esq., 411 East Wisconsin Avenue, #700, Milwaukee, Wisconsin, 53202 and Steven Hearn, Esq., 212 N. Buffalo St., P.O. Box 770, Warsaw, Indiana 46581-0770.

_____
        (Larry L. Barnard)

4

## MEMORANDUM OF AGREEMENT

THIS MEMORANDUM OF AGREEMENT (hereinafter called "Agreement") is made and entered into as of the _____ day of August, 2005. by and between WISCONSIN AUTOMATED MACHINERY CORP., a Wisconsin corporation (herein called "WAM"), and DIEHL WOODWORKING MACHINERY, INC., an Indiana corporation (herein called "Diehl"):

## W I T N E S S E T H:

WHEREAS, Diehl has previously paid, and is currently paying, to WAM or its affiliates a monthly management fee for management consulting and services, which fee has varied from time to time upon the mutual agreement of the parties; and

WHEREAS, the parties intend that WAM shall continue to provide such management consulting and services to Diehl, and Diehl shall continue to pay a monthly management fee therefor as business conditions permit and in accordance with the terms and conditions herein set forth:

NOW, THEREFORE. In consideration of the premises hereof (which the parties hereby incorporate and make a part of their agreements herein) and the mutual agreements hereinafter set forth, it is agreed as follows:

1.    Wam hereby waives all unpaid and accrued management fees, if any, due from Diehl prior to July 31, 2005. WAM shall continue to provide to Diehl from time to time management consulting and services as reasonably requested by Diehl and, effective as of July 31, 2005, Diehl shall pay to WAM, as consideration for such management consulting and services provided, a management fee of $12,500 per month (increased from the immediately preceding fee of $10,000 per month) through December 31, 2005, and $15,000 per month commencing January 31, 2006, through December 31, 2008; provided however that (a) such mutual commitments to provide such services and to pay such management fee shall terminate as of January 1, 2009, unless extended by the mutual agreement of the parties, and (b)from time to time the said management fee might be



reconsidered and reduced, increased, eliminated and/or reinstated by mutual agreement of the parties as Diehl's business conditions requires, and WAM shall only be responsible to provide consulting and services at a level consistent with the then current level of such management fee.

2. The parties shall cooperate and use reasonable efforts to inform each other concerning any change in such business conditions and consequent changes in the management fee level and commensurate level of management consulting and services to be provided.

IN WITNESS WHEREOF, the parties hereto have executed this Consulting Agreement as of the day and year first above written.

WISCONSIN AUTOMATED MACHINED COMP.

By _____

Title _____


DIEHL WOODWORKING MACHINE ....

By _____

Title _____ PRESIDENT

85

STATE OF INDIANA    )
                    ) SS:
COUNTY OF WABASH    )

IN THE WABASH CIRCUIT COURT

CAUSE NO: 85C01-0608-PL-380

DIEHL WOODWORKING          )
MACHINERY, INC.            )
                           )
          Plaintiff,       )
                           )
     -vs-                  )
                           )
WISCONSIN AUTOMATED        )
MACHINERY CORP., JAY       )
EHRLICH and DIMITRIS       )
LOUKIDIS                   )
                           )
          Defendants.      )
                           )
     and                   )
                           )
ROBERT ROZMAN              )
                           )
          Third-Party Defendant)

## SUPPLEMENTAL COMPLAINT FOR INTERPLEADER

Comes now the plaintiff, Diehl Woodworking Machinery, Inc. (hereinafter "Diehl") by counsel, pursuant to Trial Rule 15(B) and Trial Rule 22 of the Indiana Rules of Procedure, and for its cause of action against defendants, Wisconsin Automated Machinery Corp. (hereinafter "WAMCO"), Jay Ehrlich and third-party defendant, Robert Rozman, alleges and says as follows:

1.     Pursuant to the terms of the Asset Purchase Agreement which is attached as Exhibit A to the WAMCO's Counterclaim, Diehl must pay to WAMCO the sum of $10,000.00 per month.



EXHIBIT
C-85

2.    As is reflected by the pleadings in this matter between defendant Ehrlich and third-party defendant, Robert Rozman, a dispute exists in this matter concerning the proper recipient between the shareholders of WAMCO of any funds paid to WAMCO.

3.    Diehl is willing to pay the funds it owes to WAMCO into Court to be held subject to further order of the Court regarding the proper recipient of those funds.

WHEREFORE, plaintiff, Diehl Woodworking Machinery, Inc., requests the Court to enter judgment as follows:

1.    To direct plaintiff to deposit all funds due and owing to defendant, WAMCO, with the Clerk of the Court and to discharge Diehl from any and all liability to the defendants and third-party defendant;

2.    To require that the defendants, WAMCO and Jay Ehrlich, and third-party defendant, Robert Rozman, to interplead and litigate among themselves their claims to the deposited funds; and

3.    For the costs of this action and all other appropriate relief.

CARSON BOXBERGER LLP

By _____

Larry L. Barnard (11904-49)
Bruce O. Boxberger (3535-02)
Attorneys for Plaintiff
Diehl Woodworking Machinery

1400 One Summit Square
Fort Wayne, Indiana 46802
Telephone: (260) 423-9411
F:\Diehl Woodworking Machinery 19,554\Supplemental Complaint.doc

## CERTIFICATE OF SERVICE

This will certify that on this ____ day of May, 2007, a true and complete copy of the above and foregoing document was mailed to Gregory A. Kotsonis, Esq., 411 East Wisconsin Avenue, #700, Milwaukee, Wisconsin, 53202 and Steven Hearn, Esq., 212 N. Buffalo St., P.O. Box 770, Warsaw, Indiana 46581-0770.

_____

(Larry L. Barnard)

86



Bruce O. Boxberger
boxberger@carsonboxberger.com

June 27, 2007

R. Steven Hearn, Esq.
Rothberg Logan & Warsco LLP
212 North Buffalo Street
P.O. Box 770
Warsaw, IN 46581-0770

      Re:    Diehl Woodworking Machinery, Inc. v. Wisconsin Automated
               Machinery Corp., et al.
               Wabash Circuit Court; Cause No. 85C01-0608-PL-380
               Our File No:  19,554

Dear Mr. Hearn:

I appreciate your letter dated June 5, 2007 and your attempt to settle our discovery differences without the Court. I have addressed each of your concerns individually.

