IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WISCONSIN AUTOMATED MACHINERY CORP., ) ) ) | |
| Movant, ) ) | |
| -vs- ) ) | CASE NO. 1:07-CV-06840 |
| DIEHL WOODWORKING MACHINERY, INC., ) ) ) ) | |
| Respondent. ) | |

**MEMORANDUM IN OPPOSITION TO**
**MOTION TO VACATE ARBITRAL AWARD**

In its Brief in Support of Motion to Vacate Arbitral Award, Movant, Wisconsin Automated Machinery Corp. (hereinafter "WAMCO"), seeks an order of this Court vacating the arbitration award issued in favor of the Respondent, Diehl Woodworking Machinery, Inc. (hereinafter "Diehl") on the grounds that the arbitrator disregarded the terms of the contract and failed to apply the appropriate law. However, WAMCO has failed to meet its heavy burden of establishing that this Court should vacate the arbitrator's award in this case. At best, WAMCO has presented an argument that the arbitrator erred in its ruling on questions of fact and law. However, that is simply insufficient, as a matter of law, to vacate the arbitrator's award in this case. Accordingly, this Court should deny WAMCO's Motion to Vacate Arbitrator's Award and enter an Order affirming that award.

## I. FACTUAL BACKGROUND

Diehl is an Indiana corporation with its principal place of business located in Wabash, Indiana which manufactures equipment to be used in the woodworking industry. Currently, Diehl has 28 employees and has been in operation continuously in Wabash since 1909.

Robert Rozman has been President of Diehl since 1993. In 1999, Diehl was purchased by a group of shareholders including Paul Ehrlich, Jay Ehrlich, Dimitris Loukidis. Paul Ehrlich, Jay Ehrlich and Dimitris Loukidis were also the shareholders in WAMCO, with Paul Ehrlich owning 50% of the WAMCO stock. In addition to those shareholders, members of the management team of Diehl, including Rozman, purchased 25% of the shares of Diehl.

Subsequent to the purchase of Diehl by the WAMCO shareholders, Diehl commencing paying a monthly management fee to WAMCO. The amount of that management fee was determined by Paul Ehrlich. There was no written agreement establishing the amount of that management fee or the terms under which it was to be paid. However, it is clear that the management fee was simply intended as a method by which the shareholders of WAMCO, who owned the majority of shares in Diehl, could take money out of Diehl and pay it to themselves, without making a distribution to all the shareholders.

In September, 2002, WAMCO and Diehl entered into an Asset Purchase Agreement whereby Diehl purchased certain woodworking product lines from WAMCO. Clearly, as the shareholders in WAMCO owned the majority of interest in Diehl at the time, this was not an arms length transaction. Indeed, while Robert Rozman was

instructed by Paul Ehrlich to have an attorney review the agreement, any objections to the terms of the agreement by Rozman on behalf of Diehl were simply ignored by Ehrlich and the other WAMCO shareholders and the parties proceeded to be entered into in September, 2002. At the time Rozman executed the Asset Purchase Agreement on behalf of Diehl, he simply viewed himself as having no choice, he could execute the Agreement or seek other employment.

The Asset Purchase Agreement contained a provision dealing with the management fee. Section 6.7 of the Asset Purchase Agreement provides:

> "Management Fee. The management fee being paid by purchaser to seller and its affiliates for management, consulting and services shall be increased to the sum of $15,000.00 per month commencing January 1, 2003, until such time as the parties otherwise mutually agree."

The Asset Purchase Agreement also included as part of the agreement, a Note and Security Agreement, by which Diehl was to pay to WAMCO the $600,000.00 purchase price for the product lines. The Note provides that upon an event of default or the failure to make payment, the holder of the Note, WAMCO, could declare all unpaid principal and interest on the Note to be due and payable.

