IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WISCONSIN AUTOMATED MACHINERY CORP., ) ) ) | |
| Movant, ) | 07 C 6840 |
| ) | |
| v. ) | Judge Ronald Guzmán |
| ) | |
| DIEHL WOODWORKING MACHINERY, INC., ) ) ) | |
| Respondent. ) | |

### MEMORANDUM OPINION AND ORDER

Wisconsin Automated Machinery Corp. ("WAMCO") asks the Court to vacate the award entered in its arbitration with Diehl Woodworking Machinery, Inc. ("Diehl") on October 1, 2007. For the reasons set forth below, the Court denies the motion.

### Facts

In September 2002, WAMCO agreed to sell and Diehl agreed to buy certain product lines and associated properties according to an Asset Purchase Agreement ("APA"). (Mot. Vacate ¶ 8; id., Ex. 1, APA Preamble.) Among other things, the APA required Diehl to pay WAMCO $600,000.00 plus interest for the assets it purchased and a management services fee of $15,000.00 per month. (Id., Ex. 1 APA, ¶¶ 3.1, 3.2, 6.7.) It also barred WAMCO from competing with Diehl for five years, required the parties to submit any disputes under the agreement to arbitration and stated that it was governed by Illinois law. (Id., Ex. 1, APA ¶¶ 11, 14.8, 14.13.)

Pursuant to the APA, in early October 2002, Diehl executed a promissory note agreeing to pay WAMCO $600,000.00 at 6.198 percent interest in seventy-two $10,000.00 installments due on

the first day of each month from January 1, 2003 through December 1, 2008. (*Id.*, Ex. 2, Note at 1.) The note also required Diehl to pay an additional three percent interest on any past due principal and provided that, if Diehl failed to make timely payment or otherwise defaulted under the APA, all principal and interest would become immediately due and WAMCO would be entitled to recover from Diehl all costs it incurred to collect the debt. (*Id.* at 1-3.)

In August 205, the parties entered into a Memorandum of Agreement ("MOA") regarding the management services fee required by the APA. (*Id.*, Ex. 4, MOA at 1.) In the MOA, WAMCO waived all management fees due before July 31, 2005 and agreed to "continue to provide to Diehl from time to time management and consulting services as reasonably requested by Diehl." (*Id.*) The parties agreed that Diehl would pay WAMCO "as consideration for such management and consulting services provided" a fee of $12,500.00 per month through December 31, 2005 and $15,000.00 per month through December 31, 2008. (*Id.*)

In August 2006, Diehl stopped paying the management services fee and filed suit against WAMCO in Indiana state court alleging that the management fee provision was invalid or Diehl should be excused from complying with it. (*Id.* ¶ 13.) The case was subsequently removed to Indiana federal court, where it is still pending. (*Id.*)

In June 2007, Diehl stopped making its APA payments to WAMCO and started making them to the Indiana court. (*Id.* ¶ 14.) It did so for July, August, September and October 2007 as well. (*Id.* ¶ 15.)

Subsequently, WAMCO filed an arbitration action against Diehl seeking: (1) a declaration that the MOA was void for lack of consideration and the management services fee was controlled by the APA; (2) a finding that Diehl had breached the management services fee provision of the APA and an award of all fees due under that agreement; (3) alternatively, a finding that Diehl had

2

breached the APA, as modified by the MOA, and an award of the management services fees due under the modified agreement; (4) a finding that Diehl had defaulted under the security agreement; (5) a finding that Diehl had defaulted under the note by making its June 2007 payment to the Indiana court rather than to WAMCO and an award of all sums due under the note; and (6) an award of attorney's fees and expenses incurred by WAMCO in the collection proceedings. (*Id.*, Ex. 8, Second Supplement Claims WAMCO at 3-10.)

On October 1, 2007, the arbitrator issued the award finding that: (1) the MOA was valid and enforceable, and thus, Diehl had not breached the APA by ceasing to pay the management fee in accordance with it; (2) Diehl had not breached the APA, as modified by the MOA, by failing to pay management fees because WAMCO never provided any such services and the parties could not have intended that it would do so after WAMCO became a holding company with only one employee; (3) Diehl was not in default under the security agreement; (3) Diehl had no justification for making its June 2007 payment to the Indiana court rather than to WAMCO; and (4) WAMCO's claim for attorney's fees should be denied to "serve the interests of justice and facilitate the resolution of the [parties'] remaining disputes." (*Id.*, Ex.17, Award at 1-3.) The arbitrator ordered Diehl to pay $50,000.00 to WAMCO, on or before October 31, 2007, for the June through October 2007 note payments it had made to the Indiana court, plus 5 percent interest from the date each payment was due until the date it was paid. (*Id.* at 3.)

WAMCO says the award should be vacated because the arbitrator exceeded his powers and disregarded various contract provisions.