## I. Privilege

Diehl asserts attorney-client privilege in only one response to an Interrogatory and one Request for Production. Interrogatory No. 47 asks, "Identify all communications with Carson Boxberger relating to the lawsuit, the Memorandum of Agreement and/or the Asset Purchase Agreement." Request for Production No. 35 asks for "all communications with Carson Boxberger relating to the lawsuit, the Memorandum of Agreement and/or the Asset Purchase Agreement." As these requests pertain only to material protected by attorney-client privilege, as they would include only documents/communications between a client and his counsel, Diehl asserts this right. Neither Diehl, nor I, will produce a log of all correspondence which is obviously protected, simply to illustrate the dates and frequency of such communication.



EXHIBIT
C86

R. Steven Hearn, Esq.
June 27, 2007
Page 2

WAMCO suggests that Diehl has also asserted a blanket privilege in response to Interrogatories Nos. 6 and 32 – 35 and Requests for Productions Nos. 24 – 26. Diehl has objected to these Interrogatories and the Request for Production on other grounds. However, because the documents responsive to these requests have not been assembled due to the obvious burden of locating and retrieving that which is both unduly broad and/or irrelevant, Diehl is unaware of what documents would be included. Responsive documents may include that which would be protected by attorney-client privilege. Diehl has merely preserved its right to assert this privilege at a later date, if necessary. It is not currently being asserted in any response except with regard to Interrogatory No. 47 and Request for Production No. 35.

## II. Interrogatory Answers

For reasons set forth in the original responses to Interrogatories Nos. 5 and 6, Diehl maintains its objections here. Without waiving these objections, and in order to resolve this matter, all documents responsive to Interrogatories Nos. 5 and 6 are produced concurrently herewith. However, Diehl reiterates their objection to the breadth of these requests as they request not only letters and emails, but every text message, phone conversation and personal conversation from any and every employee of Diehl. As it would be impossible for Diehl to recount every communication concerning WAMCO and Loukidis, only emails and written correspondence have been produced herewith.

As stated in Plaintiff's original objection to Interrogatories Nos. 32 - 35, the payment of legal fees on behalf of Rozman does not relate to any claim and/or defense that has been asserted in this lawsuit. Therefore, Diehl maintains its objections to these requests and will not be producing documents responsive to these requests.

**Interrogatory No. 13**: For reasons set forth in the original response to Interrogatory No. 13, Diehl maintains its objection here. Without waiving this objection, and in order to resolve this matter, the contract between Loukidis and Rozman is produced concurrently herewith. Diehl is unable to recall the dates, times and contents of any other communication concerning this transaction that is not already produced in response to Interrogatory No. 6.

**Interrogatory No. 14**: Plaintiff asserts that Rozman has acquired Loukidis' interest in Diehl to prevent further breach of fiduciary duty by Loukidis. However, Rozman cannot rectify Loukidis' prior breach of fiduciary duty short of terminating the management fee. Therefore, initiating this litigation is the action Rozman has taken to rectify Loukidis' breach of fiduciary duty.

R. Steven Hearn, Esq.
June 27, 2007
Page 3

**Interrogatory No. 17**:    Interrogatory No. 17 asks what services WAMCO was supposed to provide to Diehl.  In response Diehl attempts to articulate that immediately after contracting with WAMCO for management services, Diehl became aware that WAMCO was incapable of completing any services.  If unclear, Diehl responds here that no specific management services were contemplated before the execution of any agreement.

**Interrogatory No. 20**:    In response to Interrogatory No. 20 which asks if WAMCO has ever refused service, Diehl again attempts to articulate that WAMCO was incapable of providing management services to Diehl.  If unclear Diehl responds here that WAMCO has not ever refused to provide management services to Diehl.

**Interrogatory No. 22**:    In response to Interrogatory No. 22, which requests a description of the change in business conditions that requires the elimination of the management fee, Diehl states: "While Diehl is capable of paying its creditors, the declining market for Diehl's products has required a closer inspection of Diehl's expenses.  See Response to Request for Production No. 6."    On page 043 of this Response to Request for Production, a sales statement illustrates that the average monthly sales figure for 2007 is $146,929.00 down from $165,668.00 in 2006, $179,277.00 in 2005, and $203,449.00 in 2004.  If unclear, Diehl responds here that they are in the business of selling products.  When they sell fewer products they make less money.  The changing business condition present here is the declining market for Diehl's products, which is to say, they are selling fewer products and making less money, as evidenced by the monthly statement referenced above.

**Interrogatory No. 23**:    In response to Interrogatory No. 23, which asks for all communication from Diehl to WAMCO illustrating change in Diehl's business conditions, Diehl states that Jay Ehrlich (WAMCO), as an officer of Diehl, was given weekly financial reports illustrating Diehl's declining sales.  Copies of these reports are produced concurrently herewith.

**Interrogatories Nos. 32-35**:    Diehl's response to Interrogatory No. 27 claims Diehl has incurred legal fees in excess of $10,000.00.  In response to Interrogatories Nos. 32 – 35, Diehl objects to the relevance of Rozman's legal fees, as the payment of legal fees on behalf of Rozman does not relate to any claim and/or defense that has been asserted in this lawsuit.  These two responses are completely consistent.

R. Steven Hearn, Esq.
June 27, 2007
Page 4

**Interrogatory No. 41**:    Any documents responsive to this request are produced in response to Interrogatory No. 6.  Diehl acknowledges several oral communications with individuals concerning this matter, but does not recall any specific dates, duration, or content of these conversations.

**Interrogatory No. 45**:    Diehl acknowledges several oral communications with Ruffner relating either to this lawsuit, the Memorandum of Agreement or Asset Purchase Agreement, but does not recall any dates, duration or specific content of these conversations.  However, the emphasis of these conversations was: 1) The management fee was not contractual, 2) The complaint was legitimate because WAMCO was contributing nothing, 3) There was real question to the legitimacy of the entire Asset Purchase Agreement because it was an agreement between the same parties, 4) That this problem was really a family feud with Diehl in the middle.

**Interrogatory No. 47**:    While it's true that communications between Carson Boxberger and a non-client may not be privileged, Interrogatory No. 47 is directed at Diehl, a Carson Boxberger client, requesting communications with Carson Boxberger.  This is obviously privileged.

## III.  Document Requests

**Request for Production No. 16**: See Response to Interrogatory No. 13 produced concurrently herewith.

**Request for Production No. 17**: See Response to Interrogatory No. 13 produced concurrently herewith.

**Request for Production Nos. 23, 39-42, 53, 55, 57-59**: Diehl does not now, and has never before, claimed that it is unable to pay its debts, bringing into question the financial situation of the Company.  Diehl's only contention is that the decreased volume of sales, a business condition, has required Diehl to assess its expenses. In doing so, Diehl has become keenly aware that WAMCO provides no services in consideration for the management fee Diehl pays WAMCO.  Diehl is simply attempting to rectify this by discontinuing payment of this management fee.