The Security Agreement defined the term "default", in pertinent part, as follows:

> "**Default**" shall the mean occurrence of any one or more of the following events:
>
> a.  Debtor fails to pay, when due, any amount on of the liabilities;
> b.  Non-performance, misrepresentation or breach of debtor of any representation, warranty or covenant contained herein or in any other agreement between debtor and secured party;. . . or
> g.  Any change in debtor's financial condition or ability to pay the liabilities deemed by the secured party to be material adverse or the occurrence of any other event as a result of the secured party deems itself insecure."

Subsequent to the execution of the Asset Purchase Agreement, despite the fact that the management fee provision called for a payment of $15,000.00 per month for the management fee, at no time did Diehl ever pay WAMCO the sum of $15,000.00 per month for the management fee.   (see, Claimant's Exhibit C-77).  As was the practice prior to the execution of the Asset Purchase Agreement, the amount of payment of the management fee was determined at the sole discretion of Paul Ehrlich.

Eventually, a dispute arose concerning Diehl's continued ability to pay the monthly management fee and whether it had an obligation to do so.   Robert Rozman took the position that Diehl had no binding obligation to continue to pay the management fee for it was receiving no management services.  Ultimately, Paul Ehrlich joined that position and asserted that the management fee could be eliminated because the management services were being received by Diehl were "minimal".  The management fee was the subject of discussion at the Diehl annual Board of Directors meeting on June 28, 2005 at which time Paul Ehrlich stated that the management fee being paid to WAMCO, intended for management services which had become minimal and that he believes such fee could be eliminated.  He suggested that it was wrong to be paying such a management fee while Robert Roman's salary was decreased from its prior level. (see, Claimant's Exhibit C-24).   Robert Rozman took the position that Diehl did not have a binding obligation to the pay the management fee at $15,000.00 per month or any specific amount.  Jay Ehrlich stated  he believed that the management fee had been agreed to as part of the compensation for the purchase of the WAMCO product line and that Diehl had a contractual obligation to meet to WAMCO.

Ultimately, following that discussion, the parties entered into an agreement which was ultimately set forth in the Memorandum of Agreement executed in August 2005. The Memorandum of Agreement provided, in pertinent part, as follows:

> WHEREAS, Diehl has previously paid, and is currently paying, to WAM or its affiliates a monthly management fee for management consulting services, which fee has varied from time to time and upon the mutual agreement of parties, and;
>
> WHEREAS, the parties intend that WAM shall continue to provide such management consulting services to Diehl, and Diehl shall continue to pay a monthly management fee therefore as business conditions permit in accordance with terms and conditions herein set forth: . . .
>
> 1.     Wam hereby waives all unpaid and accrued management fees, if any, due from Diehl prior to July 31, 2005.  WAM shall continue to provide Diehl from time to time management consulting and services as reasonably requested by Diehl, and effective July 31, 2005, <u>Diehl shall pay to WAM, as consideration for such management and consulting services</u> provided a management fee of $12,500.00 per month (increased from the immediately preceding fee of $10,000.00 per month) through December 31, 2005 and $15,000.00 per month commencing January 31, 2006 through December 31, 2008; provided however that (a) <u>such mutual commitments to provide such services and to pay such management fee</u>, shall terminate as of January 1, 2009, unless extended by mutual agreement of the parties, and (b) from time to time that said management fee might be reconsidered and reduced, increased, eliminated or restated by mutual agreement of the parties as Diehl's business conditions requires; and WAM shall only be responsible to provide consulting and services at a level consistent with the then current level of the management fee." (emphasis added).

Subsequent to the execution of the Memorandum of Agreement, the management consulting and services provided by WAMCO to Diehl were, for all practical purposes, non-existent.  Indeed, the only services ever provided by Jay Ehrlich, who at the time, unbeknownst to Rozman, had purchased the majority interest of the WAMCO stock from Paul Ehrlich, ever provided to Diehl was a few phone calls introducing people at Diehl to other parties and allegedly seeking "business opportunities" for investment by Diehl

none, of which were ever seriously considered by Diehl and none of which were ever entered into by Diehl. In fact, Jay Ehrlich provided no service which was of any significant monetary value to Diehl.