## Discussion

When parties agree to arbitrate their disputes they opt out of the court system. *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006). Thus, a court cannot set aside an arbitration award simply because the arbitrator made a mistake. *Id.* Rather, an award can be set aside only if: (1) it "'was procured by corruption, fraud, or undue means'"; (2) "'there was evident partiality or corruption in the arbitrators'"; (3) the arbitrators "'refus[ed] to postpone the hearing, upon sufficient cause shown, or . . . to hear evidence pertinent and material to the controversy'"; or (4) "'the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" *Id.* at 268 (quoting 9 U.S.C. § 10(a)). Unless such circumstances exist, the arbitrator's "interpretation of the contract binds the court asked to enforce the award or set it aside. . . . even if [the court is] convinced that the arbitrator's interpretation was . . . plainly wrong." *Chi. Typographical Union v. Chi. Sun-Times*, 935 F.2d 1501, 1505 (7th Cir. 1991).

WAMCO argues that the arbitrator ignored the terms of the parties' contract by simultaneously finding that Diehl defaulted under the note and denying WAMCO its contractual default remedies, *i.e.*, acceleration of the principal balance, an increase in the interest rate and recovery of collection costs. The arbitrator did not explicitly say that Diehl defaulted, but WAMCO says that finding is implicit in the following statement: "Diehl offered no evidence . . . that would justify its payment of monthly installments from June 2007 to the Clerk of Court in Indiana rather than to WAMCO." (Mot. Vacate, Ex. 17, Award at 3.)

The Court disagrees. An arbitration award can be rejected "only when the arbitrator *must have* based his award on some body of thought, or feeling, or policy, or law that is outside the contract." *Arch of Ill. v. Dist. 12, United Mine Workers of Am.*, 85 F.3d 1289, 1292 (7th Cir. 1996)

4

(emphasis original) (quotation omitted). That is not the case here. The note says that Diehl is to make payments "to 5301 West Dempster, Suite 308, Skokie, Illinois 60077" and its failure to do so timely would permit WAMCO to accelerate the principal balance, increase the interest rate and recover its collection costs. (Mot. Vacate, Ex. 2, Note at 1-3.)

But the arbitrator's refusal to label Diehl's June through October 2007 payments to the Indiana court as a default does not necessarily mean that he disregarded those terms. Rather, he may have found that Diehl's payments to the court were a breach of the note, but not a material one amounting to a default. Under Illinois law:

> The determination of whether a breach is material is a complicated question of fact involving an inquiry into such matters as whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage.

*William Blair & Co., LLC v. FI Liquidation Corp.*, 830 N.E.2d 760, 779 (Ill. App. Ct. 2005) (quotation omitted). In light of that standard and the facts of this case, the Court cannot say that the arbitrator "must have" disregarded the contract in making the award. *Arch*, 85 F.3d at 1292.

WAMCO also contends that the arbitrator had no contractual basis for rejecting its claim for management services fees under the APA as modified by the MOA. The arbitrator said his decision was based on the fact that Diehl never asked for or received any management services from WAMCO and the parties could not have intended that Diehl would have to pay such fees after WAMCO became a one-employee holding company incapable of providing such services. (Mot. Vacate, Ex. 17, Award at 2.) WAMCO says that reasoning conflicts with the plain language of the modified APA, which requires both that Diehl pay management services fees to WAMCO and that WAMCO withdraw from the industry. Thus, WAMCO contends, the arbitrator's conclusion that

5

the obligation to pay management fees was contingent on WAMCO's continued presence in the industry is contradicted by the plain language of the contract.

It may be, as WAMCO asserts, that the arbitrator incorrectly interpreted the contract on this point. But the issue before this Court is not whether the arbitrator interpreted the contract correctly, but whether he interpreted it at all. *See Wise*, 450 F.3d at 269. Correct or not, the award is plainly based on the arbitrator's interpretation of the parties' modified contract. The Court will not, therefore, disturb it.

Even if Diehl was not in default under either version of the APA, WAMCO argues that the arbitrator still exceeded his authority by reducing the base non-default interest rate from 6.198 percent to 5 percent for the June through October 2007 payments. That is not, however, what the arbitrator did. According to the APA and the note, the $10,000.00 payments Diehl was obligated to make each month included both principal and the agreed-upon 6.198 percent interest:

> [T]he Purchase Price . . . shall be payable in seventy-two (72) equal monthly installments of $10,000.00 each (comprising principal of, and interest at the rate of 6.198% per annum on, the Purchase Price . . .), the first installment payable on the first day of January . . . 2003, and each subsequent payment on the first day of each subsequent calendar month until paid in full (i.e. amortizing the Purchase Price plus interest over the period of repayment in seventy-two (72) equal monthly payments).

(Mot. Vacate, Ex. 1, APA ¶ 3.2; *see id.*, Ex. 2, Note at 1 (same)). Because the payments Diehl made to the Indiana court from June through October 2007 already included the 6.198 percent interest required under the parties' agreements, the arbitrator's award of an additional five percent interest on those payments was an increase in, not a reduction of, the interest rate.