R. Steven Hearn, Esq.
June 27, 2007
Page 5

      **Request for Production Nos. 24-26**: Diehl's response to Interrogatory No. 27 claims Diehl has incurred legal fees in excess of $10,000.00. In response to Interrogatories 32 – 35, Diehl objects to the relevance of Rozman's legal fees, as the payments of legal fees on behalf of Rozman does not relate to any claim and/or defense that has been asserted in this lawsuit. These two responses are completely consistent. As for the claim that this information is relevant to the issue of Diehl's financial condition, please see Response to Request for Production Nos. 23, 39-42, 53, 55, 57-59, above.

      **Request for Production No. 35**: As this request for production does not deal with Carson Boxberger bills, I assume your argument is akin to the one you made in reference to Interrogatory No. 47. And again, while it is true that communications between Carson Boxberger and a non-client may not be privileged, Request for Production No. 35 is directed at Diehl, a Carson Boxberger client, requesting communications with Carson Boxberger.

      Finally, all electronic or written communications between Diehl's counsel and third parties regarding Loukidis and WAMCO are produced in response to Interrogatory No. 6. Diehl acknowledges several oral communications between its counsel and third parties relating to these matters, but does not recall any dates, duration or specific content of these conversations.

      If you have any further questions or requests, please contact me.

                 Sincerely,

                 CARSON BOXBERGER LLP

                 Bruce O. Boxberger

BOB/skc
Enclosures
cc:   Larry L. Barnard, Esq. (via/email)
F:\Diehl Woodworking Machinery 19,554\HearnLtr 06.27.07.doc

87

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

DIEHL WOODWORKING    )
MACHINERY, INC.    )
                  )
      Plaintiff,    )
                  )
    -vs-    )    CIVIL NO: 3:07-CV-263
                  )
WISCONSIN AUTOMATED    )
MACHINERY CORP., JAY    )
EHRLICH and DIMITRIS    )
LOUKIDIS    )
                  )
      Defendants.    )

## MOTION TO TENDER INTERPLEADER FUNDS INTO COURT

Comes now the plaintiff, Diehl Woodworking Machinery, Inc., by counsel, and hereby moves the Court for leave to tender into Court funds pursuant to its claim for interpleader. In support of this Motion, plaintiff would show the Court as follows:

1.    Prior to the removal of this matter, plaintiff filed its Supplemental Complaint for Interpleader and deposited the sum of $10,000.00 with the Clerk of the Wabash Circuit Court.

2.    Another payment is now due and owing from Diehl to defendant, Wisconsin Automated Machinery Corp., and Diehl seeks to make that payment to the Clerk of the Court pursuant to its Supplemental Claim for Interpleader.

3.    Counsel for Diehl attempted to tender the payment to the Clerk and was informed that the payment could only be made by order of the Court.


EXHIBIT
C87

WHEREFORE, plaintiff, Diehl Woodworking Machinery, Inc., prays the Court grant its Motion and orders that plaintiff may tender into its payment pursuant to its Supplemental Complaint for Interpleader, and for all other just and proper relief in the premises.

CARSON BOXBERGER LLP

By _____ s/Larry L. Barnard _____
        Larry L. Barnard (11904-49)
        Bruce O. Boxberger (3535-02)
        Attorneys for Plaintiff and Third-
        Party Defendant

1400 One Summit Square
Fort Wayne, Indiana 46802
Telephone: (260) 423-9411
F:\Diehl Woodworking Machinery 19,554\Motion to Tender Funds.doc

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of July, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: **Stephen Downs, Esq.; R. Steven Hearn, Esq. and Andrew Schwartz, Esq.,**

        _____ s/Larry L. Barnard _____
        (Larry L. Barnard)

88

**MICHAEL H. MOSS**
Attorney at Law
1550 N. Northwest Highway, Suite #203
Park Ridge, Illinois 60068
(847) 827-8100
Fax: (847) 827-4964

September 5, 2006

Andrew Schwartz, Esq.                                    <u>For Settlement Purposes Only</u>
30 N. LaSalle Street, Suite 3000
Chicago, Illinois 60602

Dear Andy:

This letter is in response to your request to me for a settlement proposal. Although you believe that any proposal should be a two-way street, I'm not certain that can be accomplished in this situation where there are multiple factors and parties to arrive at any transaction structure. Also, bear in mind that the key management personnel have no desire to give up their stock ownership or their operational rights. I do not represent those individuals or Diehl, but I have met with them and, as a result, can make that statement with much certainty.

In any event, the settlement proposal (which I cannot overemphasize is non-negotiable because it is generous, it is right for everybody's sake, and we are dealing with a small company which has limited funds) is as follows:

1. Based upon a valuation of $500,000 for the stock of Diehl, Jay's stock will be purchased by Bob Rozman for $50,000 cash and a note for $37,500, and Paul's stock will be purchased by Bob Rozman for $187,500 payable as $100,000 cash and a promissory note (payable over some reasonable period and at a going rate of interest) for $87,500. I do not represent Bob Rozman, but I have good reason to believe that these terms will be acceptable to him. Please understand that Jay is not required to sell his shares in Diehl, Bob Rozman is the only shareholder willing to acquire any of Diehl's shares, and Bob's maximum available cash is $150,000 (divided among Jay, Jim and Paul).

2. Paul will waive the approximately $95,000 due to him from Jay, and in addition thereto will assign to Jay his rights in $37,500 of the note due to him from Bob Rozman (relative to the sale of Paul's stock).

3. The management fee due to WAMCO from Diehl will be reduced to $140,000, which amount may be paid in cash subject to the approval of Diehl. Although I do not represent Jim Loukidis or Diehl, I believe that they will accept this resolution.

4. The purchase note payable from Diehl to WAMCO will continue to be paid as due.

5. Paul will purchase Jay's interest in Allenton for $25,000 (with no deferred payout) if Jay desires to sell.

6. Jay and Paul to agree upon a grandparents' visitation schedule with the agreement to be court approved. (This is a significant issue to be resolved, and I sincerely hope that you agree.)