Throughout the summer of 2006, Diehl and WAMCO had a continuing dispute concerning Diehl's obligation to pay a management fee to WAMCO because WAMCO was not providing management consulting and services. Throughout this time, Jay Ehrlich, as a shareholder in Diehl, was receiving the monthly financial statements issued by Diehl and was keenly aware of Diehl's financial condition. With that knowledge, he continued to insist throughout that time that Diehl was not only capable of making the payment on the Note, it was also capable of paying the management fee in full, as well as the entire rent to its landlord. Indeed, in July of 2006 when Diehl made a $9,000.00 payment for the management fee, instead of a payment of $15,000.00, Jay Ehrlich demanded a payment in full of the entire management fee.

On August 2, 2006, Diehl filed its Complaint in the Wabash Circuit Court seeking a declaration that it owned no obligation to continue to pay the management fee as a result of the failure of consideration. On August 10, 2006, Ehrlich sent to Diehl his Notice of Default saying that WAMCO was in default under the terms of the Security Agreement for its failure to pay the management fee and rent. (see, Claimant's Exhibit C-19). There is no reference in that notice of insecurity due to any allegation contained in the Complaint.[1]

---

[1] These facts are taken from the Respondent's Post-Hearing Arbitration Brief. As there was no transcript made of the proceedings in that case, the parties are unable to cite to any specific testimony other than the reference contained in this Brief. However, these factual assertions demonstrate the basis upon which the arbitrator entered his award in favor of Diehl in this case.

## II. ARGUMENT

As the Seventh Circuit Court of Appeals has noted, it is tempting to think that Courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, but they are not. Wise v. Wacovia Securities, LLC, 450 F.3d 265, 269 (7th Cir. 2006); Baravati v. Josephthal, Lyon and Ross, Inc., 28 F.3d 704, 706 (7th Cir. 1994). The grounds for overturning an arbitration award are extremely limited. Halim v. Great Gatsby's Auction Gallery, Inc., 516 F.3d 557, 563 (7th Cir. 2008); Wise, supra. Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award. Halim, supra; IDS Life Insurance Company v. Royal Alliance Associates, Inc., 766 F.3d 645, 649 (7th Cir. 2001).

> "When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate, as by corruption, evident an partiality, exceeding their powers, etc.-conduct to which the parties did not consent when they included an arbitration clause in their contract. That is why in the typical arbitration case…the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all,…for only then were they exceeding the authority granted to them by the contract's arbitration clause."

Wise, supra.

An arbitrator's award must be enforced unless the petitioner can prove that there is no possible interpretive route to the award so that a non-contractual basis can be inferred. Cuna Mutual Insurance Society v. Office and Professional Employees International Union, Local 39, 443 F.3d 556, 562 (7th Cir. 2006). Given the limitation on a Court's authority to review arbitration awards, Courts have invoked the principle that

they must resolve any reasonable doubts in favor of enforcing the arbitration award. <u>Arch of Illinois v. District 12 United Mine Workers of America</u>, 85 F.3d 1289, 1292 (7th Cir. 1996).  A mere ambiguity in the opinion accompanying an award which permits an inference that the arbitrator may have exceeded his authority is not a reason for refusing to enforce the award.  <u>Id at 1293</u>.  Before a court rejects an award based on language in an arbitrator's opinion, the opinion must unambiguously reflect that the arbitrator based this decision on non-contractual grounds.  <u>Id.</u>

In this case, the arbitration proceeding was commenced by WAMCO at its request, and in fact, it was WAMCO that sought an order compelling Diehl arbitrate this dispute.  WAMCO now seeks to vacate the arbitrator's award because it does not like the result reached by the arbitrator.  However, that is simply not a basis to vacate the arbitrator's award, when it is based, by the plain language of the award, on the contractual provisions at issue.