As WAMCO points out, the parties' agreement does not explicitly authorize the arbitrator to make such an adjustment in the interest rate. The arbitration clause does, however, give the arbitrator the power to "grant equitable relief" to compel compliance with the agreement. (*Id.*, Ex.

6

1, APA ¶ 14.13.) Moreover, it says that the arbitration is to be conducted in accordance with the American Arbitration Association's ("AAA") commercial arbitration rules, which permit "[t]he arbitrator [to] grant any remedy or relief that [he] deems just and equitable and within the scope of the agreement of the parties . . . ." (*Id.*, Ex. 9, AAA Rules, R-43(a).)

As *Arch of Illinois* teaches, the arbitrator's award of additional interest to WAMCO can be viewed as equitable relief within the scope of the contract. The contract at issue in *Arch*, a collective bargaining agreement between mine operators and a mine workers union, provided for arbitration over disputed employee terminations. 85 F.3d at 1290-91. The contract specifically authorized the arbitrator to grant only two kinds of relief:

> If the arbitrator determines that the Employer has failed to establish just cause for the Employee's discharge, the Employee shall be immediately reinstated to his job. If the arbitrator determines that there was just cause for the discharge, the discharge shall become effective upon the date of the arbitrator's decision.

*Id.* at 1291. The arbitrator, however, did neither, ordering instead that the discharged employee be reinstated one month after the arbitration decision was issued. *Id.* at 1294. Because that was not one of the specified contractual remedies, the employer moved to vacate the award, a motion the lower court denied. *Id.* at 1290, 1294.

On appeal, the Seventh Circuit affirmed the lower court's ruling. *Id.* at 1290. In the appellate court's view, the arbitrator had, in effect, found that termination was inappropriate but imposed a thirty-day disciplinary suspension before the employee's reinstatement. *Id.* at 1294. Though such an award was not explicitly sanctioned by the parties' contract, the court said it could "be rationally derived from some plausible theory of [the contract's] general framework," because it eliminated the need for a second disciplinary proceeding against the same employee, thereby promoting the contract's stated goal of expeditiously processing grievances. *Id.* (quotation omitted).

The same is true here. Though the arbitrator did not view Diehl's payments to the Indiana court as a default entitling WAMCO to employ its contractual default remedies, he nonetheless recognized that Diehl's action imposed a cost on WAMCO. The arbitrator, therefore, exercised his contractual authority to address this inequity by awarding WAMCO an additional five percent interest on the payments Diehl made to the court.

The arbitrator's decision to set October 31, 2007 as the deadline for Diehl to make the June through October 2007 payments to WAMCO likewise fell within his equitable powers. The arbitrator did not serve the award on the parties until October 2, 2007. (Mot. Vacate at 7.) Consequently, he could not have ordered Diehl to pay WAMCO by the first of October 2007, as contemplated by the note. (*Id.*, Ex. 2, Note at 1.) He could have set the first day of November as the deadline, but from WAMCO's perspective, that would not have been an improvement. Instead, the arbitrator made the payment due "[o]n or before October 31, 2007" with the additional five percent interest accruing "from the date on which [each installment] was due to the date of payment," as incentive for Diehl to make the payment quickly. (*Id.*, Ex. 17, Award at 2.) In short, though WAMCO complains about it, the arbitrator invoked the equitable powers the parties gave to him, and he did so for WAMCO's benefit.

Lastly, WAMCO argues that the arbitrator's award should be vacated because it conflicts with Illinois law, which governs the contract. (*See id.*, Ex. 1, APA ¶ 14.8.) Specifically, WAMCO contends that, under Illinois law, Diehl waived its right to argue that the management services fee provision of the APA is "unenforceable, due to 'economic duress,' 'oppression,' or any similar defense" by paying that fee for several years after signing the contract. (*Id.*, Ex. 16, WAMCO Post-Closing Br. at 18); *see Edstrom Indus., Inc. v. Companion Life Ins. Co.*, 516 F.2d 546, 552 (7th Cir.

8

2008) (vacating arbitration award because "the arbitrator . . . disregard[ed] the . . . directions the parties" gave him to apply Wisconsin law).

Even if WAMCO's interpretation of Illinois law is correct, it does not further its case. The arbitrator did not find that the modified management services fee provision was unenforceable. (Mot. Vacate, Ex. 17, Award at 2.) Rather, he said Diehl was not in breach of that provision because WAMCO had not provided any management services, a condition precedent to Diehl's obligation to pay. (*Id.*) In other words, the arbitrator's award did not implicate the law cited by WAMCO. Thus, the award cannot be vacated on the grounds that the arbitrator failed to follow it.

### Conclusion

For the reasons set forth above, the Court denies defendant's motion to vacate [doc. no. 1]. This case is terminated.

**SO ORDERED.**    ENTERED:    8/07/08

HON. RONALD A. GUZMAN
United States District Judge

9