Insofar as the economics of this transaction to your client, let me further explain:

On a "best case basis" without consideration of the sale of WAMCO or Allenton which will be at Jay's option, Jay would collect $366,000 as follows:

| | |
|---|---|
| Management Fee: $441,000 x 2/3 ownership | $ 294,000 |
| Purchase Note: 250,000 x 2/3 | 167,000 |
| | $ 461,000 |
| Less: due to Paul | -95,000 |
| | $ 366,000 |

Pursuant to this settlement proposal Jay will collect as follows:

| | |
|---|---|
| Management Fee - $140,000 x 2/3 | $ 93,000 |
| Assignment of Paul's note | 37,500 |
| Purchase Note: 250,000 x 2/3 | 167,000 |
| | $297,500 |

As an added comment, it appears to me as if your evaluation of the management fee issue is based upon the merits of your case for which you are certainly prejudiced (and have a right to be so). For purposes of this settlement, however, our position is that the issues of that matter are:

1. There are hazards of any litigation.

2. Diehl cannot afford to continue to pay the $15,000 per month plus the purchase note plus rent of $4,500 per month (for a building worth approximately only $200,000). In fact, it is "my" belief that if this ugly situation continues it will not be long before Diehl will have to seek protection of the U.S. Bankruptcy Court.

3. As noted above, the total difference from the maximum which Jay can ultimately collect is $68,500 less the costs of litigation.

4. Paul is giving up $132,500 ($95,000 + $37,500) to make all of this happen.

Insofar as the Diehl and Allenton ownership interests being sold, these are not marketable securities and as such if Jay does not sell pursuant to this proposal, he could be otherwise simply holding pieces of paper until a buyout upon his death. Also, I cannot imagine that Jay believes that Diehl's value is any more than its book value of $800,000. Based upon that assumption, Jay will realize only $27,500 less than the maximum as follows:

| | |
|---|---|
| $800,000 @ 17-1/2% = | $140,000 |
| Less: | |
| Buyout proposal ($500,000 @ 17-1/2%) | <87,500> |
| Allenton proceeds | <25,000> |
| | $ 27,500 |

As a final comment, please allow me to provide the following quotes from Bob Rozman to Paul after Bob returned last week from a major trade show:

"I have a limited amount of time left in my working career and my energy level is not what it was a couple of years ago. When you combine the basic business challenge ahead of Diehl with the current ownership problems we are having, it becomes difficult to focus on the business of running this business. All I know is that I have to get back to selling more machinery, improving the quality of my people and making sure I'm backing up for the aging management team that's here. I don't want to worry about management fees, what Jay will do to Jim, or what either will have to do without Diehl for financial support. I'm concerned about how Diehl will support me and the other people who have and want to continue to work here to make a living ... and make the company successful in its transition to a more specialized machine builder."

"The only real equity of this company is a nucleus of several people who are here and if I lose, or sense that I would lose that in the next year or so because they can't or don't want to deal with the uncertainty of the situation that exists, I'm no longer a buyer. I think I represent a good portion of that equity, but I absolutely need the cooperation and dedication of these other people and I'm spending way too much time now, working on shoring up their confidence and re-assuring them that things will be ok. In my opinion, the results of the Atlanta show were not that good for us ... not the machine sales I had hoped for and expected. Yes, there are opportunities, but this business will never again generate the easy parts business it did in the past. We'll all work hard to make a living and any success we'll enjoy, we'll have earned."

Andy, I believe that we are all anxious to resolve this matter at the earliest possible date. Thus your response by the end of the day on this Thursday will be greatly appreciated.

Very truly yours,

Michael H. Moss

MHM:mh

89

WABASH RIVER L.L.C.
981 WABASH STREET
WABASH, INDIANA

Pursuant to Article VII Paragraph 7.1 (c) In lieu of holding a meeting the Members may vote otherwise take action by a written instrument indicating the consent of Members holding the required percentage of the membership interests.

Article VI Paragraph 6.3 provides in part as follows:
A manager may be removed and replaced with another manager upon the consent of the members holding a majority of the Membership interests.

Article V Paragraph 5.1 provides, For purposes hereof at any time a "Majority of Membership interests" shall mean one or Membership interests that in the aggregate exceed 50% of all membership interests.

### MAJORITY WRITTEN CONSENT
### OF THE MEMBERS OF WABASH RIVER L.L.C.

The undersigned being the majority of the members of Wabash River L.L.C. do hereby consent to the adoption of the following resolutions:

Jay Ehrlich shall be removed as Manager of Wabash River L.L.C. and Paul Ehrlich be elected to replace him.

Rent due and payable from Diehl Woodworking Machinery Inc. (if any) due for the Months of July, August and September 2006 shall be waived.

21 ST Day of SEPT, 2006

_____
Paul Ehrlich

_____
Dimitris Loukidis

_____
Jay Ehrlich

EXHIBIT
C-89

90

Detach Here: To ensure proper credit, please return upper portion with remittance to M&I Bank.

## CARDHOLDER SUMMARY

| | Previous Balance | + | Purchases And Other Debits | + | Cash Advances | + | Finance Charges | - | Credits | - | Payments | = | New Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JAY EHRLICH | | | | | | | | | | | | | |
| ████████ 1163 | $378.70 | | $1,995.90 | | $0.00 | | $0.00 | | $0.00 | | $378.70 | | $1,995.90 |
| Cardholder Total | $378.70 | | $1,995.90 | | $0.00 | | $0.00 | | $0.00 | | $378.70 | | $1,995.90 |

## FINANCE CHARGE SUMMARY

| | Average Daily Balance | Monthly Periodic Rate | Corresponding Annual Percentage Rate | Periodic Finance Charge |
|---|---|---|---|---|
| CASH ADVANCES | $0.00 | 1.0625% | 12.75% | $0.00 |
| PURCHASES | $0.00 | 1.0625% | 12.75% | $0.00 |

PERIODIC RATE MAY VARY
ANNUAL PERCENTAGE RATE 0.00%

GRACE PERIOD
To Avoid a Finance Charge On Purchases, Pay Entire New Balance By Payment Due Date.
Finance Charge Accrues On Cash Advances Until Paid And Will Be Billed On Your Next Statement.