**A.  The Arbitrator's Determination of the Issues
Relating to the Note were Based on the Parties'
<u>Contracts and the Evidence Before the Arbitrator</u>**

In its original Demand for Arbitration, WAMCO made no claim for breach of Diehl's obligation pursuant to the note.  Moreover, in its Supplement to Claims, WAMCO only made claims on the note based upon its alleged right to accelerate the note as a result of the allegations made in Diehl's Complaint filed in Indiana State Court and the fact that Diehl had allegedly failed to pay rent and the management fee.  It was only in its Second Supplement to Claims asserted in June, 2007, that WAMCO raised any issue based on the fact the Diehl made its payments into Court pursuant to the

interpleader action as opposed to continuing to make those payments directly to WAMCO.

In its Brief, WAMCO argues that the arbitrator disregarded the terms of the note in entering his award failing to allow WAMCO to accelerate the note and pay the default interest rate. However, WAMCO ignores that first, the arbitrator did not find Diehl to be in default under the terms of the note. Second, WAMCO never sought to accelerate the note based upon Diehl's alleged non-payment. Instead, the undisputed evidence before the arbitrator was that the only acceleration claimed by WAMCO at any time was based upon the allegations made by Diehl in its Complaint filed in Indiana State Court and Diehl's non-payment of the management fee and rent which the arbitrator expressly concluded were not instances of default under the terms of the note.

With respect to WAMCO's claims of costs, including attorney's fees, because the arbitrator did not find there was any breach of the terms of the note, and no breach of the Asset Purchase Agreement, then there was no basis for a claim for costs including attorney's fees. The arbitrator acknowledged that the payments made by Diehl had been misdirected, not that the payments had not been made pursuant to the terms of the note. The undisputed evidence in this case established that the payments were indeed made by Diehl to WAMCO, but were simply paid into the Court pursuant to the terms of the interpleader action. The arbitrator determined that those payments should be redirected to WAMCO and that Diehl should pay interest in order to compensate WAMCO for any amounts it did not receive while those payments remained in Court.

In short, while WAMCO may disagree with the arbitrator's reasoning and his determinations of law and fact in connection with the arbitration, and his interpretation of

the note at issue in this case, there can be no doubt in this case that the arbitrator did, in fact, base his decision on the contract between the parties, including the note, and that WAMCO's Motion to Vacate must be denied on that basis.

In addition, WAMCO argues that the arbitrator's award manifestly disregarded Illinois Law with respect to Count V. However, nowhere in the arbitration award does the arbitrator indicate that he was refusing to follow Illinois Law in any regard. Indeed, as noted above, mere ambiguity in the opinion accompanying an award which permits and inference that the arbitrator may have exceeded his authority is not reason for refusing to enforce the award. <u>Arch of Illinois</u>, supra. Only if there is no other conclusion possible may a Court determine that an arbitrator has acted in excess of his authority. In this case, there is nothing in the award which in any way indicates that the arbitrator did anything contrary to Illinois Law. Accordingly, that is simply not a basis to vacate the award in this case.

### B. The Arbitrator Properly Considered the Terms of the Asset Purchase Agreement and Memorandum of Agreement in Refusing to Award WAMCO a Management Fee

WAMCO argues that the reasoning of the award conflicts with the language of the Asset Purchase Agreement and, therefore, this Court should vacate the award with respect to the payment of the management fee. However, a cursory review of the arbitrator's award belies WAMCO's argument. The arbitrator determined that the obligation to pay the management fee under the Asset Purchase Agreement was modified by the subsequent Memorandum of Agreement. Indeed, that Memorandum of Agreement was an alternate basis by which WAMCO sought to recover the management fee in this proceeding. In rejecting the claims under the Asset Purchase Agreement, the

arbitrator concluded that pursuant to the terms of the Asset Purchase Agreement, Diehl's obligation to pay the management fee was modified by the Memorandum of Agreement and that the Memorandum of Agreement imposed no obligation to pay the management fee upon Diehl where no management or consulting services were being provided to Diehl by WAMCO.