## CARDHOLDER ACTIVITY

| Post Date | Tran Date | Reference Number | Transaction Description | Amount |
|---|---|---|---|---|
| | 10-21 | 10-21 | 24210732529500050004180194 | FRANKLIN & WASHINGTON CHICAGO IL | 25.00 |
| | 10-24 | 10-23 | 24168075297799296610040 | 01D55151 CHICAGO IL | 47.40 |
| | 10-24 | 10-24 | 24210732529800050002957 | FRANKLIN & WASHINGTON CHICAGO IL | 25.00 |
| | 10-25 | 10-24 | 24210732529800050001687 | FRANKLIN & WASHINGTON CHICAGO IL | 25.00 |
| | 10-28 | 10-27 | 24210735010500050629457 | MARATHON ASHLAND 05063 CHICAGO IL | 44.80 |
| | 10-31 | 10-29 | 24210735050500050592211 | FRANKLIN & WASHINGTON CHICAGO IL | 25.00 |
| | 10-31 | 10-29 | 24210735050500050579975 | FRANKLIN & WASHINGTON CHICAGO IL | 25.00 |
| | 11-02 | 11-01 | 74426905310900000701317 | PAYMENT RECEIVED - THANK YOU | 378.70CR |
| | 11-04 | 11-04 | 24210735050500050577034 | FRANKLIN & WASHINGTON CHICAGO IL | 25.00 |
| | 11-08 | 11-07 | 24210735312005000517033 | DRBFOJ3HDERQ 08005854546 IL | 25.00 |
| | 11-10 | 11-09 | 24610435314004013615333 | ILLINOIS CENTER CHICAGO IL | 6.50 |
| | 11-10 | 11-09 | 24210735314005000635570 | AMERICAN AIR00154110B117 MANKATO MN | 652.40 |
| | 11-10 | 11-09 | 24056215314B61900265745 | ORD AA L LAX AA L ORD    DEPARTURE DATE 11-15-05 | 21.00 |
| | 11-11 | 11-10 | 24210735315005000644621 | FRANKLIN & WASHINGTON CHICAGO IL | 25.00 |

---

FOR CUSTOMER SERVICE OR
LOST/STOLEN CARDS CALL

TOLL FREE                1-866-346-5343

INTERNATIONAL           1-608-240-7700

| | ACCOUNT NUMBER | | |
|---|---|---|---|
| | ████████-1163 | | |
| STATEMENT DATE | PAYMENT DUE DATE | | |
| 11/21/05 | 12/16/05 | | |
| CREDIT LIMIT | AVAILABLE CREDIT | FINANCE CHARGE | |

### ACCOUNT SUMMARY

| | |
|---|---|
| PREVIOUS BALANCE | 378.70 |
| PURCHASES & OTHER CHARGES | 1,995.90 |
| CASH ADVANCES | .00 |
| LATE PAYMENT FEES | .00 |
| CHARGE | |
| FINANCE CHARGE | .00 |



EXHIBIT
C-90

Detach Here: To ensure proper credit, please return upper portion with remittance to M&I Bank.

## CARDHOLDER ACTIVITY

| Post Date | Tran Date | Reference Number | Transaction Description | Amount |
|-----------|-----------|------------------|-------------------------|--------|
| 11-11 | 11-10 | 24610435315004008135613 | HYATT HOTELS W. HOLLYWOOD W. HOLLYWOOD CA ARRIVAL: 11-10-05 | 442.32 |
| 11-15 | 11-14 | 24210735319050006078272 | 1163 FRANKLIN & WASHINGTON CHICAGO IL | 20.00 |
| 11-15 | 11-15 | 24403959520319000141512 | BIZOU GARDEN BISTRO SANTA MONICA CA | 41.55 |
| 11-16 | 11-16 | 24781975250512170011133 | KOI LA LOS ANGELES CA | 201.55 |
| 11-18 | 11-17 | 24164055325230600084664 | EXXONMOBIL34 0115-1562 LOS ANGE CA | 16.33 |
| 11-18 | 11-17 | 24210735319230050076940 | FRANKLIN & WASHINGTON CHICAGO IL | 25.00 |
| 11-18 | 11-18 | 24164075323297952021170227 | AMOCO OIL 01063084 CHICAGO IL | 44.49 |
| 11-18 | 11-17 | 24465735302281393024850 | FOX RENT A CAR INC LOS ANGELES CA | 70.36 |
| 11-18 | 11-17 | 24610435322004081130800 | HYATT HOTELS W. HOLLYWOOD W. HOLLYWOOD CA ARRIVAL: 11-15-05 | 91.00 |
| 11-18 | 11-17 | 24164075322250900006440 | 1163 O'HARE AIRPORT00010-1410 CHICAGO IL | 102.00 |

773 296 2096

Jay Ehrlich

07/07/09:328

P·3

## U.S. District Court Northern District of Indiana [LIVE]
## USDC Northern Indiana (South Bend)
## CIVIL DOCKET FOR CASE #: 3:07-cv-00263-JVB-CAN

Diehl Woodworking Machinery Inc v. Wisconsin Automated
Machinery Corp et al
Assigned to: Joseph S Van Bokkelen
Referred to: Magistrate Judge Christopher A Nuechterlein
Case in other court: Wabash Circuit Court, 85C01-0608-PL-380
Cause: 28:1332 Diversity-Petition for Removal

Date Filed: 06/05/2007
Jury Demand: None
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Diehl Woodworking Machinery Inc**                  represented by **Bruce O Boxberger**
                                                     Miller Carson Boxberger & Murphy LLP
                                                     FW/IN
                                                     1400 One Summit Square
                                                     Fort Wayne, IN 46802
                                                     260-423-9411
                                                     Fax: 260-423-4329
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Larry L Barnard**
                                                     Carson Boxberger LLP - FW/IN
                                                     1400 One Summit Square
                                                     Fort Wayne, IN 46802
                                                     260-423-9411
                                                     Fax: 260-423-4329
                                                     Email: llb@carsonboxberger.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wisconsin Automated Machinery Corp**             represented by **Andrew R Schwartz PHV**
                                                     Sugar Friedberg & Felsenthal LLP
                                                     30 N LaSalle Street Suite 3000
                                                     Chicago, IL 60602
                                                     312-704-9400
                                                     Fax: 312-372-7951
                                                     Email: aschwartz@sff-law.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Matthew R Wildermuth**
                                                     Sugar Friedberg & Felsenthal LLP
                                                     30 N LaSalle Street Suite 3000
                                                     Chicago, IL 60602



EXHIBIT

C-91

312-704-9400
Fax: 312-372-7951
Email: mwildermuth@sff-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R Steven Hearn**
Rothberg Logan & Warsco LLP - War/IN
212 N Buffalo Street
PO Box 770
Warsaw, IN 46580-0770
574-267-8802
Fax: 574-267-0605
Email: shearn@rlwlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jay Ehrlich**                              represented by **Andrew R Schwartz PHV**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **Matthew R Wildermuth**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

                                             **R Steven Hearn**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Dimitris Loukidis**                        represented by **Stephen H Downs**
                                             Tiede Metz & Downs PC
                                             99 W Canal Street
                                             PO Box 549
                                             Wabash, IN 46992
                                             260-563-7474
                                             Fax: 260-563-7576
                                             Email: sdowns@wabashlaw.com
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**ThirdParty Defendant**

**Dimitris Loukidis**

**Counter Claimant**

**Wisconsin Automated Machinery Corp**       represented by **Andrew R Schwartz PHV**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