The award of the arbitrator in this case with respect to the management fee is entirely consistent with the plan language of the Memorandum of Agreement. The Memorandum of Agreement provided that the parties intend that WAMCO should provide management and consulting services to Diehl and Diehl should continue to pay a monthly management fee therefore. Clearly, this language contemplates that there must be management and consulting services provided in order to trigger the obligation of Diehl to make the payments. In addition, the Memorandum of Agreement provided that WAMCO was responsible to provide consulting and services at a level consistent with the current level of the management fee. In other words, WAMCO did not have to provide services if no fee was paid. Clearly, the parties recognized in the execution of the Memorandum of Agreement that WAMCO would only be required to pay for services provided. Based on the evidence, the arbitrator concluded that no services were being provided; the arbitrator properly determined that there was no continuing obligation to pay the management fee by Diehl.

Without question, the arbitrator's decision with respect to the management fee was based entirely upon both the language of the Asset Purchase Agreement and the subsequently executed Memorandum of Agreement. There is absolutely no basis for the Court to determine that the arbitrator acted in excess of his authority by determining that

the management fee was no longer payable. Once again, WAMCO may disagree with the facts and law determined by the arbitrator, but that is simply no basis for this Court to vacate the arbitrator's award.

Finally, WAMCO raises for the first time in this matter that the arbitrator ignored undisputed evidence that Diehl waived any right to contest its obligations and disregarded Illinois Law with respect to ratification. This argument is interesting to the extent that it is raised for the first time in this matter and was not raised before the arbitrator in connection with the arbitration proceedings. Moreover, WAMCO is simply asking this Court to review the opinion of the arbitrator based on the "facts" and determine that the arbitrator's award was in error. This Court is simply not charged with that responsibility. If WAMCO did not wish to proceed to binding arbitration in this case WAMCO could have chosen not to initiate this arbitration proceeding and force Diehl to arbitrate these disputes. However, because WAMCO chose to do so, it is now precluded from seeking to "appeal" the arbitrator's decision in this case. There is certainly nothing in the arbitrator's award which would indicate that he in any way exceeded his authority with respect to his decision on the management fee. Accordingly, the Motion to Vacate must be denied on that basis.[2]

### III. CONCLUSION

The argument asserted by WAMCO in its Brief in Support of its Motion to Vacate the Arbitrator's Award might be colorable if this were an appeal from a lower Court. However, the standard in this case is much different. This Court is charged only with determining whether the arbitrator exceeding his authority under the arbitration

---

[2] In its Brief, WAMCO makes no argument with respect to the discovery issues raised in its Motion to Vacate. Apparently, WAMCO has abandoned those arguments. As the opinion of the Court in Halim, supra, makes clear, such arguments would be unavailing in this case.

provision. Clearly, he did not. The arbitrator considered the language of the Asset Purchase Agreement and Memorandum of Agreement, and the documents related thereto, in issuing his award in this case. Whether this Court believes that the arbitrator erred in fact or law in his award is simply of no consequence. The undisputed evidence in this case establishes that the arbitrator's decision was based on the language of the agreements and therefore under no circumstances may this Court vacate his award. Accordingly, WAMCO's Motion to Vacate the Arbitration Award should be denied and this Court should enter an order affirming that award.

          Respectfully submitted,

          CARSON BOXBERGER, LLP


          By s/Larry L. Barnard
              Larry L. Barnard

          By s/James P. Buchholz
              James P. Buchholz
              Attorneys for Respondent

1400 One Summit Square
Fort Wayne, Indiana  46802
Telephone:  (260) 423-9411
F:\Diehl Woodworking Machinery 19,554\WAMCO Shares Dispute\Memo in Opp to Mot to Vacate Arbitral Award.docx


**CERTIFICATE OF SERVICE**

    I hereby certify that on 26th day of March, 2008 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

    Andrew R. Schwartz, Esq.
    SUGAR, FRIEDBERG & FELSENTHATL LLP

    aschwartz@sff-law.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

n/a

                                              s/Larry L. Barnard