Matthew R Wildermuth
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

R Steven Hearn
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

Diehl Woodworking Machinery Inc          represented by  Bruce O Boxberger
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Larry L Barnard
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

Jay Ehrlich          represented by  Andrew R Schwartz PHV
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Matthew R Wildermuth
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

R Steven Hearn
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

Dimitris Loukidis          represented by  Stephen H Downs
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

Jay Ehrlich          represented by  Andrew R Schwartz PHV
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Matthew R Wildermuth**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R Steven Hearn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**ThirdParty Defendant**

Robert F Rozman                     represented by   **Bruce O Boxberger**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Larry L Barnard**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

**Counter Claimant**

Robert F Rozman                     represented by   **Bruce O Boxberger**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Larry L Barnard**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

Jay Ehrlich                         represented by   **Andrew R Schwartz PHV**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Matthew R Wildermuth**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **R Steven Hearn**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*

ATTORNEY TO BE NOTICED

**Cross Claimant**

Dimitris Loukidis

represented by **Stephen H Downs**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

Jay Ehrlich

represented by **Andrew R Schwartz PHV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew R Wildermuth**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R Steven Hearn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/02/2006 | 1 | COMPLAINT against Dimitris Loukidis, Wisconsin Automated Machinery Corp, Jay Ehrlich, filed by Diehl Woodworking Machinery Inc.(kds) (Entered: 06/08/2007) |
| 02/16/2007 | 2 | ANSWER to Complaint, COUNTERCLAIM against Diehl Woodworking Machinery Inc by Wisconsin Automated Machinery Corp. (Attachments: # 1 Exhibit A part 1# 2 Exhibit A part 2)(kds) (Entered: 06/08/2007) |
| 03/01/2007 | 3 | ANSWER to 2 Counterclaim by Diehl Woodworking Machinery Inc.(kds) (Entered: 06/08/2007) |
| 03/20/2007 | 4 | AMENDED COMPLAINT against Dimitris Loukidis, Wisconsin Automated Machinery Corp, Jay Ehrlich, filed by Diehl Woodworking Machinery Inc. (see CCS state court record for date of order granting motion to amend of 3/20/07)(kds) (Entered: 06/08/2007) |
| 04/11/2007 | 5 | ANSWER to 4 Amended Complaint by Wisconsin Automated Machinery Corp.(kds) (Entered: 06/08/2007) |
| 04/11/2007 | 6 | ANSWER to 4 Amended Complaint by Jay Ehrlich.(kds) (Entered: 06/08/2007) |
| 04/11/2007 | 7 | CROSSCLAIM against Dimitris Loukidis, filed by Jay Ehrlich.(kds) (Entered: 06/08/2007) |
| 04/11/2007 | 8 | THIRD PARTY COMPLAINT against Robert F Rozman, filed by Jay Ehrlich.(kds) (Entered: 06/08/2007) |
| 05/01/2007 | 9 | ANSWER to 8 Third Party Complaint, COUNTERCLAIM against Jay Ehrlich by |

| | | Robert F Rozman.(kds) (Entered: 06/08/2007) |
|---|---|---|
| 05/01/2007 | 10 | ANSWER to 2 Counterclaim by Diehl Woodworking Machinery Inc.(kds) Modified o 6/8/2007 to correct date filed(kds). Additional attachment(s) added on 6/8/2007 (Schwenk, Karen). (Entered: 06/08/2007) |
| 05/11/2007 | 11 | MOTION to Stay Arbitration Proceedings by Plaintiff Diehl Woodworking Machinery Inc. (kds) (Entered: 06/08/2007) |
| 05/21/2007 | 14 | MOTION for Extension of Time to File Response To Cross Claim by Defendant Dimitris Loukidis. (kds) (Entered: 06/08/2007) |
| 05/29/2007 | 12 | Supplemental COMPLAINT For Interpleader against Robert F Rozman, Wisconsin Automated Machinery Corp, Jay Ehrlich, filed by Diehl Woodworking Machinery Inc (kds) (Entered: 06/08/2007) |
| 06/05/2007 | 13 | NOTICE OF REMOVAL by Wisconsin Automated Machinery Corp, Jay Ehrlich from Wabash Circuit Court, case number 85C01-0608-PL-380. ( Filing fee $ 350), filed by Wisconsin Automated Machinery Corp, Jay Ehrlich. (Attachments: # 1 Exhibit 1 Complaint Wabash Circuit Court# 2 Summons# 3 Notice of Removal in 3:06cv517# Answer and counterclaim of WAMCO# 5 Exhibit A part 1 to Answer and Countercla of WAMCO# 6 Exhibit A part 2 to Answer and Counterclaim of WAMCO# 7 Exhibi E Mail dated 12/18/2006 re: Stock Matters# 8 Exhibit 6 Motion for leave to file amended complaint part 1# 9 Exhibit 6 part 2 Amended Complaint# 10 Exhibit 7 Answer and affirmative defenses of Jay Ehrlich to Plaintiffs Amended Complaint# 1 Exhibit 8 Cross-claim by Jay Ehrlich Against Dimitris Loukidis# 12 Exhibit 8 Cross Claim by Jay Ehrlich Against Dimitris Loukidis# 13 Exhibit 9 Atty Appr# 14 Exhibi Motion Of Dimitris Loukidis For Extension of Time to Respond to Cross-claim# 15 Exhibit 10 Plaintiff Diehl Woodworking Machinery Incs Answer To Jay Ehrlich's Fi Set of Interrogs and Plaintiffs Responses to Jay Ehrlich's First Set of Document Requests# 16 Exhibit 11# 17 Exhibit 12 Supplemental Complaint For Interpleader)( Additional attachment(s) added on 6/8/2007 (Schwenk, Karen). (Entered: 06/08/200 |
| 06/05/2007 | 15 | STATE COURT RECORD RECEIVED. Number of Volumes: 1; State Court Case 85C01-0608-PL-380. This record is maintained on paper in the court's files and is no available in electronic format. (kds) Additional attachment(s) added on 8/6/2007 (Schwenk, Karen). (Entered: 06/08/2007) |
| 06/05/2007 | 16 | NOTICE of Appearance by R Steven Hearn on behalf of Wisconsin Automated Machinery Corp, Jay Ehrlich (kds) (Entered: 06/08/2007) |
| 06/12/2007 | 17 | ORDER granting 14 Motion for Extension of Time to File a cross claim. Cross Clai be filed by 6/15/2007. Signed by Judge Christopher A Nuechterlein on 6/12/07. (kd (Entered: 06/12/2007) |
| 06/15/2007 | 18 | First MOTION to Dismiss *Third-Party Counterclaim of Robert Rozman* by Counter Defendant Jay Ehrlich.Response to be filed by 6/6/2008 (Hearn, R) (Entered: 06/15/2007) |
| 06/15/2007 | 19 | NOTICE of Appearance by Stephen H Downs on behalf of Dimitris Loukidis (Dov Stephen) (Entered: 06/15/2007) |
| 06/15/2007 | 20 | *Dimitris Loukidis'* ANSWER to 4 Amended Complaint *and Affirmative Defenses f* by Dimitris Loukidis.(Downs, Stephen) (Entered: 06/15/2007) |
| 06/15/2007 | 21 | *Dimitris Loukidis'* ANSWER to 7 Crossclaim *filed by Jay Ehrlich*, First CROSSCL *filed* against Jay Ehrlich by Dimitris Loukidis.(Downs, Stephen) (Entered: 06/15/2 |

| 06/18/2007 | 22 | MOTION for Hearing *on Motion to Stay Arbitration* by Plaintiff Diehl Woodworking Machinery Inc. (Barnard, Larry) (Entered: 06/18/2007) |
|---|---|---|
| 06/18/2007 | 29 | ORDER Joint Proposed Discovery due by 7/23/2007. Rule 16 Preliminary Pretrial Conference set for 8/16/2007 11:00 AM in South Bend before Magistrate Judge Christopher A Nuechterlein. Signed by Judge Christopher A Nuechterlein on 6/18/07 (kds) (Entered: 07/02/2007) |
| 06/18/2007 | 30 | MAGISTRATE JUDGE CONSENT FORMS sent to all parties (Standard Track). (kd (Entered: 07/02/2007) |
| 06/20/2007 | 23 | *WAMCO'S AFFIRMATIVE DEFENSES AND* ANSWER to Complaint *FOR INTERPLEADER* by Wisconsin Automated Machinery Corp.(Hearn, R) (Entered: 06/20/2007) |
| 06/26/2007 | 24 | *Affirmative Defenses and* ANSWER to 12 Complaint *(Supplemental) for Interpleade* by Jay Ehrlich.(Hearn, R) Modified on 6/27/2007 to add link to Supplemental Complaint for Interpleader (jld). (Entered: 06/26/2007) |
| 06/26/2007 | 25 | ANSWER to 21 Crossclaim *by Dimitris Loukidis* by Jay Ehrlich.(Hearn, R) (Entered 06/26/2007) |
| 06/27/2007 | 26 | APPLICATION for Attorney Andrew R Schwartz to Appear Pro Hac Vice on behalf Wisconsin Automated Machinery Corp & Jay Ehrlich ; Receipt #3336693. (kds) (Entered: 06/27/2007) |
| 06/27/2007 | 34 | NOTICE of Appearance by Andrew R Schwartz PHV on behalf of Wisconsin Automated Machinery Corp, Jay Ehrlich (kds) (Entered: 07/02/2007) |
| 06/27/2007 | 35 | NOTICE of Appearance by Matthew R Wildermuth PHV on behalf of Wisconsin Automated Machinery Corp, Jay Ehrlich (kds) (Entered: 07/02/2007) |
| 06/28/2007 | 27 | RESPONSE to Motion re 11 MOTION to Stay *Filed by Diehl* filed by Wisconsin Automated Machinery Corp. (Attachments: # 1 Exhibit Ex 1-part# 2 Exhibit Exhibit Exhibit Exhibits to Response to Motion to Stay3# 4 Exhibit Exhibits to Response to Motion to Stay# 5 Exhibit Exhibits to Response to Motion to Stay# 6 Exhibit Exhibit Response to Motion to Stay# 7 Exhibit Exhibits to Response to Motion to Stay# 8 Exhibit Exhibits to Response to Motion to Stay# 9 Exhibit Exhibits to Response to Motion to Stay# 10 Exhibit Exhibits to Response to Motion to Stay# 11 Exhibit Exh to Response to Motion to Stay)(Hearn, R) (Entered: 06/28/2007) |
| 06/29/2007 | 28 | RESPONSE to Motion re 22 MOTION for Hearing *on Motion to Stay Arbitration Response to Plaintiff's Motion [SIC] Motion to Set Hearing on Motion to Stay Arbitration* filed by Wisconsin Automated Machinery Corp. (Attachments: # 1 Jay Erlich's First set of Interrogatories to be Answered Under Oath by Plaintiff Diehl Woodworking Machinery Inc; # 2 Jay Ehrlich's First Set of Document Requests to Plaintiff Diehl Woodworking Inc Part 1; # 3 First Set of Document Requests Part 2 Plaintiff Diehl Woodworking Inc's Answers to First Set of Interrogatories; # 4 Plair Diehl Woodworking's Responses to First set of Document Requests Part 1; # 5 Plai Diehl Woodworking's Responses to First set of Document Requests Part 2; # 6 Plai Diehl Woodworking's Responses to First set of Document Requests Part 3; #(7) Pla Diehl Woodworking's Responses to First set of Document Requests Part 4; # 8 Plai Diehl Woodworking's Responses to First set of Document Requests Part 5; # 9 Plai Diehl Woodworking's Responses to First set of Document Requests Part 6; # 10 Plaintiff Diehl Woodworking's Responses to First set of Document Requests Part 7 11 Plaintiff Diehl Woodworking's Responses to First set of Document Requests Pa # 12 Plaintiff Diehl Woodworking's Responses to First set of Document Requests l |

| | | 9; #(13) Plaintiff Diehl Woodworking's Responses to First set of Document Requests Part 10; # 14 Plaintiff Diehl Woodworking's Responses to First set of Document Requests Part 11)(Hearn, R) Modified on 7/3/2007 to correct descriptions of attachments (jld). (Entered: 06/29/2007) |
|---|---|---|
| 07/02/2007 | 31 | MOTION for Extension of Time to File Response/Reply as to 18 First MOTION to Dismiss *Third-Party Counterclaim of Robert Rozman* by ThirdParty Defendant Robe Rozman. (Barnard, Larry) (Entered: 07/02/2007) |
| 07/02/2007 | 32 | Second MOTION to Supplement *Complaint for Interpleader* by Plaintiff Diehl Woodworking Machinery Inc. (Barnard, Larry) (Entered: 07/02/2007) |
| 07/02/2007 | 33 | ORDER granting [26] Application to Appear Pro Hac Vice of Attorney Andrew R Schwartz PHV for Jay Ehrlich, Wisconsin Automated Machinery Corp. Signed by Judge Christopher A Nuechterlein on 7/2/07. (kds) (Entered: 07/02/2007) |
| 07/03/2007 | 36 | MOTION to Deposit Funds by Plaintiff Diehl Woodworking Machinery Inc. (Barnar Larry) (Entered: 07/03/2007) |
| 07/03/2007 | 37 | ORDER granting 31 Motion for Extension of Time to File Response. Response to be filed by 7/17/2007. Signed by Judge Christopher A Nuechterlein on 7/3/07. (kds) (Entered: 07/05/2007) |
| 07/03/2007 | 38 | ORDER granting 36 Motion to Deposit Funds. Plaintiff is allowed to tender its funds the sum of $10,000.00 into this court. Signed by Judge Christopher A Nuechterlein o 7/3/07. (kds) (Entered: 07/05/2007) |
| 07/05/2007 | 42 | RECEIPT from Diehl Woodworking Machinery Inc of $10,000.00 interplead funds ( 38- receipt no. 1154523). (kds) (Entered: 07/12/2007) |
| 07/06/2007 | 39 | ORDER denying as moot 32 Motion to Supplement. Signed by Judge Christopher A Nuechterlein on 7/6/07. (kds) (Entered: 07/06/2007) |
| 07/09/2007 | 40 | MOTION for Judgment on the Pleadings *And To Dissolve Diehl's Interpleader Actio* by Defendant Jay Ehrlich. (Hearn, R) (Entered: 07/09/2007) |
| 07/09/2007 | 41 | BRIEF in Support of 40 MOTION for Judgment on the Pleadings *And To Dissolve Diehl's Interpleader Action* filed by Jay Ehrlich. (Hearn, R) (Entered: 07/09/2007) |
| 07/12/2007 | 43 | MOTION for Joinder *In Certain Arguments Made In Jay Ehrlich's Motion For Judgment On The Pleadings* by Counter Claimant Wisconsin Automated Machinery Corp, Defendant Wisconsin Automated Machinery Corp. (Attachments: # (1) Propos Order)(Schwartz PHV, Andrew) Modified on 7/16/2007 to remove Proposed Order (jld). (Entered: 07/12/2007) |
| 07/16/2007 | 44 | MOTION for Leave to Appear Telephonically at Rule 26 Conference by Defendants Wisconsin Automated Machinery Corp, Jay Ehrlich. (Schwartz PHV, Andrew) (Entered: 07/16/2007) |
| 07/17/2007 | 45 | MEMORANDUM in Opposition to 18 First MOTION to Dismiss *Third-Party Counterclaim of Robert Rozman* filed by Robert F Rozman. (Barnard, Larry) (Entere 07/17/2007) |
| 07/19/2007 | 46 | REPLY to Response to Motion re 18 First MOTION to Dismiss *Third-Party Counterclaim of Robert Rozman*, 31 MOTION for Extension of Time to File Response/Reply as to 18 First MOTION to Dismiss *Third-Party Counterclaim of Ro Rozman* filed by Jay Ehrlich. (Schwartz PHV, Andrew) (Entered: 07/19/2007) |

| | | |
|---|---|---|
| 07/23/2007 | 47 | REPORT of Rule 26(f) Planning Meeting. (Barnard, Larry) (Entered: 07/23/2007) |
| 07/24/2007 | 48 | ORDER granting 44 Motion for Leave to Appear telephonically for Rule 16 Prelimina Pretrial Conference on 8/16/07 at 11:00 AM (EDT). All counsel may appear telephonically. Signed by Judge Christopher A Nuechterlein on 7/24/07. (smp) (Enter 07/24/2007) |
| 07/24/2007 | 49 | MEMORANDUM in Opposition to 40 MOTION for Judgment on the Pleadings *And* *Dissolve Diehl's Interpleader Action* filed by Diehl Woodworking Machinery Inc. (Barnard, Larry) (Entered: 07/24/2007) |
| 07/27/2007 | 50 | REPLY to Response to Motion re 40 MOTION for Judgment on the Pleadings *And T Dissolve Diehl's Interpleader Action* filed by Jay Ehrlich. (Schwartz PHV, Andrew) (Entered: 07/27/2007) |
| 07/27/2007 | 51 | ORDER REASSIGNING CASE. Case reassigned to Judge Joseph S Van Bokkelen f all further proceedings. Judge James T Moody no longer assigned to case. Signed by Judge Robert L Miller Jr on 7/27/07. (ksc) (Entered: 07/30/2007) |
| 07/30/2007 | 52 | ORDER granting 22 Motion for Hearing with hearing to be held on 8/16/2007 at 11:0 AM at South Bend immediately prior to the 16(b) conference. Signed by Judge Christopher A Nuechterlein on 7/30/07. (smp) (Entered: 07/30/2007) |
| 08/01/2007 | 53 | Second MOTION to Deposit Funds by Plaintiff Diehl Woodworking Machinery Inc. (Barnard, Larry) (Entered: 08/01/2007) |
| 08/01/2007 | 54 | RESPONSE in Opposition re 53 Second MOTION to Deposit Funds filed by Wiscor Automated Machinery Corp, Jay Ehrlich. (Schwartz PHV, Andrew) (Entered: 08/01/2007) |
| 08/03/2007 | 55 | ORDER granting 53 Motion to Deposit Funds. It is ordered that Plaintiff is allowed t deposit $10,000.00 and to continue depositing funds in the sum of $10,000 per month long as an interpleader action remains in effect. Signed by Judge Christopher A Nuechterlein on 8/3/07. (kds) (Entered: 08/03/2007) |
| 08/03/2007 | 56 | RECEIPT from Diehl Woodworking Machinery Inc of $10,000.00 interplead funds (Receipt #154657) pursuant to 55 ORDER. (cer) (Entered: 08/03/2007) |
| 08/09/2007 | 57 | MOTION to Dismiss *Cross-Claim Against Jay Ehrlich, Without Prejudice* by Cross Claimant Dimitris Loukidis.Response to be filed by 8/27/2007 (Downs, Stephen) (Entered: 08/09/2007) |
| 08/09/2007 | 58 | DISCLOSURE of Third Party Defendant filed by Dimitris Loukidis.(Downs, Stephe (Entered: 08/09/2007) |

|  PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/10/2007 14:59:42 | | |
| PACER Login: | sf0182 | Client Code: |
| Description: | Docket Report | Search Criteria: | 3:07-cv-00263-JVB-CAN |
| Billable Pages: | 6 | Cost: | 0.48 |

https://ecf.innd.uscourts.gov/cgi-bin/DktRpt.pl?23821800048722777.1_363_0_1